IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NICOLE OLIBAS, KELLIE BARTON, REGINALD WILLIAMS, DONNY HODKINSON, TINA MCDONALD and CAROL JOHNSON, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 3:11-cv-2388-B |
| V. | § § | |
| JOHN BARCLAY AND NATIVE OILFIELD SERVICES, LLC | § § § | |
| Defendants. | § | |
| REGINALD E. WILLIAMS, DONNY J. HODKINSON, TINA MCDONALD and CAROL JOHNSON on behalf of themselves and all others similarly situated, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 3:11-cv-2388-B |
| V. | § § | |
| NATIVE OILFIELD SERVICES, LLC, JOHN BARCLAY and WILL SCHMID | § § § | |
| Defendants. | § | |

## PLAINTIFFS' REQUESTED JURY INSTRUCTIONS AND VERDICT FORM

Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that the following instructions and verdict form be given to the jury in the above-captioned lawsuit.

Respectfully submitted,

BARON & BUDD, P.C.

By:_____/s/Allen R. Vaught_____
        Allen R. Vaught
        TX Bar No. 24004966
        3102 Oak Lawn Avenue, Suite 1100
        Dallas, Texas  75219
        (214) 521-3605 – Telephone
        (214) 520-1181 – Facsimile
        avaught@baronbudd.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

On June 25, 2014, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

By:_____/s/Allen R. Vaught_____
        Allen R. Vaught

## JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 1

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the jury you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence.

After the opening statements, the plaintiffs will call witnesses and present evidence. Then, the defendants will have an opportunity to call witnesses and present evidence. After the parties' main case is completed, the plaintiffs may be permitted to present rebuttal evidence. After all the evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law. You will then retire to deliberate on a verdict.

Keep an open mind during the trial. Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence.

If you would like to take notes during the trial, you may do so. If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony. Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes. If you

do not take notes, rely on your own independent memory of the testimony. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than the-recollection of each juror concerning the testimony. Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits will be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case. If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately. Hold yourself completely apart from the people involved in the case—the parties, the witnesses, the attorneys and persons associated with them. It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial. Do not learn anything about the case from any other source.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence. I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

It is now time for the opening statements.

**Authority: 5th Cir. Pattern Civil Jury Instruction No. 1.1 (Preliminary Instruction) (2006).**

## JURY INSTRUCTION NO. 2

### Stipulated Facts by the Parties

The parties have agreed, or stipulated, that:

1.      Native Oilfield is an enterprise engaged in commerce as defined by the FLSA and is an employer of all Plaintiffs pursuant to the FLSA for all time periods relevant to this lawsuit. 29 U.S.C. § 203(d), (r), and (s)(1).

2.      Native Oilfield is a Texas-based entity that provides commercial transportation services to pressure pumping companies in the oil and gas industry.

3.      Native Oilfield maintains two yards from which drivers are dispatched. One is in Alvarado, Texas and the other is in Hondo, Texas.

4.      At all times relevant to this lawsuit, Barclay has been the president of Native Oilfield.

5.      Barclay is an employer pursuant to the FLSA and is jointly and severally liable, along with Native Oilfield, for the Dispatcher Plaintiffs' damages, if any, and is jointly and severally liable, along with Native Oilfield, for the Driver Plaintiffs' damages, if any. 29 U.S.C. § 203(d).

6.      Schmid was the vice president of operations for Native Oilfield from January 1, 2009 to September 30, 2012.

7.      As to the Driver Plaintiffs, Schmid, in his role as vice president of operations, was active in the day-to-day business operations of Native Oilfield, had responsibility for Native Oilfield's compliance with the FLSA with respect to the Driver Plaintiffs, had the power to hire and fire the Driver Plaintiffs, control the Driver Plaintiffs' work schedules and conditions of employment, determine the rate or method of compensation of the Driver Plaintiffs and control and maintain the Driver Plaintiffs' employment records.

**Dispatcher Plaintiffs**

8.   Each of the Dispatcher Plaintiffs, with the exception of Plaintiff Reginald Williams, was paid on a salary basis of at least $455 per workweek, exclusive of board, lodging, and other facilities, at all times relevant to this lawsuit.

9.   The Dispatcher Plaintiffs' primary job duties involved the performance of office or non-manual work.

10. The Dispatcher Plaintiffs worked in Native Oilfield's dispatch department.

11. No Dispatcher Plaintiff was ever the manager of Native Oilfield, or of Native Oilfield's dispatch department.

12. Each of the Dispatcher Plaintiffs regularly worked more than 40 hours per workweek.

13. The Dispatcher Plaintiffs were not paid time and one-half of their respective regular rates of pay for any hour worked over 40 per workweek.

14. Defendants do not have an accurate record of the hours worked by the Dispatcher Plaintiffs per week as set forth in 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2.

**Driver Plaintiffs**

15. Native Oilfield Services is a "motor carrier" pursuant to 49 U.S.C. § 13501.

16. All of the vehicles operated by the Driver Plaintiffs during the course of their employment with Native Oilfield weighed more than 10,000 pounds.

17. Defendants produced no documents for any Driver Plaintiff for the time period after 2012.

18. Defendants do not have the records required by 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2(a)(1)-(12) as to any driver for fiscal year 2013.

