IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NICOLE OLIBAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:11-cv-2388-B |
| | § | |
| JOHN BARCLAY AND NATIVE OILFIELD SERVICES, LLC | § | |
| | § | |
| Defendants. | § | |
| | § | |
| REGINALD E. WILLIAMS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:11-cv-2388-B |
| | § | |
| NATIVE OILFIELD SERVICES, LLC, JOHN BARCLAY and WILL SCHMID | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' TRIAL BRIEF REGARDING REPRESENTATIVE
TESTIMONY FOR THE DRIVER PLAINTIFFS' DAMAGES**

Pursuant to the Court's instructions at the July 25, 2014 pre-trial conference, Plaintiffs file this Trial Brief Regarding Representative Testimony for the Driver Plaintiffs' Damages. This Brief is also presented in support of Plaintiffs' First Amended Jury Instructions (Doc. No. 243).

I. **BACKGROUND AND SUPPORTING FACTS**

In this consolidated Fair Labor Standards Act ("FLSA") collective action lawsuit, there are two classes of Plaintiffs –Dispatchers and Drivers. All Dispatchers have joined this lawsuit as individual named Plaintiffs. However, the Driver case involves a FLSA collective action consisting of four named Plaintiffs and 108 opt-in Plaintiffs. At the July 25, 2014 pre-trial conference, Counsel for Defendants indicated that, while Defendants agree to representative

-1-

testimony as to a liability determination for the Drivers, Defendants now believe that individual evidence of each of the 112 Driver Plaintiffs' hours worked and regular rates of pay is required by the jury and the Court[1] in order to determine the damages due, if any, to each of the Driver Plaintiffs. Defendants filed a Brief in support of that position on July 26, 2014. (Doc. No. 241 ("Defendants' Brief")) which Plaintiffs address herein. Defendants' new position is completely contrary to stipulations they made in the Joint Proposed Pre-Trial Order regarding representative testimony for liability and damages in the Driver case. (App. pp. 1-18, Doc. No. 225 (the "PTO"))

Furthermore, as explained below in more detail, Fifth Circuit case law expressly allows not only representative testimony on damages in FLSA collective actions, but also permits Plaintiffs to request the jury to find a weekly average of unpaid overtime hours on a class basis that the Court can use to calculate damages. *See Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 318 (5th Cir. 1981) (approving award based on employee testimony that groups of employees averaged certain number of hours per week and calculations from that testimony).

**A.     Stipulations of the Parties as to Representative Testimony**

As an initial matter, Plaintiffs believe that the Parties should stick by the stipulations made in the PTO submitted in this case that materially affect how this case will be tried. (*See* App. pp. 1-18, Doc. No. 225 (the "PTO")). In that PTO, Plaintiffs and Defendants stipulated that **"[t]he Parties propose offering representative testimony in the Driver case as to liability and damages with a representative class of 5% of the 112 named and opt-in Plaintiffs.**" (*Id.* at p. 16) (emphasis added). The Parties also cited several cases in the PTO which support their position that representative testimony is appropriate for liability and damages in FLSA collective actions. (*Id.* at p. 16, n. 7)

---

[1] It is the role of the jury to determine the number of unpaid overtime hours worked, and then the role of the Court to determine the regular rate of pay and corresponding damages for those unpaid overtime hours. *See Black v. Settlepou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013).

-2-

**B.** **Defendants File a Brief 36 Hours Before the Start of Trial Attempting to Back Out of Their Stipulations**

Reminiscent of not asserting any FLSA exemption in the Dispatcher and Driver cases until after the initial close of the discovery period and after Plaintiffs had filed their First Motion for Summary Judgment,[2] Defendants, like an ever moving target, are attempting to dramatically shift the issues in dispute and Plaintiffs' ability to prove their case at the last minute. In Defendants' Brief, they claim that the stipulation they made in the June 25, 2014 PTO that the Driver case would be tried with representative testimony as to liability AND damages never really happened. (Doc. No. 241, p. 3 n.3). The primary basis for this attempted reversal is Defendants' claim that the stipulation is in Section F of the PTO, which is the section titled "Additional Matters Which May Aid in Disposition of Case" as opposed to Section B of the PTO which is titled "Statement of Stipulated Facts." (*Id.*) While the location of the stipulation in the PTO should make no difference, it nevertheless makes absolutely no sense for Defendant to argue that they just confused because the representative testimony stipulation was not listed as a stipulated fact in Section B.

Defendants go on to allege that the Parties supposedly did not discuss the items in the PTO, which is absolutely incorrect. As set forth in the attached e-mails, there were numerous discussions regarding the PTO and a final phone conference on the PTO on June 24, 2014. (App. pp. 19-41). As set forth in those e-mails, Defendants made numerous changes to the proposed PTO. However, changing representative testimony was not something that concerned them, until now.

