# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| NICOLE OLIBAS, REGINALD WILLIAMS, DONNY HODKINSON, TINA MCDONALD, and CAROL JOHNSON, | § § § § § | **ORIGINAL** |
| Plaintiffs, | § § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-2388-B |
| NATIVE OILFIELD SERVICES, LLC and JOHN BARCLAY, | § § § | |
| Defendants. | § § § | |
| REGINALD WILLIAMS, DONNY HODKINSON, TINA MCDONALD, and CAROL JOHNSON, on behalf of themselves and all others similarly situated, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:11-CV-2388-B |
| NATIVE OILFIELD SERVICES, LLC and JOHN BARCLAY, | § § § | |
| Defendants. | § | |

## JURY INSTRUCTIONS

**MEMBERS OF THE JURY:**

## I.      GENERAL INSTRUCTIONS

### A.      *Introduction*

You have heard the evidence in this case. I will now instruct you on the law that you must

apply. It is your duty to follow the law as I give it to you. On the other hand, you, the jury, are the

judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You have heard the closing arguments of the attorneys. Questions, statements, and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Do not let bias, prejudice, or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. Your answers and your verdict must be unanimous.

### B.      Burden of Proof

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

### C.      Witness Testimony

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did

something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

### D.   Evidence

You must consider only the evidence in this case. That said, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if, after considering all the other evidence, you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all

the evidence, both direct and circumstantial.

### E.   *Demonstrative Evidence*

Certain exhibits, such as spreadsheets, have been shown to you for purposes of illustration only. They are used by a party to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

### F.   *Objections and Arguments by Counsel*

During the course of the trial, you have heard counsel make objections to evidence. It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. You should not draw any inference against an attorney or his client because the attorney has made objections.

Upon allowing testimony of other evidence to be introduced over the objection of any attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court has sustained an objection to a question addressed to a witness, or to the introduction of any other evidence, you must disregard the question entirely, and may draw no inference from the wording of it, or speculate as to what the witness would have said if the witness had been permitted to answer.

From time to time during the trial, it may have been necessary for me to talk with the attorneys out of your hearing, either by having a conference at the bench when you were present in the courtroom, or by calling a recess. The purpose of these conferences was not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence

and to avoid confusion and error.

>  **G.**    *Use of Notes Taken by Jurors*

Any notes that you have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

## II.   DEFINITIONS

Throughout the remainder of these instructions, I refer to the following abbreviated terms, which are defined as follows:

1.   "FLSA" refers to the Fair Labor Standards Act.

2.   "Native Oilfield" refers to Defendant Native Oilfield Services, LLC.

3.   "Barclay" refers to Defendant John Barclay.

4.   "Dispatcher Plaintiffs" refers to the group of Plaintiffs with FLSA claims related to their employment in Native Oilfield's dispatch department.

5.   "Driver Plaintiffs" refers to the group of Plaintiffs with FLSA claims related to their employment as drivers for Native Oilfield.

6.   "Administrative Exemption" refers to an FLSA overtime pay exemption asserted by Defendants against the Dispatcher Plaintiffs.

7.   "Executive Exemption" refers to an FLSA overtime pay exemption asserted by Defendants against the Dispatcher Plaintiffs.

8.   "MCA" refers to the Motor Carrier Act.

9.   "MCA Exemption" refers to the Motor Carrier Act exemption to the FLSA overtime pay provisions that Defendants assert against Driver Plaintiffs.

III.   STIPULATED FACTS

The parties have agreed, or stipulated, to the following facts. This means that both sides agree that these are established facts. You must therefore treat these facts as having been proven.

A.   *Stipulated Facts as to all Parties*

1.   Native Oilfield is an "enterprise engaged in commerce," as defined by the FLSA, and is an "employer" of all Plaintiffs under the FLSA at all times relevant to this lawsuit.

2.   Native Oilfield is a Texas-based entity that provides commercial transportation services to pressure pumping companies in the oil and gas industry.

3.   Native Oilfield maintains two yards from which drivers are dispatched. One is in Alvarado, Texas and the other is in Hondo, Texas.

4.   At all times relevant to this case, Barclay has been the president of Native Oilfield.

5.   Barclay is an "employer," under the FLSA, of all Plaintiffs in this case, and is jointly and severally liable, along with Native Oilfield, for the Plaintiffs' damages, if any.

