IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NICOLE OLIBAS, KELLIE BARTON, | § | |
| REGINALD WILLIAMS, DONNY | § | |
| HODKINSON, TINA MCDONALD | § | |
| and CAROL JOHNSON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-cv-02388-F |
| | § | |
| JOHN BARCLAY AND | § | |
| NATIVE OILFIELD | § | |
| SERVICES, LLC, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| REGINALD E. WILLIAMS, | § | |
| DONNY J. HODKINSON, TINA | § | |
| MCDONALD and CAROL JOHNSON | § | |
| on behalf of themselves | § | |
| and all others similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-cv-02388-F |
| | § | |
| NATIVE OILFIELD SERVICES, LLC, | § | |
| JOHN BARCLAY | § | |
| and WILL SCHMID, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' POST-VERDICT BRIEF**

Defendants, John Barclay and Native Oilfield Services, LLC, pursuant to the Court's Electronic Order dated November 25, 2014 [Docket No. 276], file their Post-Verdict Brief in the above-entitled and numbered action, and respectfully show the Court as follows:

## Evidence in Support of Brief

Pursuant to Local Civil Rule 7.1(i), Defendants supplement this Post-Verdict Brief with an appendix of evidence which supports Defendants' arguments contained herein ("Appendix"). Defendants incorporate by reference the evidence included in the Appendix containing excerpts of the Transcripts of Proceedings ("Transcript, Vol. __").

## Background Facts and Procedural History

Native Oilfield Services, LLC ("Native") provides commercial transportation services to the oil and gas industry. [Docket No.1 at pg. 4, ¶ 14]. John Barclay ("Barclay") is Native's President. *Transcript, Vol. 3* at pg. 53, lines 2-20.

Native employs two classifications of employees relevant to this action: Drivers and Dispatchers. Native's Drivers are tasked with the day-to-day transportation of materials to various destinations in Texas, Oklahoma, and Louisiana. *Transcript, Vol. 3*, at pg. 215, lines 1-8. Native's Dispatchers

manage the Drivers, create the Drivers' schedules, act as the first line of communication when emergencies arise in the field, and perform other miscellaneous tasks necessary to the day-to-day carrying on of Native's operations. *See Transcript, Vol. 2,* at pg. 61, line 15 – pg. 69, line 7.

Prior to this suit, Native's Dispatchers were treated as FLSA exempt employees and compensated at a rate of more than $455 per week. *Transcript, Vol. 3,* at pg. 59, line 20 – pg. 60, line 6; *Transcript, Vol. 2,* at pg. 123, lines 2 - 4. Depending on the particular Driver, Native treated its Drivers as FLSA non-exempt employees and paid them on an hourly basis plus overtime until sometime between late 2010 through early 2012. *Transcript, Vol. 3,* at pg. 54, line 13 – pg. 55, line 11. Since that time, the Drivers have been compensated a percentage of each the load hauled by the Driver.

On September 14, 2011, Plaintiffs Nicole Olibas and Kellie Barton ("Barton") sued Defendants Barclay and Native for alleged violations of the Fair Labor Standards Act ("FLSA") seeking damages for their time employed as Dispatchers for Native ("Dispatchers' Suit"). [Docket No. 1]. On July 23, 2012, Reginald Williams ("Williams"), Donny Hodkinson ("Hodkinson"), Tina McDonald ("McDonald"), and Carol Johnson ("Johnson") joined Olibas and Barton as plaintiffs in the Dispatchers' Suit. [Docket No. 32].

On August 22, 2012, Williams, Hodkinson, Johnson, and McDonald sued Barclay, Native, and Will Schmid[1] in another action in the Northern District of Texas with Case No. 3:12-cv-03196-F seeking damages against Defendants for alleged unpaid overtime not as dispatchers, but rather as Drivers ("Drivers' Suit").

After obtaining the Court's leave, Native, Barclay, and Schmid filed their First Amended Answer to the Drivers' Suit asserting that the Drivers are exempt from FLSA coverage under the Motor Carrier Act exemption to the FLSA. [Docket No. 185, at pg. 8, ¶¶ 73-74].

On October 2, 2012, the Court entered an order on a joint motion of the parties to consolidate the Dispatchers' Suit and the Drivers' Suit into one case resulting in this single, above-entitled and numbered action. [Docket No. 69].

