IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REGINALD WILLIAMS, et al., | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:11-cv-2388-B |
| | § | |
| NATIVE OILFIELD SERVICES, LLC and | § | |
| JOHN BARCLAY, | § | |
| | § | |
|     Defendants. | § | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF JUDGMENT**

Defendants' Response to Plaintiffs' Motion for Entry of Judgment (Dkt. No. 288 (the "Response")) presents both unreasonable and distorted views of well-established Fair Labor Standards Act ("FLSA") case law in addition to the actual testimony and evidence introduced at the trial of this case. Plaintiffs file this Reply in Support of their Motion for Entry of Judgment (Dkt. No. 281 ("Plaintiffs' Motion")) addressing Defendants' arguments as follows.

### I.  The Jury Has Made All Necessary Findings for the Court to Enter Judgment on Plaintiffs' Regular Rate of Pay and Unpaid Overtime Wages as a Matter of Law

In their Response, Defendants persist in objecting to both the sufficiency of Plaintiffs' evidence at trial and as to whether the jury charge entered by the Court was adequate. (Dkt. No. 288, p. 4). In so arguing, Defendants misapply cases which clearly delineate what evidence is required from employees when using representative testimony in situations where the employer fails to keep proper payroll records in accordance with 26 C.F.R. 516.2.

First, Defendants contend that "the Court failed to charge the jury with the calculating [sic] Plaintiffs' actual hours worked and total wages received for each workweek." (Dkt. No. 288, p. 4). Had the Court adopted Defendants' proposed jury instruction on this issue, it would have resulted in

an unduly burdensome charge of 491 pages[1] that would not have met the "reasonable and logical" standard which guides district courts in selecting the method of calculating damages in FLSA cases. *See McLaughlin v. McGee Bros*, 681 F.Supp. 1117, 1136 (W.D.N.C. 1988). The Fifth Circuit "review[s] a district court's jury instructions for abuse of discretion" and "afford[s] trial judges wide latitude in fashioning jury instructions and ignore[s] technical imperfections." *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010). Moreover, Defendants' demand that the jury determine the specific hours and wages of each of the 108 Plaintiffs on a week-by-week basis for an approximate five year period wholly ignores the representative nature of FLSA collective action lawsuits such as this. *See, e.g., Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); *Schultz v. Capital Intern. Sec., Inc.* 466 F.3d 298, 310 (4th Cir. 2006); *Grochowski v. Phoenix Constr.,* 318 F.3d 80, 88 (2d Cir. 2003) ("[N]ot all employees need testify in order to prove FLSA violations or recoup back-wages"); *Reich v. Gateway Press,* 13 F.3d 685, 701–02 (3d Cir. 1994) ("Courts commonly allow representative employees to prove violations with respect to all employees."); *Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 318 (5th Cir. 1981) (same); *Marshall v. Mammas Fried Chicken, Inc.*, 590 F.2d 598, 599 (5th Cir. 1979) (same); *Beliz v. W.H. McLeod & Sons Packing Co*., 765 F.2d 1317, 1331 (5th Cir. 1985) (same). The Court correctly adopted a charge based on the presentation of representative testimony.

Second, Defendants' argument misconstrues the burden shifting analysis in cases, such as this, where the employer does not have accurate records showing, amongst other things, the daily and weekly hours worked and methods and amounts of compensation. 20 C.F.R. § 516.2(a). Plaintiffs admitted into evidence written discovery requests seeking all data required by 20 C.F.R. § 516.2 in addition to introducing every payroll record produced by Defendants in this lawsuit. (App. p. 63; p. 1). As those payroll records are in evidence, Defendants' complaint that Plaintiffs allegedly

---

[1] (Dkt. No. 225).

failed to present evidence of their compensation must be understood as an admission that the employer's FLSA record keeping requirements were not met. Indeed, as demonstrated by those records, Defendants do not have an accurate record of the Plaintiffs' hours worked and methods of pay. *Id.* It is telling that Defendants do not cite any of the approximate 9,600 pages of their own records in suggesting what the damage calculation should be. (Dkt. No. 288).

As discussed in greater detail, *infra*, Plaintiffs' evidence at trial was not based on mere "speculation or guess," as Defendants obliquely posture, but on the personal knowledge of party representatives. The Fifth Circuit permits overtime damages as a matter of "just and reasonable inference" to be based on the testimony of representative employees relative to average and "admittedly approximate calculations" of regular rate of pay and number of hours worked. *Hamm's Drive Inn*, 661 F.2d at 318 (citing *Anderson* 328 U.S. at 687-88), *accord Beliz*, 765 F.2d at 1331 (upholding a damage award based on "admittedly inexact or approximate evidence" of certain employees on behalf of others).