19. Native Oilfield classified the Driver Plaintiffs as FLSA non-exempt in fiscal year 2009.

**Liquidated Damages/Willfulness**

20. Defendants' efforts to determine whether or not they should pay overtime compensation to the Dispatcher and Driver Plaintiffs consisted of Barclay, Schmid and Native Oilfield's human resources manager, Cristina Chapa, internally reviewing the criteria in the FLSA.

21. Defendants did not consult a lawyer, accountant, the United States Department of Labor or any other person, entity or agency outside of Native Oilfield for a determination as to whether or not the Dispatcher Plaintiffs should be paid overtime compensation.

22. Defendants did not consult a lawyer, accountant, the United States Department of Labor or any other person, entity or agency outside of Native Oilfield for a determination as to whether or not the Driver Plaintiffs' time spent waiting to be issued a truck, time at well-sites, time at staging areas or time spent driving should be considered compensable work under the FLSA.

23. At all times relevant to this lawsuit, Defendants were aware of the FLSA's minimum wage and overtime wage requirements.

24. At all times relevant to this lawsuit, Defendants posted notice of the FLSA's wage requirements in a conspicuous place in every establishment where Defendants' employees are or were employed.

   This means that both sides agree that these are facts.  You must therefore treat these facts as having been proved.


**Authority: 5th Cir. Pattern Civil Jury Instruction No. 2.3 (Stipulations of Fact) (2006).**

## JURY INSTRUCTION NO. 3

You must consider only the evidence in this case. However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence you may consider. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

**Authority: 5th Cir. Pattern Civil Jury Instruction No. 2.18 (Consideration of the Evidence) (2006).**

## <u>JURY INSTRUCTION NO. 4</u>

Certain exhibits such as spreadsheets have been shown to you for purposes of illustration only. They are used by a party to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.


**Authority: Adapted from 5th Cir. Pattern Civil Jury Instruction No. 2.8 (Demonstrative Evidence) (2006).**

## JURY INSTRUCTION NO. 5

If a party fails to produce evidence, including documents, which is or was under his or her control and reasonably available to him and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and did not unless you credit the witness' reasons for his failure to produce the evidence.

**Authority: DEVITT, BLACKMAR, AND WOLFF, Federal Jury Practice and Instructions (4th ed.) §72.16.**

## JURY INSTRUCTION NO. 6

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he gave at the trial.

**Authority: 5th Cir. Pattern Civil Jury Instruction No. 2.16 (Impeachments by Witness Inconsistent Statements) (2006).**

## JURY INSTRUCTION NO. 7

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

[You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You

may consider such evidence only for the specific limited purposes for which it was admitted. (Specific limiting instructions may be repeated as appropriate.) ]

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The fact that a witness has previously been convicted of a felony, or a crime involving dishonesty or false statement, is also a factor you may consider in weighing the credibility of that witness. Such a conviction does not necessarily destroy the witness' credibility, but it is one of the circumstances you may take into account in determining the weight to give to his testimony.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

When you retire to the jury room to deliberate on your verdict, you may take this Charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to conduct your deliberations.

**Authority: 5th Cir. Pattern Civil Jury Instruction No. 3.1 (General Instructions for Charge) (2006).**

## JURY INSTRUCTION NO. 8

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**Authority: 5th Cir. Pattern Civil Jury Instruction No. 2.11 (Duty to Deliberate) (2006).**

## JURY INSTRUCTION NO. 9

### Burden of Proof

For any cause of action or affirmative defense for which a party bears the burden of proof, they must prove that cause of action/affirmative defense by a preponderance of the evidence. A preponderance of the evidence simply means evidence that persuades you that a party's claim is more likely true than not true. In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.


**Authority: Adapted From Fifth Circuit Pattern Civil Jury Instruction No. 2-20 (Burden of Proof When Only Plaintiff Has Burden) (2006);** *Meza v. Intelligent Mexican Marketing, Inc.*, **720 F.3d 577, 581 (5th Cir. 2013) (quoting** *Arnold v. Ben Kanowsky, Inc.*, **361 U.S. 388, 392 (1960)) (burden of proof for exemptions);** *Vela v. City of Houston*, **276 F.3d 659, 666 (5th Cir. 2001) (same).**

## JURY INSTRUCTION NO. 10

### Representative Testimony in Collective Actions

The Driver Plaintiffs have filed this overtime pay lawsuit as a collective action, which is similar to a class action. In a collective action, it is not necessary that all of the Plaintiffs testify in order to prove violations or damages. Rather, the Plaintiffs may rely on representative testimony. The Plaintiffs and Defendants in this lawsuit have stipulated to representative testimony of 5% of the opt-in collective action Driver Plaintiffs.

"Representative testimony" means the testimony of a relatively few plaintiff witnesses or other credible individuals in order to establish a pattern of behavior among the larger collection of plaintiffs. The testimony of a Plaintiff can only be representative of other Plaintiffs who perform substantially similar work.

Because the non-testifying Plaintiffs have relied on representative testimony, it is not necessary that the Defendants prove that each of the non-testifying Plaintiffs was exempt from the overtime wage requirements of the Fair Labor Standards Act. If Defendants prove that the representative Plaintiffs who did testify are in fact exempt from the overtime pay provisions of the Fair Labor Standards Act, then Defendants would have carried their burden of proof as to the non-testifying Plaintiffs.