Finally, if the Court does not buy any of those excuses, Defendants finish with a statement that they will just seek to withdraw the stipulation. *Id.*

---

[2] (*See* Doc. No. 164).

The Court will recall that Defendants made none of those arguments at the pre-trial hearing, and instead cited the *Ransom* and *Betty Black* cases[3] as their basis for suddenly wanting to make the Plaintiffs present individual evidence and analysis of damages for the Driver Plaintiffs. As *Ransom* and *Black* have absolutely nothing to do with representative testimony,[4] counsel for Plaintiffs was puzzled as to why Defendants would even mention those cases. Now, notably missing from Defendants' Brief is any reference to *Ransom* or *Black* in support of their claim that representative testimony for damages is not appropriate. (Doc. No. 241). Apparently Defendants were just grabbing at straws at the pre-trial hearing in an attempt to make changes that prejudice Plaintiffs.

**C.  Prejudice to Plaintiffs if Defendants are Permitted to Withdraw Their Stipulation Regarding Representative Testimony 36 Hours Before the Start of Trial**

Plaintiffs submitted their Witness List and Exhibit List based on the stipulations made by the Parties in the PTO. Materially altering the representative testimony stipulation will prejudice Plaintiffs' ability to present their case. Should Defendants be permitted to so dramatically change the parameters of this trial, then Plaintiffs request additional time to reconsider their Witness List, Exhibit List and strategy in presenting their case-in-chief. Furthermore, the estimated length of trial set forth in the PTO is premised on representative testimony as to both liability and damages for the Driver Plaintiffs. Should an individual analysis of hours worked and rates of pay be required for each of the 112 Driver Plaintiffs in this case, then the trial of this lawsuit is not one week in length, but instead more likely two. The complexities in Defendants' proposed approach are further demonstrated in their first proposed jury charge on this issue which is 444 pages in

---

[3] Which refers to *Ransom v. M. Patel Enters.*, 734 F.3d 377 (5th Cir. 2013) and *Black v. Settlepou, P.C.*, 732 F.3d 492 (5th Cir. 2013).

[4] *Ransom* and *Black* did not address in the slightest the issue of representative testimony. Instead, those cases dealt with a method of calculating damages known as the Fluctuating Workweek Rule which is not applicable to the Driver Plaintiffs since they were never paid with a salary. *Ransom*, 734 F.3d at 379-80; *Black*, 732 F.3d at 496-501.

length. (*See* Doc. No. 225, pp. 43-491). Although Defendants filed a second proposed jury charge which lists only 29 pages, they identify that, while they intend to require a week-by-week spreadsheet to be completed by the jury as to each of the 112 Driver Plaintiffs, they provide only a few examples in that filing. (Doc. Nos. 240, p. & 240-1). So, the length of the second proposed jury charge should be expected to be approximately 444 pages long which is unnecessary impractical.

D.    **The Driver Plaintiffs are all "Similarly Situated"**

Additionally, the position now offered by Defendants appears to be that the Drivers are not similarly situated for purposes of collective action treatment. In fact, portions of Defendants' Brief even cite cases that decertified collective actions, albeit not at the trial stage. (*See, e.g.,* Doc. No. 241, p. 5 *citing Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 283-84 (N.D. Tex. 2008). However, 36 hours before trial is too late for Defendants to make a *de facto* motion to decertify the collective action. The procedural posture of this case is that the Driver Plaintiffs are similarly situated under the FLSA, and representative testimony is therefore appropriate. If Defendants really thought the 112 Driver Plaintiffs were not similarly situated with respect to liability and damages, they would have moved for decertification long ago.

Furthermore, Defendants' individualized testimony and decertification arguments fail to mention the deficiencies in their records of which this Court may not be aware. Defendants stipulated in the PTO that they did not produce any payroll or other records for any Driver Plaintiff for 2013 and 2014 in this lawsuit. (Doc. No. 226, p. 11). But more importantly, the Driver case is premised on off-the-clock work for which time records obviously do not exist. In fact, Native Oilfield's President, John Barclay ("Barclay"), testified in his deposition that Driver Plaintiffs sometimes showed up ready, willing and able to work at their scheduled start times, but were not allowed to clock in for pay until a later time depending on when a truck was ready. (App.

pp. 44-45 at Depo. p. 137, l. 7 – p. 138, l. 9). Barclay also confirmed that Drivers were not paid for all hours worked after being issued a truck in connection with things such as wait time with their trucks at well sites. (App. p. 46 at Depo. p. 143, ll. 1 – 25). So, while there is no stipulation on this point, it really should not be disputed that the Driver Plaintiffs have worked unpaid overtime hours for which Defendants have no time records.