B.   *Stipulated Facts as to Dispatcher Plaintiffs*

6.   The Dispatcher Plaintiffs worked in Native Oilfield's dispatch department.

7.   Dispatcher Plaintiffs Nicole Olibas, Tina McDonald, and Carol Johnson were paid on a salary basis at least $455 per workweek, exclusive board, lodging, and other facilities, at all times relevant to this lawsuit.

8.   Dispatcher Plaintiff Reginald Williams was paid on an hourly rate at all relevant times that he worked in Native Oilfield's dispatch department.

9.   The Dispatcher Plaintiffs' primary job duties involved the performance of office or non-manual work.

10.   None of the Dispatcher Plaintiffs were ever the manager of Native Oilfield, or of Native Oilfield's dispatch department.

11.   Each of the Dispatcher Plaintiffs regularly worked more than 40 hours per workweek for Defendants.

12. Defendants did not pay the Dispatcher Plaintiffs one and a half times their respective rates of pay (i.e., overtime pay) for any hour worked over 40 in any workweek.

13. Defendants do not have an accurate record of the hours worked by the Dispatcher Plaintiffs per week as set forth in 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2.

**C.** *Stipulated Facts as to Driver Plaintiffs*

14. Native Oilfield is a "motor carrier" under 49 U.S.C. § 13501.

15. All of the vehicles operated by the Driver Plaintiffs during the course of their employment with Native Oilfield weighed more than 10,000 pounds.

16. Defendants produced no documents for any of the Driver Plaintiffs for the time period after 2012.

17. Defendants do not have the records required by 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2(a)(1)-(12) as to any driver for fiscal year 2013.

18. Native Oilfield classified Driver Plaintiffs as FLSA non-exempt in fiscal year 2009.

**D.** *Stipulated Facts as to Liquidated Damages/Willfulness*

19. Defendants' efforts to determine whether they should pay overtime compensation to the Dispatcher and Driver Plaintiffs consisted of Barclay, Will Schmid, and Native Oilfield's human resources manager, Cristina Chapa, internally reviewing the criteria in the FLSA.

20. Defendants did not consult a lawyer, accountant, the U.S. Department of Labor, or any other person, entity or agency outside of Native Oilfield for a determination as to whether Dispatcher Plaintiffs should be paid overtime compensation.

21. Defendants did not consult a lawyer, accountant, the U.S. Department of Labor or any other person, entity or agency outside of Native Oilfield for a determination as to whether Driver Plaintiffs' time spent waiting to be issued a truck, time at well-sites, time at staging areas or time spent driving should be considered compensable work under the FLSA.

22. At all relevant times in this case, Defendants were aware of the FLSA's minimum wage and overtime wage requirements.

23.     At all relevant times in this case, Defendants posted notice of the FLSA's wage requirements in a conspicuous place in every establishment where Defendants' employees are or were employed.

## IV.   THE PARTIES' CLAIMS REGARDING THE DRIVER PLAINTIFFS

### A.   *Driver Plaintiffs' Individual FLSA Overtime Claims*

The Driver Plaintiffs claim that Defendants violated the FLSA, a federal law that requires employers to pay time-and-a-half overtime wages to eligible employees. To establish their claims, the Driver Plaintiffs must prove each of the following elements by a preponderance of the evidence:

(1) Defendants employed the Plaintiffs during the time period involved in this lawsuit;

(2) Native Oilfield was an enterprise engaged in commerce under the FLSA;  and

(3) Native Oilfield failed to pay the Plaintiffs overtime pay in accordance with the FLSA.

The first two elements are not in dispute, because as you will recall, the Parties stipulated that Defendants employed Plaintiffs at all relevant times and that Native Oilfield was an enterprise engaged in commerce under the FLSA. Therefore, you only need to determine whether the Driver Plaintiffs proved the third element of their FLSA overtime claims.

With respect to the third element, Plaintiffs must establish by a preponderance of the evidence that the Driver Plaintiffs worked more than 40 hours during any of the 7-day workweeks in which they were employed at Native Oilfield as drivers, and that during such workweek(s), the Defendants failed to pay such Driver Plaintiff(s) one and one-half times his or her regular rate of pay for the overtime hours he or she worked.