On November 13, 2012, the Court entered an order certifying a collective action under the FLSA which allowed Native Drivers to opt into the Drivers' Suit until approximately December 25, 2012.  [Docket No. 44].

At the time of trial, one-hundred eight individuals had joined the Drivers' Suit as plaintiffs.  [Docket Nos. 45-153].

---

[1]     Will Schmid was dismissed from this lawsuit by Court Order entered on July 25, 2014. [Docket No. 238].

Trial in this action began on July 28, 2014. During Plaintiff's case-in-chief, the jury heard testimony concerning the nature of Native's business operations, including testimony that Native provides transportation services to customers in Texas, Louisiana, and Oklahoma. *See, e.g., Transcript, Vol. 3,* at pg. 34, lines 19-21; *Transcript, Vol. 2,* at pg. 134, lines 5-7. The jury additionally heard testimony concerning the day-to-day management of Native's transportation services. Notably, the jury heard testimony that Native's Drivers receive their driving instructions on a daily basis, that such instructions are subject to change over time, that the drivers are required to meet U.S. Department of Transportation requirements, and that the Drivers may be called on to haul loads to customers in Louisiana and Oklahoma. *Transcript, Vol. 2,* at pg. 139, line 20 – pg. 140, line 2; *Transcript, Vol. 2,* at pg. 173, lines 18-25; *Transcript, Vol. 3,* at pg. 34, lines 19-21; *Transcript, Vol. 2,* at pg. 134, lines 5-7.

On July 31, 2014, at the close of Plaintiffs' presentation of evidence, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). *Transcript, Vol. 4,* at pg. 16, line 4 – pg. 22, line 15. Defendants asserted that based on the testimonial evidence solicited by Plaintiffs during Plaintiffs' case-in-chief, a reasonable jury would not have a legally sufficient evidentiary basis for deciding that the Drivers in the Drivers' Suit were

not subject to the Motor Carrier Act ("MCA") exemption to the Fair Labor Standards Act ("FLSA"). *Transcript, Vol. 4*, at pg. 16, line 4 – pg. 22, line 15.

The Court denied Defendants' motion for judgment as a matter of law on the grounds that Plaintiffs presented competing evidence as to whether the Drivers' interstate work assignments were indiscriminately assigned and whether such assignments were voluntary or mandatory. *Transcript, Vol. 4*, at pg. 36, lines 2-20.

The Court conducted its jury charge conference on August 4 and 5, 2014. At the conference, the Court, over Defendants' objection, approved a last-minute change to its Motor Carrier Act exception instruction which amended the instruction to emphasize a single factor – to the exclusion of all other factors – in the determination of whether drivers can reasonably expect to be called on to drive in interstate commerce. *Transcript, Vol. 6*, at pg. 7, line 22 – pg. 8, line 1; *Transcript, Vol. 6*, at pg. 25, line 2 – pg. 26, line 20. In addition, despite Defendants' requests, the Court refused to include a jury instruction which would require that the jury make factual determinations as to the Drivers' weekly hours and weekly compensation. *Transcript, Vol. 6,* at pg. 17, line 1 – pg. 18, line 21.

On August 5, 2014, the jury returned its verdict, finding, *inter alia*, that Plaintiffs proved by a preponderance of the evidence that Defendants failed to

pay the Driver Plaintiffs overtime pay in accordance with the FLSA and that Defendants did not prove by a preponderance of the evidence each essential element of the MCA exemption as applied to the Driver Plaintiffs as a group. The Court recessed to give the Parties time to prepare briefing concerning the calculation of damages. *Transcript, Vol. 6*, at pg. 136, lines 9-25.

On October 23, 2014, the Court entered an Order requiring the Parties to submit any post-verdict motions and briefing – including briefing concerning the Court's pending calculation of damages – by December 17, 2014. Docket No. 268. On November 25, 2014, the Court entered an Electronic Order extending the post-trial motion and briefing deadline to January 31, 2015, pending the parties continued mediation of these cases. [Docket No. 276].

Mediation was successful and on or about December 10, 2014, the parties settled, in full, the Dispatcher claims, including their attorneys' fees and costs claims. On December 19, 2014, the Court dismissed all claims in the Dispatcher Suit pursuant to the parties' joint motion for dismissal. [Docket No. 278].