Furthermore, Defendants mischaracterize the holding in *Anderson* to omit the relevant shift of burden to Defendants. (Dkt. No. 288, p. 4). In support of that mischaracterization, Defendants present two cases, *Mitchell v. Denton* and the dissent from *Atlantic Co. v. Broughton*. 224 F.2d 596 (5th Cir. 1955); and 146 F.2d, 480 (5th Cir. 1944) (Waller, J., dissenting). Unfortunately, their reliance is utterly misplaced. In both cases, unlike the instant case, there was no issue of whether the employer kept adequate payroll records. In *Mitchell*, the Fifth Circuit found that when employees may have contributed to the unreliability of an employer's records of hours worked, the issue of hours actually worked was a fact question for the jury on which plaintiffs bore the burden of proof. 224 F.2d at 598. The controlling issue in *Broughton* is even more attenuated from the instant matter—whether a case which was settled without including liquidated damages constituted an

accord and satisfaction of an entire FLSA claim. 146 F.2d at 481-82. Also, that case did not involve the failure to keep adequate payroll records. *Id.* at 484.

In sum, the Court properly instructed the jury, and the jury determined the Plaintiffs' number of unpaid overtime hours per workweek. The parties have stipulated to the duration of Plaintiffs' employment. Plaintiffs have also provided ample evidence on their regular rates of pay in addition to every payroll record produced by Defendants. Hence, Plaintiffs made out a prima facie case, and Defendants did not negate the reasonableness of the inference. Therefore, all necessary factual findings and data are before the Court so that judgment as a matter of law on the regular rate of pay, damage model, and total damages may be entered.

### II.    The Court Should Enter Judgment on the Regular Rate at $15.00 Per Hour and Should Calculate Damages at Time and One-Half that Rate for All Plaintiffs

Under the FLSA, it is the role of the jury to determine if a non-exempt employee worked uncompensated overtime, and the role of the Court to determine, as a matter of law, the regular rate of pay, the method of calculating damages, and the amount of unpaid overtime compensation owed. *Black v. Settlepou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013); *see also*, *Ransom v. M. Patel Enters.*, 734 F.3d 377, 380 (5th Cir. 2013) ("[T]he appropriate methodology to determine the total amount [of overtime pay] owed [is] a question of law."); *Singer v. City of Waco, Tex.*, 324 F.3d 813, 823 (5th Cir. 2003) (the Court determines the regular rate). As the jury determined that Plaintiffs worked unpaid overtime, and assigned unpaid hours on an individual and representative basis, the Court can and must award damages as a matter of just and reasonable inference. (Dkt. No. 266).

#### A.    Regular Rate of Pay

Contrary to Defendants' posturing of Plaintiffs' argument, Plaintiffs do not, and never intended to, exclusively rely on Barclay's testimony to make out a just and reasonable inference on regular rate of pay. *Compare* (Dkt. No. 288, p. 6) *with* (Dkt. No. 281, p. 8 f. 6). Plaintiffs have always intended to rely on the totality of trial testimony as the most fair and equitable indicator of

the regular rate of pay. Despite all diligence on Plaintiffs' part, Plaintiffs only received transcripts of trial testimony by Plaintiffs to support the calculation of $15.00 per hour on March 10, 2015. Plaintiff reserved the right to supplement the Appendix in Support of Plaintiffs' Motion, and now do so in this Reply. (Dkt. No. 281, p. 8 f. 6).

At trial, Donny Hodkinson testified that he recalled his hourly rate as a driver as being around $17 per hour. (App. p. 4, ll. 13-14). He testified that he recalled the hourly rate of certain other drivers, one being named Mr. Vecco at $17 per hour, one Mr. Stonitsch at $18 per hour, and one Mr. Simpson at $18 per hour. (App. p. 5, ll. 16-24).

Reginald Williams testified that, as an hourly driver, his rate of pay was about $16.30 per hour. (App. p. 12, l. 22). Williams, who eventually was promoted to be one of the managers of Defendants' drivers (App. pp. 6-12), testified to his personal knowledge as to the highest and lowest hourly rates paid by Defendants, with the lowest being $14 and the highest being approximately $18. (App. p. 13, ll. 4-14). Williams also testified that his off-the-clock time worked was between 10 to 15 hours per week. (App. p. 14, l. 19).

Chris Gonzales testified that he "[s]tarted out at $16 an hour, but our pay rate changed several times throughout the time I was there." (App. p. 17, l. 16). Gonzales also testified as to what he was told the rate of pay was when he filled out his application to work for Defendants, which was $16 per hour. (App. p. 19, l. 9). Gonzales testified that he worked approximately 35 unpaid overtime hours per week. (App. p. 18, l. 14). Gonzales also testified that other drivers were similarly not paid for all overtime hours worked. (App. p. 18, l. 18-24).