If, on the other hand, Defendants fail to carry their burden of proof with respect to the Plaintiffs who testified, then Defendants would have likewise failed to carry their burden of proof as to the non-testifying Plaintiffs.

**Authority: From charge given in *Morgan v. Family Dollar*, Cause No. 7:01-00303-SLB (N.D. Alabama 2006); 29 U.S.C. § 216(b).**

## JURY INSTRUCTION NO. 11

### Plaintiffs' Cause of Action for Unpaid Overtime Wages

This case arises under the Fair Labor Standards Act, a federal law that provides for the payment of time-and-a-half overtime pay to certain employees. The Dispatcher and Driver Plaintiffs claim that the Defendants did not pay each of them the legally required overtime pay.

The Dispatcher and Driver Plaintiffs must prove each of the following by a preponderance of the evidence:

1. That Native Oilfield Services employed the Plaintiffs during the time period involved in this lawsuit;

2. That Native Oilfield Services was an enterprise engaged in commerce under the Fair Labor Standards Act;  and

3. That Native Oilfield Services failed to pay the Plaintiffs the overtime pay required by law.

With regards to item number 1, the Plaintiffs and Defendants have stipulated that Native Oilfield Services employed the Plaintiffs during the time period involved in this lawsuit. With regards to item number 2, Plaintiffs and Defendants have stipulated that Native Oilfield Services is an enterprise engaged in commerce under the Fair Labor Standards Act.

With regards to item number 3, Defendants and the Dispatcher Plaintiffs stipulate that the Dispatcher Plaintiffs regularly worked more than 40 hours per workweek, but were not paid corresponding overtime pay for any overtime hours worked. However, as to item number 3, you must determine if the Driver Plaintiffs worked overtime hours for which they were not paid corresponding overtime compensation. Therefore, with respect to the Plaintiffs' cause of action and based on the stipulations of the Parties, you will be asked to make a determination as to item number 3 for the Driver Plaintiffs only.

The Fair Labor Standards Act provides that an employer must pay its employees at least one and one-half times their regular rate for all hours worked over 40 in a seven day workweek. It is the role of the Court, and not yours, to determine the regular rate in this case if you determine that any Plaintiff worked more than 40 hours in a workweek without receiving overtime compensation for all overtime hours worked. However, you are advised that the "regular rate" for purposes of calculating overtime wages does not require employers to compensate employees on an hourly rate basis. Instead, employees' earnings may be based on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek.

### What is "Work"

The phrase "hours worked" includes all time spent by an employee that was primarily for the benefit of the employer or the employer's business. Hours worked includes all the time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place. Such time constitutes "hours worked" if the employer knew or should have known that the work was being performed. Work not requested but suffered or permitted is work time that must be compensated. If the employer knows or has reason to believe that the employee is continuing to work then that time is working time. There need be no exertion at all by the employee and all hours which the employee is required to give his employer are hours worked. An employer, if he/she chooses, may hire an employee to do nothing, or to do nothing but wait for something to happen.

However, periods during which an employee is completely relieved of duty that are long enough to enable the employee to use the time effectively for his own purposes are not hours worked. For example, bona fide meal periods at least 30 minutes in length in which the employee

is relieved from all duties are not hours worked. However, short breaks less than 20 minutes during the workday must be counted as hours worked.

With regards to whether or not "wait time" is compensable work time, where an employee is required by his employer to report to work at a specified time, and the employee is there at that hour ready and willing to work but is unable to begin work for a period of time for some reason beyond his control, the employee is engaged to wait and is entitled to be paid for the time spent waiting. Furthermore, the Fair Labor Standards Act provides that a truck driver who has to wait at or near the job site for goods to be loaded is working during the loading period. If the driver reaches his/her destination and while awaiting the return trip is required to take care of his/her employer's property, he/she is also working while waiting. In both cases the employee is engaged to wait.

If, after considering all of the evidence, you find that the Plaintiffs have failed to prove one or more of the elements of their claims which are in dispute, your verdict must be for the Defendants.


**Authority: Adapted From Fifth Circuit Pattern Civil Jury Instruction No. 11.1 (Fair Labor Standards Act (29 U.S.C. §§ 207(a), 216)) (2006); *Black v. Settlepou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013) (determination of regular rate and overtime due is question of law); *Ransom v. M. Patel Enters.*, 734 F.3d 377, 380 (5th Cir. 2013) (same); 29 C.F.R. § 778.109 (regular rate); Eighth Circuit Model Civil Jury Instructions No. 16.14 (2013) (Hours Worked); 29 C.F.R. § 785.7 (Judicial construction of "work."); 29 C.F.R. § 785.16(b) (off duty hours); 29 C.F.R. § 785.18 (rest breaks); 29 C.F.R. § 785.19 (bona fide meal breaks); *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1414 (5th Cir. 1990) ("Where an employee is required by his employer to report to work at a specified time, and the employee is there at that hour ready**

and willing to work but is unable to begin work for a period of time for some reason beyond his control, the employee is engaged to wait and is entitled to be paid for the time spent waiting.").

## JURY INSTRUCTION NO. 12

### Defendants' Burden for Affirmative Defenses

Even if the Plaintiffs have proven the elements of their claims referenced in Jury Instruction No. 11 above, you must return a verdict for the Defendants if the Defendants prove that the Plaintiffs are exempt from the overtime pay law under those exemptions.