In cases such as this where the employer fails to keep and produce the payroll records required by 29 C.F.R. § 516.2 showing accurate daily and weekly hours worked, employees are permitted to estimate their hours worked which the finder of fact must accept unless the Defendant can prove the estimate is unreasonable. *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946); *Skipper v. Superior Dairies, Inc*., 512 F.2d 409, 419-20 (5th Cir. 1975); *Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir.1973)).

Considering the facts of this case relative to the Defendants' record keeping obligations, Defendants' argument for an individualized damage analysis makes even less sense as Defendants have no evidence of the Driver Plaintiffs' off-the-clock hours worked. Further complicating Defendants' suggested approach is the fact that the only admitted documentary evidence regarding the Plaintiffs' off-the-clock hours worked are the declarations provided by the Driver Plaintiffs. (Plaintiffs' Ex. 12). A spreadsheet summarizing the Driver Plaintiffs' weeks worked and damages claimed due has also been admitted into evidence. (Plaintiffs' Ex. 10).

Defendants have no records whatsoever to rebut the Driver Plaintiff's estimates of their unpaid overtime hours. If Defendants want to enter a stipulation as to the unpaid hours worked and overtime hourly rates of pay/damages set forth in the declarations and summary, then that is acceptable to Plaintiffs. Otherwise, an average number of unpaid hours on a weekly basis and rates of pay should be established through the representative testimony of the Driver Plaintiffs.

II.    <u>CONTROLLING LAW ON REPRESENTATIVE TESTIMONY IN FLSA COLLECTIVE ACTIONS</u>

The FLSA is a remedial statute whose substantive and procedural protections, including determining liability through representative testimony and collective actions, are to be read broadly to protect the most vulnerable workers. *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687 (1946); *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 173 (1989); *Reich v. Circle C. Investments, Inc.,* 998 F.2d 324, 329 (5th Cir. 1993). Collective action treatment is favored by courts because it allows "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged activity." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

### A.     Representative Testimony Where Accurate Payroll Records do not Exist

Since 1946, the Supreme Court has permitted the use of representative testimony by plaintiffs in FLSA cases to establish a pattern of behavior among a larger class of employees. *See Mt. Clemens Pottery*, 328 U.S. at 687-88; *see also*, *Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1331 (5th Cir. 1985) ("Testimony of some employees [in FLSA case] concerning the hours worked by groups of non-testifying employees is sufficient if those who do testify have personal knowledge of the work performed by those who do not.").

An important distinction about the case at bar that was not sufficiently addressed by Defendants' Brief is that fact that Defendants do not have accurate payroll records as required by the FLSA. The Drivers Plaintiffs' claims are based on off-the-clock work which necessarily means that no accurate payroll records exist. Furthermore, Defendants stipulated that they did not produce payroll records for the time period after December 2012. (Doc. No. 226, p. 11). The standards of proof in cases such as this are critical to observe. As stated by the Supreme Court in the *Mt. Clemens* case:

> where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . the solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Mt. Clemens*, 328 U.S. 680, 687-88. In meeting the burden under *Mt. Clemens*, plaintiffs are not required to present testimony from each underpaid employee; rather, plaintiffs may present the testimony of a representative sample of employees as part of their proof of the prima facie case under the FLSA. *Reich v. Southern Maryland Hosp., Inc.*, 43 F.3d 949, 951 (4th Cir. 1995). Producing representative testimony on a given pattern or practice is an acceptable method of trying an FLSA case. *Donavon v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985).

The glue that binds in order to offer representative testimony on damages is that "the representative employee performed substantially similar, if not identical, work to the non-testifying employees." *Reich v. Southern Maryland Hospital*, 43 F.3d 949, 951 (4th Cir. 1995); *Proctor*, 250 F.R.D. at 280 (While the plaintiffs must be "similarly situated," this does not mean they must establish that they are "identically situated.")

Here, it should not be disputed that each of the 112 Driver Plaintiffs drove 18 wheelers delivering sand for Native Oilfield from either its Alvarado or Hondo locations. As explained above, Barclay testified in his deposition that he knew Drivers were not paid for period of time between reporting to work at their scheduled time and being issued a truck, and that Drivers were also not paid for all time while in that truck. (App. pp. 44-46 at Depo. p. 137, l. 7 – p. 138, l. 9 &

p. 143, ll. 1 – 25). That unpaid time is the very basis of the Driver Plaintiffs' claim for unpaid overtime wages. The Driver Plaintiffs are similarly, if not identically situated. In any event, as Defendants did not timely move to decertify the collective action, the procedural posture of this case is that the Driver Plaintiffs are necessarily "similarly situated."