Element 3: Determining What Constitutes "Hours Worked"

The Plaintiffs claim that the time Driver Plaintiffs spent waiting to receive their assigned trucks constitutes "hours worked" for which the Driver Plaintiffs should have been, but were not, paid overtime. Defendants contend that the Driver Plaintiffs were in fact paid for all "hours worked,"

and that if there were occasions when a Driver Plaintiff waited without being paid, it was because such wait time on those occasions did not constitute "hours worked."

The FLSA requires that eligible employees receive overtime pay for "hours worked" in excess of forty during the workweek. Under the FLSA, "hours worked" includes all time spent by an employee that was primarily for the benefit of the employer or the employer's business. Such time constitutes "hours worked" if the employer knew or should have known that the work was being performed. Work not requested but suffered or permitted is work time that must be compensated. If the employer knows or has reason to believe that the employee is continuing to work then that time is working time.

However, periods during which an employee is completely relieved of duty that are long enough to enable the employee to use the time effectively for his own purposes are not hours worked. For example, bona fide meal periods at least 30 minutes in length in which the employee is relieved from all duties are not hours worked. However, short breaks less than 20 minutes during the workday must be counted towards hours worked.

Whether the time an employee spends waiting to work counts towards "hours worked" depends on the totality of the circumstances. If you determine that the Driver Plaintiffs were engaged by the Defendants to wait, then the time they spent waiting should be included in the number of hours they worked.  If, on the other hand, you determine that the Plaintiffs were merely waiting to be engaged, then that wait time should not be included in the number of hours they worked.  Such questions must be determined in accordance with common sense and the general concept of work.

By way of example, a truck driver who has to wait at or near the job site for goods to be loaded is working during the loading period. If the driver reaches his destination and while awaiting

the return trip is required to take care of his employer's property, he is also working while waiting. In both cases the employee is engaged to wait. Waiting is an integral part of the job. On the other hand, for example, if the truck driver is sent from Washington, D.C. to New York City, leaving at 6 a.m. and arriving at 12 noon, and is completely and specifically relieved from all duty until 6 p.m. when he again goes on duty for the return trip the idle time is not working time. He is waiting to be engaged.

## QUESTION NO. 1

For each of the following Driver Plaintiffs, did the Plaintiffs prove by a preponderance of the evidence that Defendants failed to pay such Driver Plaintiff one and one-half times his or her regular rate of pay for "hours worked" over forty during any 7-day workweek at Native Oilfield?

Instruction: Plaintiffs bear the burden of proof. If you find that Plaintiffs met their burden for any of the below Driver Plaintiffs, answer "Yes" for such Driver Plaintiff(s). If you find that Plaintiffs failed to meet their burden here for any of the below Driver Plaintiffs, answer "No" for such Driver Plaintiff(s).

ANSWER FOR DRIVER PLAINTIFF CAROL JOHNSON _____*Yes*_____

ANSWER FOR DRIVER PLAINTIFF DONNY HODKINSON _____*Yes*_____

ANSWER FOR DRIVER PLAINTIFF REGINALD WILLIAMS _____*Yes*_____

ANSWER FOR DRIVER PLAINTIFF TINA MCDONALD _____*Yes*_____

*Instruction: If you answer "No" for ALL of the Driver Plaintiffs in Question No. 1, then skip to Section VI of these instructions and do NOT answer Questions Nos. 2-6. Otherwise, proceed to the next subsection of these instructions.*

**B.**     *Driver Plaintiffs' Collective FLSA Overtime Claims*

If you find that Plaintiffs met their burden with respect to any of the individual Driver Plaintiffs' claims, you must next determine whether the Plaintiffs have established their FLSA claims on behalf of the Driver Plaintiffs as a collective unit.

The Driver Plaintiffs filed their FLSA overtime pay lawsuit as a collective action, which is similar to a class action. In a collective action, it is not necessary that all of the Plaintiffs testify in order to prove violations or damages. Rather, the Plaintiffs may rely on representative testimony.