In accordance with the Court's November 25, 2014, order, Defendants hereby submit their post-trial motion and briefing, and would respectfully show that the Court erred in (1) denying Defendants' Motion for Judgment as a Matter of Law, (2) presenting to the jury an instruction on the MCA exemption which

created confusion as to the nature of one of many factors courts consider in applying the MCA exemption, and (3) failing to present to the jury questions concerning damages, the answers to which questions the Court requires to make its calculation of damages.

## Argument and Authority

### A.   Motion for judgment as a matter of law.

Judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party with respect to that issue. *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th Cir. 1997) (citing FED. R. CIV. P. 50(a)).   Under Rule 50(b) of the Federal Rules of Civil Procedure, a party may file a renewed motion for judgment as a matter of law asking that the court direct entry of judgment as a matter of law.  FED. R. CIV. P. 50(b).[2]

In evaluating a motion for judgment as a matter of law, the court is to consider all of the evidence in the light most favorable to the non-movant, leaving credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts to the jury. *Foreman*, 117 F.3d at 804.

---

[2] Although the court has not yet entered its final judgment in this action, Defendants nevertheless file their Renewed Judgment as a Matter of Law at this time in an effort to comply with the Court's order directing post-verdict briefing.  *See* FED. R. CIV. P. 50(b) (deadline to file 50(b) motion is not 'later than 28 days after the entry of judgment").  By doing so, Defendants do not waive their right to seek relief under Rule 50(b) following entry of final judgment.

The court may give credence to uncontradicted or unimpeached evidence supporting the moving party where such evidence comes from disinterested witnesses. *See, e.g., Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 467 (5th Cir. 2002). To overcome a motion for judgment as a matter of law and present a question of fact to the jury, the non-movant must present more than a mere scintilla of evidence in favor of its position. *See, e.g., Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001); *Tubbs v. Campbell*, 731 F.2d 1214, 1216 (5th Cir. 1984).

### B.    The Drivers are subject to the Motor Carrier Act exemption.

Based on the testimonial evidence presented during Plaintiffs' case-in-chief, a reasonable jury would not have a legally sufficient evidentiary basis to find that the Drivers are not exempt from the FLSA under the Motor Carrier Act exemption. As a matter of well-settled law, "[I]f [a plaintiff] is a motor carrier employee under the jurisdiction of the [Department of Transportation] he is excluded from the benefits of the overtime provisions of the Fair Labor Standards Act." *Shew v. Southland Corp.*, 370 F.2d 376, 380 (5th Cir. 1966). By its own terms, the FLSA's overtime requirement "shall not apply . . . to . . . any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions

of [the Motor Carrier Act ("MCA")]."  29 U.S.C. § 213(b)(1); *see also Songer v. Dillon Res., Inc.*, 618 F.3d 467, 471 (5th Cir. 2010).  Federal regulations make clear that this so-called MCA exemption to the FLSA applies to all employees (1) whose employers are subject to the jurisdiction of the Secretary of Transportation pursuant the MCA, and (2) who "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the MCA."  29 C.F.R. § 785.17.

To meet to the first prong of the MCA exemption, an employer must be a motor carrier engaged in interstate commerce.  *Songer*, 618 F.3d at 472.  Motor carrier means a person providing motor vehicle transportation for compensation.  49 U.S.C. § 13102(14).  In the context of the MCA, interstate commerce means "the actual transport of goods across state lines."  *Songer*, 618 F.3d at 472.  Here, there is no dispute that Native is a motor carrier within the meaning of the MCA.  Likewise, uncontradicted testimony presented during Plaintiffs' case-in-chief establishes that Native is engaged in the actual transport of goods across state lines.  *Transcript, Vol. 3* at pg. 214, line 25 – pg. 216, line 6.  Accordingly, the first prong of the MCA exemption is satisfied.

The second prong of the MCA exemption is met when drivers are or could

be called upon to drive in interstate commerce during their employment, and thus, are subject to Department of Transportation safety regulations affecting the operation of trucks. *See Songer*, 618 F.3d at 475; *see also Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 285-86 (5th Cir. 2014). The exemption "applies even if the driver has not personally driven interstate commerce" so long as, "because of company policy and activity, the driver could reasonably be expected to do interstate driving." DOT Notice, 46 Fed. Reg. 37,902, 37,903; *see also Allen*, 755 F.3d at 286 (rejecting a driver-by-driver approach to the application of the MCA exemption). The exemption also applies regardless of the proportion of time or work actually devoted to interstate transport and applies even in workweeks where no interstate transport is performed. *Songer*, 618 F.3d at 747.