Tina McDonald testified that other drivers had discussed their hourly rate with her, and that they, like her, were paid at $14 per hour. (App. p. 15, ll. 17-24). McDonald also testified to working on average 11.5 unpaid overtime hours per week. (App. p. 16, l. 7).

Finally, Defendants' witness Freddie Lee testified that Plaintiffs' representative testimony regarding hours worked was not unreasonable. When asked whether it was unreasonable that an employee might work 72 hours in a week, Mr. Lee stated "No." (App. pp. 22:23-24:3). Moreover, Barclay testified that Native Oilfield did not have documents to contest the reasonableness of Plaintiffs' estimates of their unpaid overtime hours. (App. p. 30:9-31:5 - **"No documents."**).

Defendants' argument from *Beliz* that the Court's determination of regular rate of pay cannot be based on Barclay's trial testimony completely misses the point that employee plaintiffs must produce evidence of the personal knowledge of the hours worked by *groups* of employees, not evidence of intimate knowledge of every single employee's rate. (Dkt. No. 288, p. 6). That case instead demonstrates that testifying parties do not need *actual* knowledge, just enough personal knowledge to support the "just and reasonable inference" which was created by plaintiff witnesses. In a peculiar attempt to discredit Barclay's testimony, Defendants now ignore their contradictory pretrial stipulation that Barclay is an "employer" under the FLSA by claiming that he had no personal knowledge of the pay his employees received. (Dkt. No. 288, pp. 6-7). However, a corporate officer is considered an "employer" with individual liability under the FLSA when he/she: (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Martin v. Spring Break '83 Productions*, 688 F.3d 247, 251 (5th Cir. 2012).

Furthermore, Defendants' contention that Plaintiffs take Barclay's testimony out of context is absurd. (Dkt. No. 288, p. 12). Plaintiffs clearly noted that Barclay's testimony regarding Plaintiff David Zamarripa's pay as being more reasonably $15.50 per hour as opposed to $7,289.00 was in regard to Defendants' incoherent recordkeeping. (Dkt. No. 281, p. 12). However, Barclay did, in fact, go on to testify that $16.00 per hour was a reasonable hourly rate for all Plaintiffs who worked

at Native Oilfield's Hondo yard, and between $14.00 to $16.50 per hour was reasonable at the Alvarado yard. (App. pp. 28:25-29:3).

Taken together, all trial testimony and evidence support the jury's finding of unpaid overtime hours as well as a finding by the Court that the regular rate of pay is $15 per hour.

### B.   Damage Model

Defendants find fault with all three damage models proposed by Plaintiffs without offering a suggestion as to what damage model the Court should ultimately adopt. In terms of evidence, the parties stipulated to the start and end employment date of each Plaintiff, the jury determined the number of overtime hours worked, and the regular rate of pay should be determined by the Court to be $15 as shown above. All that is missing is the damage model to be selected by the Court. Defendants cite to *Rosano v. Twp. Of Teaneck* to support their position that Plaintiffs did not meet their initial burden of production. 754 F.3d 177, 188 (3d Cir. 2014). However, *Rosano* is distinguishable as there the employer *did* maintain adequate business records and the case was lost on summary judgment when plaintiffs submitted only conclusory spreadsheet evidence.

Defendants also contend that "Plaintiffs failed to meet their burden with regards to the Court's selection of a damages model," but cite to no authority to guide as to what that burden is. (Dkt. No. 288, p. 11). In fact, *Black* holds that it is entirely within the discretion of the court to determine the method of calculating damages. 732 F.3d at 496.

Finally, Defendants object to the declarations provided by Plaintiffs as an alternative damage model without disputing any of the data contained in those declarations. Defendants do not cite a procedural rule as to why evidence which is properly decided by Court, not the jury, cannot be submitted to Court at this time. (Dkt. No. 288, p. 11). Thus, there is no reason why Plaintiffs may not introduce the declarations provided as a third damage model option for the Court. But to be clear, Plaintiffs believe it is appropriate for the Court to apply a time and one-half damage model

for all Plaintiffs without reference to these declarations due to Defendants' failure to satisfy the FLSA's record keeping obligations with regards to the "method of pay." *See Arnold*, *v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Hamm's Drive Inn*, 661 F.2d at 318.