The affirmative defense exemptions claimed by the Defendants as to the Dispatcher Plaintiffs are the Executive Exemption and the Administrative Exemption. The affirmative defense exemption claimed by the Defendants as to the Driver Plaintiffs is the Motor Carrier Act Exemption. The elements of each exemption are discussed in more detail in Jury Instruction Nos. 14, 15 & 16.

For each claimed exemption, Defendants bear the burden of proving facts by a preponderance of the evidence that show the exemptions plainly and unmistakably applicable to the Plaintiffs.

The Exemptions are to be narrowly construed against Defendants and their application is limited to those Plaintiffs who are plainly and unmistakably within their terms.

If you find that the Plaintiffs have proved by a preponderance of the evidence all of the elements of their respective claims, and that the Defendants have failed to establish any respective claim of exemption from the overtime pay law, then your verdict must be for the Plaintiffs and you must determine the number of unpaid overtime hours worked by Plaintiffs.

**Authority: Adapted From Fifth Circuit Pattern Civil Jury Instruction No. 11.1 (Fair Labor Standards Act (29 U.S.C. § 216)) (2006);** *Meza v. Intelligent Mexican Marketing, Inc.***, 720 F.3d 577, 581 (5th Cir. 2013) (quoting** *Arnold v. Ben Kanowsky, Inc.***, 361 U.S. 388, 392**

(1960)) (burden of proof for exemptions); *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001) (same).

## JURY INSTRUCTION NO. 13

### "Salary Basis" Standard for Executive and Administrative Exemptions

An employee is paid on a "salary basis" if the employee is regularly paid, on a weekly or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, and the amount is not subject to reduction because of variations in the quality or quantity of the work performed. An employee is paid on a salary basis even if the employee's salary is subject to reduction for one or more of the following reasons:

1. Deductions when an employee is absent from work for one or more full days for personal reasons other than sickness or disability.

2. Deductions for absences of one or more full days occasioned by sickness or disability (including work-related accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation or loss of salary occasioned by sickness or disability. Deductions for full-day absences also may be made before the employee has qualified under the plan, policy or practice, and after the employee has exhausted their leave allowance. Similarly, an employer may make a deduction from pay for absences of one or more full days if salary replacement benefits are provided under a state disability insurance law or under a state workers' compensation law.

3. While the employer may not make deductions for an employee's absence occasioned by jury duty, attendance as a witness or temporary military leave, the employer may offset set any amounts received by the employee as jury fees, witness fees or military pay for a particular week against the salary for that particular week without loss of the exemption.

4. Deductions for penalties imposed in good faith for infractions of safety rules relating to the prevention of serious danger in the workplace or to other employees.

5. Deductions for unpaid disciplinary suspensions of one or more full days imposed in good faith for infractions of workplace conduct rules pursuant to a written policy applicable to all employees.

6. In the initial and terminal week of employment, the employer may pay a proportionate part of an employee's salary for the time actually worked.

7. When an employee takes an unpaid leave under the Family and Medical Leave Act, an employer may pay a proportionate part of the full salary for time actually worked.

**Authority: Adapted from Eighth Circuit Model Civil Jury Instructions No. 16.14 (2013); 29 C.F.R. § 541.602 (salary basis).**

## JURY INSTRUCTION NO. 14

### Executive Exemption

To receive the benefit of the Executive Exemption, Defendants must prove that each of the Dispatcher Plaintiffs was an employee:

(1)   Who was compensated on a salary basis at a rate of not less than $455 per week;

(2)   Whose primary job duty was management of the enterprise in which the employee was employed or of a customarily recognized department or subdivision thereof;

(3)   Who customarily and regularly directed the work of two or more other employees; and

(4)   Who had the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

The Parties stipulate that the Dispatcher Plaintiffs, other than Plaintiff Reginald Williams, were paid on a salary basis of no less than $455 per week. With regards to Plaintiff Williams, the parties stipulate that he was not paid on a salary basis as a Dispatcher. Further instructions on the elements of the Executive Exemption are as follows:

### Primary Job Duty

The phrase "Primary Job Duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

**Management**

Generally, the term "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

**Customarily Recognized Department or Subdivision**

The phrase "a customarily recognized department or subdivision" is intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function. A customarily recognized department or subdivision must have a permanent status and a continuing function. For example, a large employer's human resources department might have subdivisions for labor relations, pensions and other benefits, equal employment opportunity, and personnel management, each of which has a permanent status and function.

**Two or More Other Employees**

The phrase "two or more other employees" means two full-time employees or their equivalent. One full-time and two half-time employees, for example, are equivalent to two full-time employees. Four half-time employees are also equivalent.

-28-

The supervision can be distributed among two, three or more employees, but each such employee must customarily and regularly direct the work of two or more other full-time employees or the equivalent. Thus, for example, a department with five full-time nonexempt workers may have up to two exempt supervisors if each such supervisor customarily and regularly directs the work of two of those workers.

An employee who merely assists the manager of a particular department and supervises two or more employees only in the actual manager's absence does not meet this requirement.

Hours worked by an employee cannot be credited more than once for different executives. Thus, a shared responsibility for the supervision of the same two employees in the same department does not satisfy this requirement. However, a full-time employee who works four hours for one supervisor and four hours for a different supervisor, for example, can be credited as a half-time employee for both supervisors.