Under the FLSA, the burden is on the plaintiff to show that an employee has performed compensable work for which he was not properly paid. *Reich v. Chez Robert, Inc.*, 821 F.Supp. 967 (D.N.J. 1993), *judgment vacated on other grounds*, 28 F.3d 401 (3rd Cir. 1994). The number of hours worked by an employee is a question of fact for the jury. *Mt. Clemens*, 328 U.S. at 694. Again, where the employer's records are inaccurate or inadequate, the amount of working time may be established by the testimony of the employee, and, if documentary evidence is not available to establish an employee's claim, the testimony may be based upon the employee's recollection. *Mumbower v. Callicot*, 526 F.2d 1183 (8th Cir. 1975). The employee satisfies this burden with direct or circumstantial evidence. *Shelton v. Ervin*, 646 F.Supp. 1011, 1019 (M.D. Ga. 1986), *aff'd* 853 F.2d 931 (11th Cir. 1988).

### B.   Plaintiffs' Suggested Weekly Average Approach for Unpaid Overtime Hours has been Accepted by the Fifth Circuit in Addition to Other Courts

Choosing a method of calculating damages is governed by the notion that the approach must be "reasonable and logical." *McLaughlin v. McGee Brothers*, 681 F.Supp. 1117, 1136 (W.D.N.C. 1988). Contrary to Defendants' arguments,[5] many courts, including the Fifth Circuit, have permitted overtime damages to be determined based on a certain number of average hours per week that are established through representative testimony. *See Hamm's Drive Inn*, 661 F.2d at 318 (approving award based on employee testimony that groups of employees averaged certain number of hours per week and calculations from that testimony); *Marshall v. Mammas Fried*

---

[5] (*See* Doc. No. 243, p. 3 n.2 where Defendants state "[t]here is simply no authority to support such a [weekly average] damage theory and it runs counter to Fifth Circuit precedent.")

*Chicken, Inc.*, 590 F.2d 598, 599 (5th Cir. 1979) (same); *Beliz,* 765 F.2d at 1331 (same); *Donavon v. New Floridian Hotel, Inc.,* 676 F.2d 468, 471-72 (11th Cir. 1982) (same).

In *Hamm's Drive Inn*, the trial court found, "based on the testimony of employees, that certain groups of employees averaged certain numbers of hours per week and awarded back pay based on those admittedly approximate calculations." *Hamm's Drive Inn*, 661 F.2d at 318. The Fifth Circuit noted that the trial court's "calculations were made in accordance with accepted practice; the appellants have failed to demonstrate that they are clearly erroneous." *Id.*

With regards to the number of plaintiffs needed to provide representative testimony, the 5% number stipulated to by Plaintiffs and Defendants in consistent with well-established FLSA case law. *See, e.g., Reich v. Southern New England Telecommunications Corp*., 121 F.3d 58, 61, 66-67 (2d Cir. 1997) (approving 2.7% sample size [39 employees] to award back pay to 1500 employees); *McLaughlin v. DialAmerica Mktg., Inc*., 716 F.Supp. 812, 815, 824-825 (D. N.J. 1989) (back pay awarded to 350 non-testifying employees on basis of trial testimony of 24 employees and deposition testimony of 19 employees (5.4%)); *Dole v. Snell*, 875 F.2d 802 (10th Cir. 1989) (Department of Labor offered testimony of one employee and the compliance officer to support an award to 32 employees in FLSA independent contractor misclassification case (3%)); *Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 540-41 (S.D. Tex. 2008) (approving of representative testimony "from a small number of employees…for a larger number of employees" in FLSA cases)).

### III.  CONCLUSION

The Driver Plaintiffs should be permitted to present representative testimony of their unpaid hours worked, rates of pay and all other elements of their case. Furthermore, based on clear case law from the Fifth Circuit, the jury in this case should be permitted to determine a weekly average number of unpaid overtime hours for the Driver Plaintiffs that is then extrapolated by the

number of weeks each Driver Plaintiff was employed by Defendants. Plaintiffs request that the Court adopt their First Amended Jury Instructions (Doc. No. 243).

>Respectfully submitted,
>
>BARON & BUDD, P.C.
>
>By: /s/Allen R. Vaught
>    Allen R. Vaught
>    avaught@baronbudd.com
>    State Bar No. 24004966
>    3102 Oak Lawn Avenue, Suite 1100
>    Dallas, Texas 75219
>    (214) 521-3605 – Telephone
>    (214) 520-1181 - Facsimile
>
>ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

On July 27, 2014, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the ECF filing system of the court.

>By: /s/Allen R. Vaught
>    Allen R. Vaught