The Plaintiffs have put on testimony alleged to be representative of all of the Driver Plaintiffs in this case. The Driver Plaintiffs who testified must be "fairly representative" of the Driver Plaintiffs as a collective unit. In other words, their testimony must fairly represent the non-testifying Driver Plaintiffs' experiences. In determining whether the Driver Plaintiffs' testimony is fairly representative, you may consider such factors as the nature of the work involved, the degree of similarity in Driver Plaintiffs' working conditions, the relationships between Driver Plaintiffs and managers, and the detail and credibility of the testimony and whether such testimony is generally consistent.

## QUESTION NO. 2

Do you find that the Plaintiffs proved by a preponderance of the evidence that the Defendants failed to pay Driver Plaintiffs, as a collective unit, overtime pay in accordance with the FLSA?

ANSWER _____*Yes*_____

*Instruction: If you answer "No" to Question No. 2, and "No" for all Driver Plaintiffs listed in Question No. 1, skip to Section VI and do NOT answer Question Nos. 3-6. Otherwise, proceed to the next subsection of instructions.*

### C.   *Defendants' MCA Exemption—Driver Plaintiffs*

Even if you find that Plaintiffs met their burden with respect to their FLSA overtime claims, you must enter a verdict in favor of the Defendants if you find that the Defendants have established by a preponderance of the evidence that the Plaintiffs are exempt from the overtime pay requirements of the FLSA.

Defendants claim that the Driver Plaintiffs are exempt from the FLSA under the MCA Exemption. To receive the benefit of the Motor Carrier Act Exemption, Defendants must prove that:

(1) The Driver Plaintiffs are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the jurisdiction of the U.S. Department of Transportation; and

(2) The Driver Plaintiffs engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the MCA Exemption.

Further instructions regarding the elements of the MCA Exemption are as follows.

Element 1: Carrier Subject to Department of Transportation's Jurisdiction

In order to establish the first element, the Defendants must prove that Native Oilfield is a "motor carrier" that engages in "interstate commerce." As mentioned, the Parties stipulated that Native Oilfield is a "motor carrier." You will, therefore, only need to determine whether Native Oilfield engaged in "interstate commerce" for purposes of this element.

"Interstate commerce," for purposes of the MCA Exemption, means the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce.

Element 2: Activities Directly Affecting Safety in Interstate Commerce

To satisfy the second element of the MCA Exemption, the Defendants must prove that the

Driver Plaintiffs drove in "interstate commerce." Highway transportation by motor vehicle from one state to another, in the course of which the vehicles cross the state line, constitutes interstate commerce.

It is not necessary that every Driver Plaintiff actually cross state lines or be engaged in interstate commerce in order for the MCA Exemption to apply to all of them. Rather, you must evaluate the Driver Plaintiffs *as a group* and determine if they could have been *reasonably expected* to drive to states other than Texas during the course of their employment. In doing so, you should ask whether the Driver Plaintiffs were or could have been called on to drive to states other than Texas as part of their continuing job duties at Native Oilfield. For example, one way drivers can be considered to be "reasonably expected" to drive in interstate commerce is if interstate trips are indiscriminately distributed by the employer to the drivers as part of their continuing job duties.

## QUESTION NO. 3

Do you find that Defendants proved by a preponderance of the evidence each essential element of the MCA Exemption as applied to the Driver Plaintiffs as a group?

Instruction: Defendants bear the burden of establishing the MCA Exemption. If you find Defendants have met their burden, answer "Yes." If not, answer "No."

ANSWER ____*No*____

Instruction: If you answer "Yes," skip to Section VI and do NOT answer Questions Nos. 4-6. Otherwise, proceed to the next section of these instructions.

## V.    DAMAGES IN THE DRIVER PLAINTIFFS' CASE

If you find that Plaintiffs have established any of the Driver Plaintiffs' claims—either the individual claims or the collective action claim—and that Defendants have failed to establish their MCA Exemption, you must next determine certain issues related to the damages claimed by the Driver Plaintiffs.

### A.    *Driver Plaintiffs' Unpaid Overtime Hours*

Under the FLSA, the Court may award the Plaintiffs backpay for any overtime compensation they should have been paid by Defendants. To aid in this determination, you must decide how many overtime hours, if any, the Plaintiffs have shown they worked without receiving time-and-a-half compensation.

Generally, it is the Plaintiffs' burden to demonstrate, from a preponderance of the evidence, the amount and extent of unpaid overtime hours worked.