Indeed, it is not even necessary that an employer actually dispatch *any* of its employees to interstate destinations for there to exist a reasonable expectation of being called on to drive in interstate commerce. *See, e.g., Starrett v. Bruce*, 391 F.2d 320, 323–24 (10th Cir. 1968). In *Starrett* – cited with approval by the court in *Allen* – the Tenth Circuit found a driver subject to the MCA exemption despite the fact the driver's employer did not transport any loads in interstate commerce during the driver's employment. *Starrett*, 391 F.2d at 323–24. The *Starrett* court determined that the mere fact the employer held himself out as

offering interstate transportation services and solicited interstate business was sufficient to create a reasonable expectation of interstate travel for his driver. *See Starrett*, 391 F.2d at 323–24; *Allen*, 755 F.3d at 284.

In *Songer v. Dillon Resources, Inc.*, the Fifth Circuit Court of Appeals found that the plaintiffs, commercial truck drivers, had a reasonable expectation of being called on to drive in interstate commerce under nearly identical facts to those presented in this case. *See Songer*, 618 F.3d at 468. In *Songer*, truck drivers sued their employers for unpaid overtime under the FLSA. *Songer*, 618 F.3d at 468. The drivers transported construction materials within the state of Texas, and some also transported "aggregate," i.e., sand, gravel, and crushed rocks, across state lines to Oklahoma and other states. *Songer*, 618 F.3d at 469. They received their assignments from a dispatch service before the start of their shifts and never had a dedicated route. *Songer*, 618 F.3d at 470. As such, they could be called upon at any time to make interstate or intrastate trips. *Songer*, 618 F.3d at 468.

The drivers in *Songer* sued under the FLSA arguing they were encouraged to work overtime without being paid. *Songer*, 618 F.3d at 468. The defendants moved for summary judgment asserting the drivers met the MCA exemption to the FLSA. *Songer*, 618 F.3d at 468. The Fifth Circuit affirmed summary

judgment against the drivers finding they were not entitled to the benefits of the FLSA. *Songer*, 618 F.3d at 476. The Court highlighted numerous factors suggesting the drivers were subject to the MCA and therefore exempt from the FLSA. *Songer*, 618 F.3d at 475. In particular, *Songer* emphasized the fact that drivers were assigned routes via dispatcher and that the type and number of routes changed on a daily basis, thus indicating that any driver could have been assigned to an interstate trip and, if they were, would be subject to Department of Transportation safety regulations affecting the operation of trucks. *Songer*, 618 F.3d at 468.

In the same way, the Drivers in this case are not only expected to perform interstate transport, but do in fact cross state lines on a regular basis. There was no dispute at trial that beginning in 2009, Native actually sent Drivers outside of Texas in connection with its operations. *Transcript, Vol. 3* at pg. 214, line 25 – pg. 216, line 6. And, continuing in 2012, Native was still sending Drivers outside of Texas. *Transcript, Vol. 3* at pg. 217, lines 12-17. These out-of-state trips were corroborated by the International Fuel Tax Reports admitted into evidence. *Transcript, Vol. 3* at pg. 220, line 11 – pg. 221, line 24; *Defendant's Exhibit Nos. 49-63*. This evidence was not contradicted by Plaintiffs.

Notably, Freddie Lee ("Lee"), a former employee of Native, testified that

the Drivers were routinely sent out of state and that out-of-state work while he was a Dispatcher was a "significant volume of Native's business." *Transcript, Vol. 4* at pg.136, line 15 – pg. 138, line 15; *see also Songer*, 618 F.3d at 475-76. Likewise, Barclay testified that out-of-state trips for Native Drivers amounted to as much as ten percent annually of Native's business. *Transcript, Vol. 3* at pg.223, line 25 – pg. 224, line 5. Lee and Barclay's testimony concerning the scope and extent of Native's interstate transportation was uncontradicted. Indeed, several Plaintiffs testified either that they themselves had made interstate trips while hauling for Native or that they were aware of Native sending drivers to destinations in Louisiana and Oklahoma. *See Transcript, Vol. 2*, at pg. 90, line 14 – pg. 91, line 4; *Transcript, Vol. 2*, at pg. 134, lines 5-7; *Transcript, Vol. 2*, at pg. 221, line 24 – pg. 223, line 9; *Transcript, Vol. 3*, at pg. 34, lines 4-21.