Finally, Defendants take issue with Plaintiffs assertion that "FLSA cases are essentially bifurcated." Defendants point to several cases regarding requisite pretrial motions to bifurcate cases for separate trials as to liability and damages when the issues would confuse the jury. However, when Plaintiffs assert that FLSA cases are "inherently bifurcated," all that is meant is that it is the role of the Court to determine regular rate of pay, proper damage model, and enter judgment on damages. The jury heard all evidence necessary to make its decision, and that information is properly before this Court to make its decision regarding the outstanding matters. There is not now and never was need for a separate trial on damages, as neither of the parties nor the Court *sua sponte* feared that the issues would cause confusion to the jury.

### III. <u>Plaintiffs' Legal Fees are Supported by Billing Judgment and are Adequately Documented to Merit the Award of FLSA Legal Fees and Costs.</u>

Defendants limit their FLSA legal fee argument to the sufficiency of various billing entries of Plaintiffs' counsel, and would have the Court find that despite Plaintiffs' attorneys' exercise of billing judgment in preemptively reducing their lodestar by 10%, and up to 60% for staff, further reduction is merited. (Dkt. No. 288, pp. 21-24). Defendants cite *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.* to support their contention that "[l]itigants take their chances" by submitting fee applications that are "too vague to permit the district court to determine whether the hours claimed were reasonably spent." 119 F.3d 1228, 1233 (5th Cir. 1997) (*citing Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)). Conveniently, Defendants omit the very next sentence which contains the following caveat:

> On the other hand ... we are mindful that practical considerations of the daily practice of law in this day and age preclude "writing a book" to describe in excruciating detail the professional services rendered for each hour or fraction of an hour. We also recognize that, in this era of computerized timekeeping, many data processing programs limit the amount of input for any given hourly or daily entry.

*Id.* Accordingly, while Plaintiffs acknowledge that some time entries presented are more specific than others, each is reasonable and necessary because it was made reasonably proximately in time to an affirmative act taken by counsel on behalf of Plaintiffs. Unlike Defendants' examples of vague billing entries such as "correspondence" and "research and review of cases," Plaintiffs have made every effort to connect time entries to necessary tasks which were actually accomplished in furtherance of the client's legal objectives. Plaintiffs' records are distinguishable from vague or ambiguous logs in that they relate to work which is easily proved to have actually been done. Statements such as "draft memorandum" or "work on brief" are difficult to tie to actual work which furthered a case and for which a defendant should, in equity, be liable.

For instance, Defendants find fault with attorney Ryan Burton's time entry for 8.25 hours spent on "Research for 2nd MSJ," portraying it as impermissibly vague. (Dkt. No. 288, p. 17). However, this time entry was made on October 2, 2013, just two days before Plaintiffs' Second Motion for Summary Judgment was in fact filed. (Dkt No. 205). It is only reasonable that Plaintiffs' counsel would need to conduct research to develop a persuasive summary judgment motion. Similarly, Defendants make much of the fact that attorney Allen Vaught recorded 10 entries regarding preparing or drafting a motion for summary judgment. (Dkt. No. 288, p. 17). However, beginning a task on one day and continuing it on subsequent days is fairly common in a busy legal practice. Whether time entries are duplicative should not be characterized based on the number of times a task is shown on a time sheet, but rather based on the amount of time actually recorded. Here, Mr. Vaught's ten entries totaled to a reasonable 13.89 hours.

Even assuming, *arguendo*, that Plaintiffs' time sheets contain redundant or vague entries, the submitted records were already reduced by ten percent. Thus, Defendants' request to further reduce Plaintiffs' attorneys' fees is implausible as billing judgment has already been taken into account during the initial calculation of the lodestar. *Black*, 732 F.3d at 502 (holding that a court may not adjust the lodestar "due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar."). Furthermore, the most critical *Johnson* factor, degree of success, actually weighs heavily in favor of increasing legal fees here. *Black*, 732 F.3d at 503. While Plaintiffs' counsel could easily have argued for an enhancement of their attorney's fees due to their success at trial, they instead reasonably reduced their rate by 10% to demonstrate billing judgment. Therefore, Plaintiffs reassert their request for legal fees and costs totaling to $382,323.91 in addition to the fees and costs incurred in connection with responsive briefing after the January 31, 2015 filing of Plaintiffs' Motion for a total of $432,245.80. (*See* App. pp. 32-61).

>Respectfully submitted,
>
>BARON & BUDD, P.C.
>
>By:   s/Allen R. Vaught
>      Allen R. Vaught
>      avaught@baronbudd.com
>      TX Bar No. 24004966
>      3102 Oak Lawn Avenue, Suite 1100
>      Dallas, Texas  75219
>      (214) 521-3605 – Telephone
>      (214) 520-1181 – Facsimile
>
>ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

On March 30, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the ECF filing system of the court.

>By:   s/Allen R. Vaught
>      Allen R. Vaught