### **Particular Weight**

To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

**Authority: Adapted From Fifth Circuit Pattern Civil Jury Instruction No. 11.1 (Fair Labor Standards Act (29 U.S.C. § 216)) (2006); 29 C.F.R. § 541.100(a) (Executive Exemption); 29 C.F.R. § 541.700(a) (primary job duties); 29 C.F.R. § 541.102 (management); 29 C.F.R. § 541.103(a) (department of subdivision of an employer); 29 C.F.R. § 541.104 (two or more other employees); 29 C.F.R. § 541.105 (particular weight).**

## JURY INSTRUCTION NO. 15

### Administrative Exemption

To receive the benefit of the Administrative Exemption, Defendants must prove that each of the Dispatcher Plaintiffs was an employee:

(1)     Who was compensated on a salary basis at a rate of not less than $455 per week;

(2)     Whose primary duty was the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customer; and

(3)     Whose primary duty includes the exercise of discretion and independent judgment with respect to significant matters.

The Parties stipulate that the Dispatcher Plaintiffs, other than Plaintiff Reginald Williams, were paid on a salary basis of no less than $455 per week. With regards to Plaintiff Williams, the parties stipulate that he was not paid on a salary basis as a Dispatcher. Further instructions regarding the elements of the Administrative Exemption are as follows.

### Primary Job Duty

The phrase "Primary Job Duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

## Directly Related to Management or General Business Operations

The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

## Discretion and Independent Judgment

In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.

The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a

substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive,

recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled as a "statistician."

An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly. For example, a messenger who is entrusted with carrying large sums of money does not exercise discretion and independent judgment with respect to matters of significance even though serious consequences may flow from the employee's neglect. Similarly, an employee who operates very expensive equipment does not exercise discretion and independent judgment with respect to matters of significance merely because improper performance of the employee's duties may cause serious financial loss to the employer.

**Authority: Adapted From Fifth Circuit Pattern Civil Jury Instruction No. 11.1 (Fair Labor Standards Act (29 U.S.C. § 216)) (2006); 29 C.F.R. § 541.200(a) (Administrative Exemption); 29 C.F.R. § 541.700(a) (primary job duties); 29 C.F.R. § 541.201 (a) & (b) (directly related to management or general business operations); 29 C.F.R. § 541.202(a), (b), (e) & (f) (discretion and independent judgment).**

<u>**JURY INSTRUCTION NO. 16**</u>

<u>**Motor Carrier Act Exemption**</u>

To receive the benefit of the Motor Carrier Act Exemption, Defendants must prove that:

(1)      The Driver Plaintiffs are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the jurisdiction of the U.S. Department of Transportation; and

(2)      The Driver Plaintiffs engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act Exemption.

Further instructions regarding the elements of the Motor Carrier Act Exemption are as follows:

<u>**Motor Carrier Subject to the Jurisdiction of the U.S. Department of Transportation**</u>

In order to prove that it is subject to the jurisdiction of the U.S. Department of Transportation, Native Oilfield Services must establish that it is a "motor carrier" that engages in "interstate commerce." Plaintiffs and Defendants stipulate that Native Oilfield Services is a "motor carrier," but dispute whether or not Native Oilfield Services engaged in "interstate commerce" under this element.

Interstate Commerce under the Motor Carrier Act Exemption is defined to mean the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce.

To establish "interstate commerce," Defendants must put forth some "concrete evidence" such as an actual trip in interstate commerce.

<u>**Activities Directly Affecting Safety in Interstate Commerce**</u>

If the bona fide duties of the job performed by the Driver Plaintiffs are in fact such that they are called upon in the ordinary course of their work to perform, either regularly or from time

to time, activities  of a character directly affecting the safety of operation of motor vehicles in interstate commerce, then they come within the exemption in all workweeks when they are employed at such job. As is the case with the first element of the Motor Carrier Act Exemption, Defendants must put forth some "concrete evidence" on interstate commerce, such as an actual trip in interstate commerce. Where this is the case, the rule applies regardless of the proportion of the Driver Plaintiffs' time or of their activities which are actually devoted to such safety-affecting work in the particular workweek, and the exemption will generally be applicable even in a workweek when the Driver Plaintiffs happen to perform no work directly affecting "safety of operation." The Driver Plaintiffs are engaged in activities of a character affecting safety that subject them to the Motor Carrier Act if the they are required to complete U.S. Department of Transportation ("DOT") logs recording the time spent driving, pass DOT written and driving tests, complete various DOT forms, and pass a DOT physical drug test.

To measure whether the Driver Plaintiffs are likely to be called upon in the ordinary course of their work to perform safety-affecting activities that are interstate in nature, you should look to whether the Driver Plaintiffs could reasonably have been expected to engage in interstate commerce consistent with their job duties.

On the other hand, where the continuing duties of the Driver Plaintiff's job has no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the Motor Carrier Act Exemption will not apply to Driver Plaintiff in any workweek so long as there is no change in his/her duties.

As a final matter, the Motor Carrier Act exemption requires proof that that the Driver Plaintiffs' alleged involvement with interstate motor vehicle transportation was no more than four months prior to the pay period at issue.