However, if you find that the Defendants failed to maintain adequate records of the overtime hours that the Driver Plaintiffs worked each week, the Plaintiffs need to only produce just and reasonable approximations of the unpaid hours they worked. If you find such approximations to be just and reasonable, you must accept the Plaintiffs' estimated hours, unless you find that the Defendants were able to produce evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the Plaintiffs' evidence.

## QUESTION NO. 4

For the following Driver Plaintiffs, what number of unpaid overtime hours, if any, do you find that such Driver Plaintiff worked on average during the workweeks in which he or she was employed as a driver?

Instruction: Only answer this question with respect to those Driver Plaintiffs you found in favor of on the issue of Defendants' liability under the FLSA. Your answer should be in average hours per workweek.

ANSWER FOR DRIVER PLAINTIFF CAROL JOHNSON _____11_____

ANSWER FOR DRIVER PLAINTIFF DONNY HODKINSON _____13_____

ANSWER FOR DRIVER PLAINTIFF REGINALD WILLIAMS _____10_____

ANSWER FOR DRIVER PLAINTIFF TINA MCDONALD _____5_____

Instruction: If you answer "0" for each of the above Driver Plaintiffs, skip Question No. 5 and proceed to Section VI. Otherwise, answer Question No. 5.

## QUESTION NO. 5

What number of unpaid overtime hours, if any, do you find that the Driver Plaintiffs as a collective unit worked on average during the workweek in which they were employed as drivers?

Instruction: Reference the above jury instructions regarding "Representative Testimony" for guidance in answering Question No. 5. Your answer should be in average hours per workweek.

ANSWER _____18_____

Instruction: If you answered "0" for Question No. 5 and for all Plaintiffs in Question No. 4, skip to Section VI and do NOT answer Question No. 6. Otherwise, proceed to the next subsection of these instructions.

**B.**    *Willful Violation*

If you find in favor of the Plaintiffs on any of their FLSA claims, you must determine whether the Defendants' failure to pay overtime was "willful" for purposes of awarding additional damages. Defendants' failure to pay overtime was willful if Plaintiffs have proven by the preponderance of the evidence either that Defendants (1) knew their conduct was prohibited by the FLSA, or (2) showed reckless disregard for whether their conduct was prohibited by the FLSA.

## QUESTION NO. 6

For the Driver Plaintiffs, do you find that Plaintiffs proved by a preponderance of the evidence that Defendants' FLSA violation(s) were "willful"?

> Instruction: Only answer this question if you found in favor of one or more of the Driver Plaintiffs regarding the Defendants' liability under the FLSA. Plaintiffs bear the burden. If you find they have met their burden, answer "Yes." If not, answer "No."

ANSWER _Yes_

*Instruction: Proceed to the Section VI and Question No. 7.*

## VI.    DISPATCHER PLAINTIFFS' CASE

The Dispatcher Plaintiffs also claim that the Defendants failed to pay them overtime in accordance with the FLSA. However, the Parties' Stipulations regarding the Dispatcher Plaintiffs claims make it unnecessary for you determine whether the Dispatcher Plaintiffs established all three elements of their FLSA claims.

The Defendants claim that the Dispatcher Plaintiffs are exempt from the overtime pay requirements of the FLSA under either the Administrative Exemption or Executive Exemption. If you find that the Defendants proved either exemption by a preponderance of the evidence, you must return a verdict in the Defendants' favor in the Dispatcher Plaintiffs' case.

### A.    *Defendants' Administrative Exemption—Dispatcher Plaintiffs*

To receive the benefit of the Administrative Exemption, Defendants must prove that each of the Dispatcher Plaintiffs was an employee:

(1)    Who was compensated on a salary basis at a rate of not less than $455 per week;

(2)    Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3)    Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

For the first element, you will only be asked to determine whether the Defendants met their burden with respect to Dispatcher Plaintiff Donny Hodkinson. As you will recall, the Parties stipulated that Dispatcher Plaintiffs Nicole Olibas, Tina McDonald, and Carol Johnson were each paid on a salary basis at a rate not less than $455 per week. They further stipulate that Reginald Williams was paid on an hourly basis, and so, it is undisputed that the Defendants cannot satisfy their

burden for him with respect to this exemption.

For the second element, the parties stipulate that Dispatcher Plaintiffs' primary duties involved the performance of office or non-manual work.