Further, the testimony in this case shows that, much like the drivers in *Songer*, Native's Drivers are given their daily routes via dispatch to Native's various customers and the number and type of routes given to the Drivers by Native are subject change over the course of the Driver's employment with Native; thus, any given Driver could be assigned at any time to an interstate trip. *Transcript, Vol. 2*, at pg. 139, line 20 – pg. 140, line 2; *Transcript, Vol. 2*, at pg. 173, lines 18-25; *Transcript, Vol. 3*, at pg. 34, lines 19-21; *Transcript, Vol. 2*,

at pg. 134, lines 5-7.

In addition, both Barclay and Lee presented testimony at trial that the Drivers were all required to meet DOT regulations, and that Native held a DOT license for purposes of engaging trucks in interstate transportation. *Transcript, Vol.4* at pg. 124, line 14 – pg. 125, line 2; *Transcript, Vol. 3* at pg. 213, line 24 – pg. 214, line 7; *Transcript, Vol. 3*, at pg. 214, lines 8-24.

On the contrary, at trial, Plaintiffs did not present any testimony to create a fact issue as to whether the Drivers had a reasonable expectation of interstate travel.  Notably, Plaintiffs presented no evidence to show (1) that Native did not participate in interstate commerce, (2) that Native never sent drivers on assignments to customers in Louisiana and Oklahoma, or (3) that Drivers' assignments were subject to change and that no Driver was specifically exempt from interstate travel.

In light of the uncontradicted testimony presented during Plaintiffs' case-in-chief concerning Natives' Drivers' participation in interstate commerce and its assignment of Drivers to locations outside of Texas, a reasonable jury could only conclude that the Drivers could reasonably expect to be called on to make a trip in interstate commerce, and thus, are subject to the MCA exemption to the FLSA.

**C.     The Drivers are subject to the MCA exemption because they move goods in the flow of interstate commerce.**

Alternatively, the Drivers are subject to the MCA exemption since they are involved in the transportation of goods in a practical continuity of movement in the flow of interstate commerce, even when those Drivers do not drive interstate themselves.

The Motor Carrier Act defines a motor private carrier as follows:

> Motor private carrier.--The term "motor private carrier" means a person, other than a motor carrier, transporting property by motor vehicle when--
>
>> (A) the transportation is as provided in section 13501 of this title;
>>
>> (B) the person is the owner, lessee, or bailee of the property being transported; and
>>
>> (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102(15).

With regard to Prong (A), Section 13501 of the Motor Carrier Act provides that the Act covers, in relevant part, transportation between a place in a State and a place in another State and transportation between a State and another place in the same State through another State.  49 U.S.C. § 13501.  However, Section 13501's interstate commerce requirement can also be satisfied if the goods being transported in one state are involved in a "practical continuity of

movement" in the flow of interstate commerce. *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943). "When persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency solely within the boundaries of one state does not make that portion of the trip any less interstate in character." *United States v. Yellow Cab Co.*, 332 U.S. 218, 228, (1947), *overruled on other grounds by Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). As a result, purely intrastate transportation can constitute part of interstate commerce if it is part of a "continuous stream of interstate travel." *Chao v. First Class Coach Co., Inc.*, 214 F. Supp. 2d. 1263, 1272 (M.D. Fla.2001). For instance, bus drivers that operate intrastate shuttles between an airport and a cruise line terminal are covered under the MCA exemption because they are part of a continuous stream of interstate travel. *Walters v. American Coach Lines of Miami, Inc.*, 575 F.3d 1221, (11th Cir. 2009); *see also Rodriguez v. Pan & Plus Baking, LLC*, 2013 WL 1681839 (S.D. Fla. April 17, 2013) (holding that drivers making intrastate deliveries of imported baked goods were exempt under the MCA exemption); *Musarra v. Digital Dish, Inc.*, 454 F. Supp. 2d 692 (S.D. Ohio 2006) (exempting satellite technicians who deliver and install satellite dishes intrastate

because the satellite equipment traveled in interstate commerce).

It is undisputed that the Drivers meet the requirements of the MCA exemption. As noted above, the Drivers meet Prong (A) of the exemption as the transportation was regularly interstate. *See, e.g., Transcript, Vol. 3*, at pg. 34, lines 19-21; *Transcript, Vol. 2*, at pg. 134, lines 5-7. However, even the transportation of sand that was not interstate was entwined with a continuous stream of interstate commerce, as the sand frequently originated in Arkansas and eventually traveled to sand load-out facilities in Fort Worth, Texas. *Transcript, Vol. 4*, at pg. 140, lines 2-7.