**Authority: Adapted From Fifth Circuit Pattern Civil Jury Instruction No. 11.1 (Fair Labor Standards Act (29 U.S.C. §216)) (2006); 49 U.S.C. § 13501 (MCA Exemption); 29 C.F.R. § 782.2(a) (same);** *Allen v. Coil Tubing Services, LLC***, No. 12-20194, 2014 U.S. App. LEXIS 11069, at \*7-24 (5th Cir. June 13, 2014) (Fifth Circuit standards for MCA Exemption);** *Songer v. Dillon Res., Inc.***, 636 F. Supp. 2d 516, 523-25 (N.D. Tex. 2009) (quoting Application of the Federal Motor Carrier Safety Regulations, 46 Fed. Reg. 37,902, 37,903 (Dep't Transp. July 23, 1981)) (MCA Exemption and Four Month Rule); 29 C.F.R. § 782.2(b)(3);** *Songer v. Dillon Res., Inc.***, 618 F.3d 467, 473-76 (5th Cir. 2010) (discussing standards for safety activities directly affecting safety or of operation of motor vehicle in interstate commerce);** *Pyramid Motor Freight Corp. v. Ispass***, 330 U.S. 695, 707-08, 67 S. Ct. 954, 91 L. Ed. 1184 (1947) (same).**

## JURY INSTRUCTION NO. 17

### Willful Violation Standard

If you find that Defendants violated the Fair Labor Standards Act by failing to pay all overtime compensation owed, then you must also determine whether Defendants' action was willful.

To establish willfulness, the Plaintiffs must prove by a preponderance of the evidence that, when Defendants failed to pay overtime compensation, Defendants either (a) knew that their conduct violated the Fair Labor Standards Act, or (b) acted with reckless disregard for whether or not they were in compliance with the Fair Labor Standards Act. An employer shows reckless disregard if it does something, or fails to do something, than has an unjustifiably high risk of harm that is either known or so obvious that it should be known.

Evidence that the Defendants continued their overtime practices after being informed by the Department of Labor Wage and Hour office that the practices violated the FLSA may also establish a willful violation. The failure to seek legal advice does not itself establish reckless disregard; but consulting with an attorney about the classifications, and following the attorney's advice, may preclude a finding of willfulness.

**Authority: Adapted from Fifth Circuit PJC § 11.9.2 (ADEA—Willful Violations); 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988); *Mumby v. Pure Energy Svcs., Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011), *citing and quoting Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 68 (2007); *Singer v. City of Waco, Texas*, 324 F.3d 813, 821-22 (5th Cir.2003); *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir.1994); *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990); *Halferty v. Pulse Drug Co., Inc.*, 826 F.2d 2, 3 (5th Cir.1987).**

## JURY INSTRUCTION NO. 18

### Corporate Officers as "Employers" Under the Fair Labor Standards Act

Plaintiffs contend that Defendant John Barclay, the president of Native Oilfield Services, and Defendant Will Schmid, the former vice president of operations for Native Oilfield Services, meet the definition of "employer" under the Fair Labor Standards Act, and are therefore jointly and severally liable for the damages, if any, owed them by Native Oilfield Services. Specifically, the Dispatcher Plaintiffs contend that Barclay was an employer, and the Driver Plaintiffs contend that Barclay and Schmid are/were employers.

The definition of "employer" under the Fair Labor Standards Act is expansive and is defined as "any person acting directly or indirectly in the interest of an employer in relations to an employee. The term "person" "means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons. A corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages. People who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies. Whether or not an individual is a joint employer is determined by the economic reality of the employment relationship.

The following factors are considered in determining whether or not and individual is an employer, although all factors do not have to be found to exist in order to find employer status. Those factors include whether the individual: (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, or (4) maintained employment records.

The Plaintiffs and Defendants have stipulated that John Barclay is an is an employer pursuant to the Fair Labor Standards Act and is jointly and severally liable, along with Native Oilfield Services, for the Dispatcher and Driver Plaintiffs' damages, if any. You should apply the preponderance of the evidence standard when evaluating whether or not Defendant Schmid is and employer of the Driver Plaintiffs.

**Authority: 29 U.S.C. §203(a) & (d) (definitions of person and employer);** *Martin v. Spring Break '83*, **688 F.3d 247, 251 (5th Cir. 2012) (standards for employer liability under FLSA for corporate officers);** *Gray v. Powers*, **673 F.3d 352, 354-57 (5th Cir. 2012) (same);** *Donovan v. Grim Hotel Co.*, **747 F.2d 966, 971-72 (5th Cir. 1984), citing** *Falk v. Brennan*, **414 U.S. 190, 195 (1973) and** *Donovan v. Agnew*, **712 F.2d 1509, 1511 (1st Cir.1983) (same);** *Reich v. Circle C Investments, Inc.*, **998 F.2d 324, 329 (5th Cir.1993) (same).**

## JURY INSTRUCTION NO. 19

### Defendants' Record Keeping Requirements Regarding Hours Worked

You must determine the number of unpaid overtime hours worked by Plaintiffs based on all of the evidence. The Defendants are legally required to maintain accurate records of its employees' hours worked. Specifically, if you find that the Plaintiffs are non-exempt employees under the FLSA, then federal law requires the Defendants to have maintained accurate payroll records which show, amongst other things, the name, social security number, home address, sex, occupation, time of day and day of week which the employee's workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment. Employers are required to maintain that data for a period of three years.

If you find that the Defendants failed to maintain accurate records of the Plaintiffs' actual hours worked on a daily and weekly basis, then you must accept Plaintiffs' estimates of hours worked even if it is not exact or precise, but only approximate, unless you find that estimate to be unreasonable.