Further instructions regarding the elements of the Administrative Exemption are as follows.

Elements 2 & 3: Primary Job Duty

The phrase "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

Element 2: Directly Related to Management or General Business Operations

The second element's phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must  perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health;

personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

Element 3: Discretion and Independent Judgment

The "exercise of discretion and independent judgment" generally involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.

The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether

the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. Discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled a "statistician."

An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly. For example, a messenger who is entrusted with carrying large sums of money does not exercise discretion and independent judgment with respect to matters of significance even though serious consequences may flow from the employee's neglect. Similarly, an employee who

- 25 -

operates very expensive equipment does not exercise discretion and independent judgment with respect to matters of significance merely because improper performance of the employee's duties may cause serious financial loss to the employer.

## QUESTION NO. 7

For the following Dispatcher Plaintiffs, did Defendants prove by a preponderance of the evidence each of the essential elements of the Administrative Exemption?

Instruction: Defendants have the burden of proof. They must prove by the preponderance of the evidence each element of the Administrative Exemption. If you find that Defendants have met their burden for any of the Dispatcher Plaintiffs, answer "Yes" for those Plaintiffs. If you find that Defendants have not met their burden for any of the Dispatcher Plaintiffs, answer "No" for those Plaintiffs.

ANSWER FOR PLAINTIFF NICOLE OLIBAS          _No_

ANSWER FOR PLAINTIFF DONNY HODKINSON    _No_

ANSWER FOR PLAINTIFF TINA MCDONALD        _No_

ANSWER FOR PLAINTIFF CAROL JOHNSON        _No_

Instruction: If you answer "Yes" for each of the above Plaintiffs, skip to Section VII and do NOT answer Question No. 7. Otherwise, proceed to the next subsection in these instructions.

### B.   *Executive Exemption—Dispatcher Plaintiffs*

To receive the benefit of the Executive Exemption, Defendants must prove that each of the Dispatcher Plaintiffs was an employee:

(1)   Who was compensated on a salary basis at a rate of not less than $455 per week;

(2)   Whose primary job duty was management of the enterprise in which the employee was employed or of a customarily recognized department or subdivision thereof;

(3)   Who customarily and regularly directed the work of two or more other employees; and

(4)   Who had the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

For the first element, you will only be asked to determine whether the Defendants met their burden with respect to Dispatcher Plaintiff Donny Hodkinson. As you will recall, the Parties stipulated that Dispatcher Plaintiffs Nicole Olibas, Tina McDonald, and Carol Johnson were each paid on a salary basis at a rate not less than $455 per week. They further stipulate that Reginald Williams was paid on an hourly basis, and so, it is undisputed that the Defendants cannot satisfy their burden for him with respect to this exemption.

Further instructions on the elements of the Executive Exemption are as follows.

<u>Element 2: Primary Duty, Management, Customarily Recognized Department</u>

For the second element, the employees' primary job duty must involve management of the enterprise or of a customarily recognized department or subdivision of the enterprise. See the above instructions under the Administrative Exemption for instruction on the phrase "primary job duty."

Generally, the term "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours

of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

The phrase "a customarily recognized department or subdivision" is intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function. A customarily recognized department or subdivision must have a permanent status and a continuing function. For example, a large employer's human resources department might have subdivisions for labor relations, pensions and other benefits, equal employment opportunity, and personnel management, each of which has a permanent status and function.

<u>Element 3: Two or More Other Employees</u>

The phrase "two or more other employees" means two full-time employees or their equivalent. One full-time and two half-time employees, for example, are equivalent to two full-time employees. Four half-time employees are also equivalent.

The supervision can be distributed among two or more employees, but each such employee must customarily and regularly direct the work of two or more other full-time employees or the

equivalent. Thus, for example, a department with five full-time nonexempt workers may have up to two exempt supervisors if each such supervisor customarily and regularly directs the work of two of those workers.

An employee who merely assists the manager of a particular department and supervises two or more employees only in the actual manager's absence does not meet this requirement. Hours worked by an employee cannot be credited more than once for different executives. Thus, a shared responsibility for the supervision of the same two employees in the same department does not satisfy this requirement. However, a full-time employee who works four hours for one supervisor and four hours for a different supervisor, for example, can be credited as a half-time employee for both supervisors.