The Drivers meet Prong (B) of the exemption as Defendant was the bailee of the sand transported. *Transcript, Vol. 3*, at pg. 229, lines 3-11 *see also Kautsch v. Premier Communications*, 502 F. Supp. 2d 1007, 1014 (W.D. Mo. 2007) (quoting Black's Law Dictionary, 6th Edition, defining a "bailee" as a [a] species of agent to whom something movable is committed in trust for another.").

Finally, the property being transported was to further a commercial enterprise—namely, for its use in connection with hydraulic fracking operations, *Transcript, Vol. 3*, at pg. 106, lines 8-25, as a part of an oil and gas well stimulation. Accordingly, notwithstanding the jury verdict, this Court should apply the MCA exemption and enter judgment in favor of Defendants.

**D.      The Court erred in submitting a jury instruction on the Motor Carrier Act exemption which only made reference to a single MCA exemption factor.**

On August 5, 2014, the Court approved a jury instruction proposed by counsel for Plaintiffs which overemphasized a single factor considered in the application of the Motor Carrier Act exemption to the FLSA, while ignoring all other factors. *Transcript, Vol 6*, at pg. 7, line 22 – pg. 8, line 1; *Transcript, Vol. 6*, at pg. 25, line 2 – pg. 26, line 20. The instruction read as follows: "A driver is reasonably expected to drive in interstate commerce consistent with their job duties if interstate trips are indiscriminately distributed by an employer to all drivers." *Transcript, Vol. 6*, at pg. 7, line 22 – pg. 8, line 1. This instruction ignores well-established Fifth Circuit precedent on the MCA exemption and likely created confusion as to whether indiscriminate assignment – merely a single factor which courts *may* consider when evaluating the application of the Motor Carrier Act exemption – is a required element of the MCA exemption.

The MCA exemption to the FLSA applies to all employees (1) whose employers are subject to the jurisdiction of the Secretary of Transportation pursuant the MCA, and (2) who "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce

within the meaning of the MCA." 29 C.F.R. § 785.17. Employees engage in activities of a character directly affecting the safety of operation of motor vehicles in interstate commerce, and thus satisfy the second prong of the MCA exemption, when they can reasonably expect to be called on to engage in interstate travel. *Allen*, 755 F.3d at 284.

Courts consider the following factors in determining whether a commercial truck driver can reasonably expect to be called upon to engage in interstate travel: whether all employees in the class have similar job duties, whether the employer regularly sends drivers to interstate destinations, whether the employer requires its drivers to meet Department of Transportation requirements, whether and with what frequency project assignments are subject to change, whether drivers have dedicated routes, whether assignments are distributed indiscriminately, and whether drivers risk termination for refusing trips from dispatch. *See Allen*, 755 F.3d at 285-86, n. 4; *Songer*, 618 F.3d at 475. No single factor is dispositive, and indeed, Judge McBryde in his *Songer* opinion, which was later approved by the Fifth Circuit, specifically noted that indiscriminate assignment is not intended to be a bright line test in the application of the MCA exemption. *Songer v. Dillon Res., Inc*, 636 F.Supp.2d 516, 526 (N.D. Tex. 2009).

In objecting to the instruction, counsel for Defendants identified all of the MCA exemption factors and noted to the Court that each should be included in the instruction, and further noted that the Northern District had specifically stated that indiscriminate assignment should not be treated as a bright line test. *Transcript, Vol. 6*, at pg. 25, lines 2-25.

Despite Defendants' identification of all of the non-dispositive factors traditionally involved in the determination of whether the MCA exemption applies to commercial truck drivers, the Court, at Plaintiffs behest and over the objection of Defendants, chose to arbitrarily focus on a single factor while refusing to address any others in its jury instruction. As a result, the instruction provided to the jury applied a weight to the indiscriminate assignment factor which runs contrary to federal courts' application of the MCA exemption and constitutes error.

**E.    The Court erred in failing to require the jury to determine the Drivers' weekly hours and total weekly compensation.**

The Court, over Defendants' objections, failed to present an instruction to the jury which would require the jury to make certain fact determinations necessary to the calculation of overtime damages for the Drivers. The Fair Labor Standards Act requires employers to compensate their employees for all hours worked in excess of forty hours in any given workweek at a rate of at least one

and a half times the employee's regular rate of hourly pay.  29 U.S.C § 207.