The Plaintiffs' estimate on unpaid overtime hours worked can be based on his/her testimony about the hours he/she remembers working, or other testimony or evidence as to the hours worked.

**Authority: Eighth Circuit Model Civil Jury Instructions No. 16 (2013); 29 U.S.C. § 211(c) (employer's record keeping requirements); 29 C.F.R. § 516.2 (same); 29 C.F.R. § 516.5. (preservation of payroll records); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 ("The employer cannot be heard to complain that the damages lack the exactness and**

precision of measurement that would be possible had he kept records in accordance with the [FLSA.] . . . Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages."); *Reeves v. Int'l Tel. and Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980) ("Where the inaccuracy is due to the employer's failure to keep adequate records as required by statute, imprecise evidence on quantum can provide a "sufficient basis" for damages. Under these circumstances, we have "in effect ordered the fact finder to do the best he could in assessing damages. . . . [Award based on what Plaintiff] termed a 'running total' of hours worked that he apparently kept in his mind during his employment . . . reflect[ed] a conscientious adherence to the rule enunciated in *Anderson v. Mt. Clemens*."); *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 13 (D.D.C. 2010) ("When assessing damages under the *Anderson* standard, a court may draw inferences from oral testimony, sworn declarations, and whatever relevant documentary evidence a plaintiff is able to provide.").

 

 

ENTERED this _____ day of July, 2014, in Dallas, Texas.

 

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

## VERDICT

## QUESTION NO. 1

Did Defendants prove that Plaintiff Reginald Williams was paid on a salary basis while

working as Dispatcher?

Answer "yes" or "no": _____.

## PROCEED TO QUESTION 2

**<u>QUESTION NO. 2</u>**

**<u>Question 2(a):</u>** Did Defendants prove that the Dispatcher Plaintiffs had a primary job duty that involved management of Native Oilfield Services?

      Answer "yes" or "no": _____.

**<u>Question 2(b):</u>** Did Defendants prove that the Dispatcher Plaintiffs had a primary job duty that involved management of a customarily recognized department of subdivision of Native Oilfield Services?

      Answer "yes" or "no": _____.

*(To assist in answering this question, see Jury Instruction Nos. 12 & 14 for instructions on affirmative defenses and the Executive Exemption).*

**IF YOUR ANSWER TO EITHER QUESTION 2(a) OR 2(b) IS YES, THEN PROCEED TO QUESTION 3. IF YOU ANSWERED NO TO BOTH QUESTIONS 2(a) AND 2(b), THEN PROCEED TO QUESTION 5.**

**QUESTION NO. 3**

Did Defendants prove that the Dispatcher Plaintiffs had a primary job duty that involved them directing the work of two or more other employees?

Answer "yes" or "no": _____.


*(To assist in answering this question, see Jury Instruction Nos. 12 & 14 for instructions on affirmative defenses and the Executive Exemption).*


**IF YOUR ANSWER TO QUESTION 3 IS YES, THEN PROCEED TO QUESTION 4. IF YOU ANSWERED NO TO QUESTIONS 3, THEN PROCEED TO QUESTION 5.**

**QUESTION NO. 4**

**Question 4(a):** Did Defendants prove that the Dispatcher Plaintiffs had a primary job duty that involved possessing the authority to hire and fire other employees?

Answer "yes" or "no": _____.

**Question 4(b):** Did Defendants prove that Dispatcher Plaintiffs had a primary job duty that involved them making suggestions to Native Oilfield Services on the hiring, firing or other change in status of other employees that was given particular weight by Native Oilfield Service in determining whether or not to hire, fire or change the status of other employees?

Answer "yes" or "no": _____.

*(To assist in answering this question, see Jury Instruction Nos. 12 & 13 for instructions on affirmative defenses and the Executive Exemption).*

**PROCEED TO QUESTION 5.**

**QUESTION NO. 5**

**Question 5(a):** Did Defendants prove that the Dispatcher Plaintiffs had a primary job duty that involved work directly related to the management of Native Oilfield Services?

Answer "yes" or "no": _____.

**Question No. 5(b):** Did Defendants prove that the Dispatcher Plaintiffs had a primary job duty that involved work directly related to the management of Native Oilfield Services' customers?

Answer "yes" or "no": _____.

**Question No. 5(c):** Did Defendants prove that the Dispatcher Plaintiffs had a primary job duty that involved work directly related to the general business operations of Native Oilfield Services?

Answer "yes" or "no": _____.

**Question No. 5(d):** Did Defendants prove that the Dispatcher Plaintiffs had a primary job duty that involved work directly related to the general business operations of Native Oilfield Services' customers?

Answer "yes" or "no": _____.

*(To assist in answering this question, see Jury Instruction Nos. 12 & 15 for instructions on affirmative defenses and the Administrative Exemption).*

**IF YOUR ANSWER TO QUESTIONS 5(a), 5(b), 5(c) OR 5(d) IS "YES," THEN PROCEED TO QUESTION 6. IF YOU ANSWERED "NO" TO QUESTIONS 5(a), 5(b), 5(c) AND 5(d), THEN PROCEED TO QUESTION 8.**

**QUESTION NO. 6**

Did Defendants prove that the Dispatcher Plaintiffs had primary job duties that involved the exercise of discretion and independent judgment?