### Element 4: Particular Weight

To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

## QUESTION NO. 8

For the following Dispatcher Plaintiffs, did Defendants prove by a preponderance of the

evidence each of the essential elements of the Executive Exemption?

> Instruction: Defendants have the burden of proof. They must prove by a preponderance of the evidence each element of the Executive Exemption. If you find that Defendants have met their burden for any of the Dispatcher Plaintiffs, answer "Yes" for those Plaintiffs. If you find that Defendants have not met their burden for any of the Dispatcher Plaintiffs, answer "No" for those Plaintiffs.

ANSWER FOR PLAINTIFF NICOLE OLIBAS          *No*

ANSWER FOR PLAINTIFF DONNY HODKINSON          *No*

ANSWER FOR PLAINTIFF TINA MCDONALD          *No*

ANSWER FOR PLAINTIFF CAROL JOHNSON          *No*


*Instruction: Proceed to the next section of these instructions.*

## VII.   DAMAGES IN DISPATCHER CASE

For Dispatcher Plaintiff Reginald Williams, and any of the Dispatcher Plaintiffs you found in favor of on each of the claimed exemptions, you must determine certain issues related to the damages claimed by the Dispatcher Plaintiffs.

### A.   *Dispatcher Plaintiffs' Unpaid Overtime Hours*

Under the FLSA, the Court may award the Plaintiffs backpay for any overtime compensation they should have been paid by Defendants. To aid in this determination, you must decide how many overtime hours, if any, the Plaintiffs have shown they worked without receiving time-and-a-half compensation.

Since the Parties stipulated that the Defendants failed to maintain adequate records of the overtime hours that the Dispatcher Plaintiffs worked each week, the Plaintiffs do not have to establish the Dispatcher Plaintiffs' unpaid overtime hours by a preponderance of the evidence. Rather, the Plaintiffs need to only produce just and reasonable approximations of the unpaid hours they worked. If you find such approximations to be just and reasonable, you must accept the Plaintiffs' estimated hours, unless you find that the Defendants were able to produce evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the Plaintiffs' evidence.

## QUESTION NO. 9

For the following Dispatcher Plaintiffs, what number of unpaid overtime hours, if any, do you find that such Dispatcher Plaintiff worked on average during the workweek in the course of his or her employment as a dispatcher at Native Oilfield?

Instruction: Only answer this question with respect to Reginald Williams and any of the Dispatcher Plaintiffs that you found in favor of on the issue of FLSA liability. Your answer should be in average hours per workweek.

ANSWER FOR PLAINTIFF NICOLE OLIBAS ___4___

ANSWER FOR PLAINTIFF DONNY HODKINSON ___4___

ANSWER FOR PLAINTIFF TINA MCDONALD ___4___

ANSWER FOR PLAINTIFF CAROL JOHNSON ___4___

ANSWER FOR PLAINTIFF REGINALD WILLIAMS ___0___

*Instruction: If you answer "0" for each of the above Plaintiffs, you do not need to answer any additional questions. Otherwise, proceed to the next subsection of these instructions.*

- 33 -

**B.**     *Willful Violation*

If you find in favor of the Plaintiffs on any of their FLSA claims, you must determine whether the Defendants' failure to pay overtime was "willful" for purposes of awarding additional damages. Defendants' failure to pay overtime was willful if Plaintiffs have proven by a preponderance of the evidence either that Defendants (1) knew their conduct was prohibited by the FLSA, or (2) showed reckless disregard for whether their conduct was prohibited by the FLSA.

## QUESTION NO. 10

For the Dispatcher Plaintiffs, do you find that Plaintiffs proved by a preponderance of the

evidence that Defendants' FLSA violation(s) were "willful"?

ANSWER _____*Yes*_____


*Instruction: This completes the jury questions. The jury foreperson should sign and date this verdict on the last page and return this Charge to the Court.*

## VIII.   INSTRUCTIONS ON DELIBERATIONS

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your questions and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to conduct your deliberations.

SIGNED August 5^, 2014

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

## VERDICT OF THE JURY

We, the jury, have answered the foregoing questions in the manner indicated in this verdict

form, and returned these answers into Court as our verdict.

DATE __8.5.14__

_____
**FOREPERSON**