Under the FLSA, the regular rate of pay equals the amount an employee earns on

an hourly basis.  29 C.F.R. § 778.109 ("The 'regular rate' under the Act is a

rate per hour"); *see also Walling v. Youngerman-Reynolds Hardwood Co.*, 325

U.S. 419, 424 (1945).  If the plaintiff was in fact paid on an hourly basis, then

no calculation is required in order to arrive at the regular rate.  If, however, the

plaintiff was paid on any other basis – i.e. fixed salary, piece rate, or some other

method – then the Court needs additional information in order to compute the

regular rate.  29 C.F.R. § 778.109 ("[E]arnings may be determined on a piece-

rate, salary, commission, or other basis, but in such case the overtime

compensation due to employees must be computed on the basis of the hourly rate

derived therefrom and, therefore, it is necessary to compute the regular hourly

rate of such employees *during each workweek . . .*") (emphasis added).

The regular rates of pay and the corresponding overtime premiums are

questions of law for the Court to decide.  *Black v. SettlePou, P.C.*, 732 F.3d

492, 496 (5th Cir. 2013) ("In a misclassification case, once the fact finder has

established that the employee is due unpaid overtime, the proper determination of

the regular rate of pay and overtime premium to which an employee is entitled is

a question of law"); *see also Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377,

381 (5th Cir. 2013). But, to calculate a regular rate for non-hourly employees, the Court requires information regarding the actual hours worked and the total wages received for each workweek. 29 CFR § 778.109 ("The regular rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him *in that workweek* for which such compensation was paid") (emphasis added). The hours worked and total wages received during each workweek are fact questions for the jury to decide and issues on which the Plaintiffs carry the burden. *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (holding the initial burden rests with the plaintiff "to show the amount and extent of [their] work as a matter of just and reasonable inference"); *see also Mitchell v. Denton*, 224 F.2d 596, 597-98 (5th Cir. 1955) (number of hours worked by an employee in action for FLSA overtime compensation was question of fact for the jury); *Atlantic Co. v. Broughton*, 146 F.2d 480, 485 (5th Cir.1944) (Waller, J., dissenting) ("the number of hours in which any employee may have worked during a period in question is wholly a question of fact"). To be clear, to establish their *prima facie* claims, the law requires the Plaintiffs to create "a reasonable inference as to the extent of the damages." *Mt. Clemens Pottery*, 328 U.S. at 688.

Here, despite objections raised by Defendants, the Court refused to submit to the jury questions concerning the Drivers' weekly pay and total weekly compensation. *Transcript, Vol. 6*, at pg. 17, line 4 – pg. 18, line 21.   Absent findings from the jury as to the Drivers' weekly hours and weekly compensation, the Court is unable to calculate the Drivers' regular hourly rate of pay, and thus unable calculate the total overtime pay owed to the remaining Plaintiffs. In short, the Court simply lacks the factual prerequisites to calculating damages, if any, owed to the Drivers.

### Relief Requested

Defendants respectfully request that the Court grant Defendants' Renewed Motion for Judgment as a Matter of Law, or, in the alternative, for judgment in favor of Defendants notwithstanding the verdict, and for all other relief to which Defendants are entitled.

Respectfully submitted,

*/s/ David M. O'Dens*
David M. O'Dens
Texas Bar I.D. 15198100
*odens@settlepou.com*
Jason M. Brown
Texas Bar I.D. 24087220
*jbrown@settlepou.com*

SettlePou
3333 Lee Parkway, Eighth Floor
Dallas, Texas 75219
(214) 520-3300
(214) 526-4145 (Facsimile)

and

Christopher E. Moore, Esq.
Federal Bar I.D. 578521
Texas Bar I.D. 24052778
Christopher.Moore@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Poydras Street, Suite 3500
New Orleans, LA 70139
(504) 648-3840
(504) 648-3859 (Facsimile)

ATTORNEYS FOR DEFENDANTS

## Certificate of Service

This certifies that this document was served in accordance with the Federal
Rules of Civil Procedure on February 2, 2015.

*/s/ David M. O'Dens*
David M. O'Dens

DMS-#685329-v1 (11-5718)

- 25 -