Answer "yes" or "no": _____.


*(To assist in answering this question, see Jury Instruction Nos. 12 & 15 for instructions on affirmative defenses and the Administrative Exemption).*


**IF YOUR ANSWER TO QUESTION 6 IS "YES," THEN PROCEED TO QUESTION 7.**

**IF YOUR ANSWER TO QUESTION 6 IS "NO," THEN PROCEED TO QUESTION 8.**

**QUESTION NO. 7**

If you found that the Dispatcher Plaintiffs had primary job duties that involved the exercise of discretion and independent judgment, did Defendants prove that the exercise of discretion and independent judgment was on significant matters?

Answer "yes" or "no": _____.


*(To assist in answering this question, see Jury Instruction Nos. 12 & 15 for instructions on affirmative defenses and the Administrative Exemption).*


**PROCEED TO QUESTION 8**

**QUESTION NO. 8**

Did the Driver Plaintiffs prove that Native Oilfield Services failed to compensate them for all hours worked over 40 each week at the rate of one and one-half times their regular rate of pay?

Answer "yes" or "no": _____.

*(To assist in answering this question, see Jury Instruction No. 10 for representative testimony in collective action, No. 11 on Plaintiffs' cause of action for unpaid overtime wages/hours worked and No. 19 Defendants' record keeping requirements on hours worked).*

**IF YOUR ANSWER TO QUESTION 8 WAS "YES," THEN GO ON TO QUESTION 9. IF YOUR ANSWER TO QUESTION 8 WAS "NO," THEN GO TO QUESTION 11.**

**QUESTION NO. 9**

Did the Defendants prove that Native Oilfield Services engaged in "interstate commerce" as that phrase is defined under the Motor Carrier Act exemption?

Answer "yes" or "no":_____.

*(To assist in answering this question, see Jury Instruction No. 12 for instruction on affirmative defenses & No. 16 for instructions the Motor Carrier Act Exemption).*

**IF YOUR ANSWER TO QUESTION 9 WAS "YES," THEN GO ON TO QUESTION 10.**

**IF YOUR ANSWER TO QUESTION 9 WAS "NO," THEN GO TO QUESTION 11.**

**QUESTION NO. 10**

Did the Defendants prove that the Driver Plaintiffs engaged in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act Exemption?

Answer "yes" or "no":_____.

*(To assist in answering this question, see Jury Instruction No. for instructions on affirmative defenses and No. 16 for instructions on the Motor Carrier Act Exemption).*

**PROCEED TO QUESTION 11.**

**QUESTION NO. 11**

How many unpaid overtime hours do you find for each of the following Dispatcher Plaintiffs on a weekly average?

Nicole Olibas_____

Reginald Williams_____

Donny Hodkinson_____

Tina McDonald_____

Carol Johnson_____

*(To assist in answering this question, see Jury Instruction No. 11 on Plaintiffs' cause of action for unpaid overtime wages/hours worked and No. 19 Defendants' record keeping requirements on hours worked).*

**PROCEED TO QUESTION 12.**

## QUESTION NO. 12

**Question 12(a):** Did the Dispatcher Plaintiffs prove that Defendants knew that the failure to pay them overtime wages violated the Fair Labor Standards Act?

Answer "yes" or "no": _____.

**Question 12(b):** Did the Dispatcher Plaintiffs prove that Defendants acted with reckless disregard for compliance with the Fair Labor Standards Act in the failure to pay them overtime wages?

Answer "yes" or "no": _____ _____.

*(To assist in answering this question, see Jury Instruction No. 17 for instructions relative to willful violations of the Fair Labor Standards Act).*

**PROCEED TO QUESTION 13.**

**QUESTION 13**

      If you found that the Defendants failed to pay the Driver Plaintiffs, as a class, for all overtime hours worked, then what are the average unpaid overtime hours worked per week by a typical Driver Plaintiff class member?

_____

*(To assist in answering this question, see Jury Instruction No. 10 for representative testimony in collective action, No. 11 on Plaintiffs' cause of action for unpaid overtime wages/hours worked and No. 19 Defendants' record keeping requirements on hours worked).*

**PROCEED TO QUESTION 14.**

## QUESTION NO. 14

**Question 14(a):** If you found that Defendants failed to pay the Driver Plaintiffs all overtime compensation owed, did the Plaintiffs prove that the Defendants knew that conduct violated the Fair Labor Standards Act?

Answer "yes" or "no": _____.

**Question 14(b):** If you found that Defendants failed to pay the Driver Plaintiffs all overtime compensation owed, did the Plaintiffs prove that the Defendants acted with reckless disregard for compliance with the Fair Labor Standards Act in that failure to pay overtime wages?

Answer "yes" or "no": _____.

*(To assist in answering this question, see Jury Instruction No. 17 for instructions relative to willful violations of the Fair Labor Standards Act).*

## PROCEED TO QUESTION 15

**QUESTION NO. 15**

Did the Driver Plaintiffs prove that Will Schmid was their "employer" pursuant to the

Fair Labor Standards Act?

Answer "yes" or "no": _____.


*(To assist in answering this question, see Jury Instruction No. 18 for instructions on the meaning*

*of "employer under the Fair Labor Standards Act).*


**SIGNED BY FOREPERSON**_____


**DATE: _____, 2014.**