UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NICOLE OLIBAS, REGINALD WILLIAMS, DONNY HODKINSON, TINA MCDONALD, and CAROL JOHNSON, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:11-CV-2388-B |
| NATIVE OILFIELD SERVICES, LLC and JOHN BARCLAY, | § § § | |
| Defendants. | § § | |
| REGINALD WILLIAMS, DONNY HODKINSON, TINA MCDONALD, and CAROL JOHNSON, on behalf of themselves and all others similarly situated, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:11-CV-2388-B |
| NATIVE OILFIELD SERVICES, LLC and JOHN BARCLAY, | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Following a jury verdict in favor of Plaintiffs on their Fair Labor Standard Act ("FLSA") claims for unpaid overtime, the parties filed two post-verdict motions now before the Court: Plaintiffs' Motion for Judgment (doc. 281) ("Plaintiffs' Motion") and Defendants' Renewed Motion for Judgment as a Matter of Law (doc. 283) ("Defendants' Motion"). For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion (doc. 281) and **DENIES** Defendants' Motion (doc. 283).

# I.

## BACKGROUND

As detailed in the Court's prior orders,[1] this is a consolidated action under the FLSA involving a group of dispatchers in one suit, and a group of truck drivers in another, both suing Defendants John Barclay ("Barclay") and Native Oilfield Services, LLC ("Native") (together, "Defendants") for unpaid overtime wages under the FLSA. The parties recently settled the FLSA claims brought by the dispatchers,[2] leaving only the drivers' claims unresolved.

Plaintiffs' remaining FLSA claims are asserted on behalf of Reginald Williams ("Williams"), Donny Hodkinson ("Hodkinson"), Tina McDonald ("McDonald"), and Carol Johnson ("Johnson") (collectively, the "Named Plaintiffs") and 104 similarly situated similarly situated opt-in plaintiffs (as a collective unit, "Plaintiffs" or "Driver Plaintiffs"). *See* Doc. 281, Pl.'s Mot. 1. As a collective unit, Plaintiffs include "current and former employees of Defendants who delivered sand to Defendants' oilfield customers for use in fracking operations." Doc. 226, Joint Pre-Trial Or. 5.

At trial, Plaintiffs claimed that, between August 22, 2009 to August 5, 2014, they "were not paid overtime compensation for each every overtime hour worked" in violation of the FLSA, 29 U.S.C. § 207. *Id.* More specifically, they argued that Defendants violated the FLSA by failing to pay Plaintiffs overtime compensation for their off-the-clock overtime hours waiting to be assigned a truck or for their trucks to be loaded/unloaded. *Id.* Defendants countered that Plaintiffs were exempt from the FLSA's overtime pay provisions, and that even if Plaintiffs were not exempt, they "cannot carry

---

[1] *See, e.g.*, Doc. 216, Or. Denying Mot. Summ. J.

[2] *See* Doc. 278, Or. Granting Unopposed Mot. Dismiss.

their burden of showing that they were not paid overtime." *Id.* at 9. Plaintiffs could not carry this burden, Defendants argued, because "the hours for which [Plaintiffs sought] additional [overtime] compensation were not hours actually worked, but rather non-compensable 'wait time.'" *Id.*

On August 5, 2014, the jury, after hearing all the evidence presented at trial, returned a verdict in favor of the Plaintiffs. *See* Doc. 266, Jury Instructions. In doing so, the jury made a number of findings. First, the jury found that Defendants failed to establish "each essential element of the [Motor Carrier Act] Exemption as applied to the [Plaintiffs] as a group[.]" *Id.* at 17. Second, the jury also concluded that Plaintiffs proved "that Defendants failed to pay" each Named Plaintiff "one and one-half time his or her regular rate of pay for 'hours worked' over forty during any 7-day workweek at Native Oilfield[.]" *Id.* at 12. Third, the jury similarly found that Plaintiffs had also established "that the Defendants failed to pay [Plaintiffs], as a collective unit, overtime pay in accordance with the FLSA[.]" *Id.* at 14. Fourth, the jury next determined that Plaintiffs proved that they worked the following "number of unpaid overtime hours . . . on average during the workweeks in which [they were] employed as [truck drivers]": Johnson, 11 hours; Hodkinson, 13 hours; Williams, 10 hours; McDonald, 5 hours; and "Plaintiffs as a collective unit," 18 hours. *Id.* at 19. Lastly, the jury concluded that Plaintiffs additionally proved "that Defendants' FLSA violation(s) were 'wilful.'" *Id.* at 21.

Following the trial, the Court ordered the parties to mediate their unresolved disputes regarding the amount of damages owed by Defendants, but no settlement could be reached. *See* Doc. 269, Mediation Or.; Docs. 274 & 280, ADR Resolution Summs. Thus, in accordance with the Court's instructions, the parties timely filed post-trial motions. *See* Pl.'s Mot.; Doc. 283, Def.'s Post-Verdict Br. ("Def.'s Mot."). Plaintiffs filed their Motion for Judgment pursuant to Federal Rule of

Civil Procedure 58(b), asking the Court to enter final judgment in their favor upon resolving certain issues related to their damages. *See* Pl.'s Mot. 1-3. Defendants' Motion, on the other hand, is filed under Federal Rule of Civil Procedure 50(b), and asserts that the Court should grant judgment in their favor, notwithstanding the jury's verdict. *See* Def.'s Mot. 8-9. In other words, Defendants' Motion is a renewed request for judgment as a matter of law, which the Court previously denied when Defendants moved pursuant to Rule 50(a) at the conclusion of Plaintiffs' case-in-chief. *See* Doc. 299, Trial Tr. Volume IV at 36.

After these post-trial motions were filed, the parties filed timely responses and replies thereto. *See* Doc. 286, Pl.'s Resp.; Doc. 288, Def.'s Resp.; Doc. 290, Def.'s Reply; Doc. 293, Pl.'s Reply. By March 30, 2015, both post-trial motions became ripe for consideration. Before addressing these motions, the Court begins below with a brief review of the law governing claims under the FLSA.

## II.

## LEGAL STANDARD

The FLSA was passed in 1938 in an effort "to 'protect all covered workers from substandard wages and oppressive working hours.'" *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013) (quoting *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). Given its remedial purposes, courts generally "construe the FLSA liberally in favor of employees." *McGavock v. City of Water Valley, Miss.*, 452 F.3d 423, 424 (5th Cir. 2006) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

Among its protections, the FLSA requires that employers pay employees "at a rate not less than one and one-half times the regular rate" of pay for any hours the employees work in excess of forty during the workweek. 29 U.S.C. § 207(a)(1). To enforce this rule, the FLSA "gives employees

the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated.'" *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527, 185 L. Ed. 2d 636 (2013) (citing 29 U.S.C. § 216(b)). Employees who successfully assert a private cause of action for unpaid overtime wages under the FLSA are entitled to collect damages from their employers "in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Prevailing plaintiffs may also collect reasonable attorney's fees and costs associated with the prosecution of their FLSA claims. *See id.*; *Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 799 & n.7 (5th Cir. 2006).

## III.

## ANALYSIS

The parties have each filed post-trial motions in connection with the jury verdict returned in favor of Plaintiffs and their FLSA overtime claims. Defendants' Motion, which is filed pursuant to Rule 50(b),[3] can be quickly disposed first. As mentioned, Defendants' Motion merely renews assertions that the Court already rejected in denying Defendants' Motion for Judgment as a Matter of Law at trial. Moreover, Defendants' Motion explicitly reserves the "right to seek relief [again] under Rule 50(b) following entry of final judgment," Def.'s Mot. 8 n.2, obviating the need to fully readdress matters that Defendants will surely resubmit after this Order. Therefore, the Court hereby **DENIES** Defendants' Motion without any further discussion at this time.

---

[3] Rule 50(b) allows parties to "file a renewed motion for judgment as a matter of law" following a jury verdict. FED. R. CIV. P. 50(b).

That leaves only Plaintiffs' Motion to consider. As is common in these type of cases,[4] final judgment was not entered immediately after the jury's verdict because certain damages issues remain unresolved. Accordingly, Plaintiffs now move for the Court to resolve these outstanding damages issues, incorporate its rulings in a final judgment, and enter that final judgment pursuant to Rule 58.[5] *See* Pl.'s Mot. 1-3. In doing so, Plaintiffs set forth four categories of unresolved matters for the Court to decide. First, Plaintiffs request that the Court award them unpaid overtime compensation in accordance with the jury's findings and the Court's determination of the appropriate regular rate of pay and overtime premium multiplier. *See id.* 3-18. Second, Plaintiffs asks that the Court award them liquidated damages in an amount equal to their back-pay award. *See id.* at 18-20. Third, Plaintiffs also seek recovery of the attorneys' fees and costs that they incurred in prevailing on their FLSA claims. *See id.* at 20-23. Finally, Plaintiffs ask that the Court additionally include post-judgment interest in the final judgment. *See id.* at 23-24. The Court addresses these requests in turn below.

A.      *Unpaid Overtime Back-Pay Award*

As mentioned, the jury in this case found Defendants liable for failing to pay Plaintiffs in accordance with the FLSA's overtime pay requirements, *see* Jury Instructions 14, but they did not determine "the amount of . . . unpaid overtime compensation" Plaintiffs are now entitled to collect. 29 U.S.C. § 216(b). The parties now dispute what role, if any, the Court may undertake in calculating Plaintiffs' back-pay award, and what amount, if any, that award should be.

---

[4] *See, e.g.*, *Dobson v. Timeless Restaurants, Inc.*, No. 3:09-CV-2481-L, 2013 WL 6079395, at *1 (N.D. Tex. Nov. 19, 2013) ("This case has been tried to a jury and administratively closed; however, a final judgment has not been issued because two [damages] issues remain unresolved . . . .").

[5] Rule 58 gives the Court authority to "approve" and "enter" judgment after "the jury returns a special verdict or a general verdict with answers to written questions." Fed. R. Civ. P. 58(b)(2).

As noted by Plaintiffs, the jury did make certain findings relevant to the amount of unpaid overtime compensation owed to Driver Plaintiffs. *See* Pl.'s Mot. 4. Specifically, the jury determined the average number of unpaid overtime hours worked by the Named Plaintiffs, individually, and the Driver Plaintiffs, collectively, during their respective workweeks. *See* Jury Instructions 19. In addition, the parties stipulated to the relevant ranges of workweeks for all 108 Driver Plaintiffs.[6] According to Plaintiffs, what remains for the Court to determine in terms of their unpaid overtime compensation are the Driver Plaintiffs' regular rates of pay and overtime premium multiplier. *See* Pl.'s Mot. 4-5. Based on these determinations, the jury's findings, and the parties' stipulations, Plaintiffs argue that the Court can then calculate their back-pay award. *See id.*

Defendants counter that the Court cannot award Plaintiffs back-pay as requested, since the jury failed to decide certain factual matters that the Court itself cannot determine. Def.'s Resp. 3-5. Even if the Court can make these determinations, Defendants continue, it should find that Plaintiffs are not entitled to back-pay, because Plaintiffs failed to present sufficient evidence of their regular rates and overtime premiums. *See id.* at 5-9. The Court takes up these assertions below, starting first with the parties' threshold dispute concerning its authority and role in calculating Plaintiffs' unpaid overtime compensation.

      1.     The Court's Authority to Determine Plaintiffs' Overtime Pay With No Additional Jury Findings

---

[6] *See* Doc. 282-3, Pl.'s App. 57-59, Ex. C. Also note that since the jury found Defendants' FLSA violations to be "willful," *see* Jury Instructions 21, the FLSA's three year limitation period applies in this case, allowing Plaintiffs to collect damages dating three years back from the date on which this action was filed. *See* 29 U.S.C. § 255(a); *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003).

The parties, as mentioned, initially dispute the Court's ability to award Plaintiffs back-pay in the absence of certain factual findings made by a jury. Plaintiffs maintain that the Court may award unpaid overtime compensation without any additional jury findings, because it is the Court's duty "to determine, as a matter of law, the regular rate of pay, the method of calculating damages, and the amount of unpaid overtime compensation owed." Pl.'s Mot. 4-5. Defendants, on the other hand, contest the Court's ability to determine Plaintiffs' regular rate of pay.  *See* Def.'s Resp. 3-5. In particular, they argue that "the Court's calculation of [Plaintiffs' regular rate] must be based on factual findings made by the jury," including "the actual hours worked and the total wages received for each workweek." *Id.* at 3. And since the jury in this case never determined Plaintiffs' actual hours worked or total wages received, Defendants contend that "the Court is unable to calculate the Plaintiffs' regular hourly rate of pay, and thus, unable [to] calculate the total overtime pay owed to the remaining Plaintiffs." *Id.* at 5. The Court, as follows, disagrees with Defendants, and finds Plaintiffs' position more consistent with existing law.

The Fifth Circuit holds that "once the fact finder has established that the employee is due unpaid overtime, the proper determination of the regular rate of pay and overtime premium to which an employee is entitled *is a question of law*." *Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013) (citing *Ransom v. M. Patel Enterprises, Inc.*, 734 F.3d 377, 381-82 (5th Cir. 2013); *Singer*, 324 F.3d at 823)) (emphasis added). To be clear, the Fifth Circuit has specifically stated that "*the court must determine* [these matters] as a matter of law," upon a finding of liability. *Id.* (citing *Ransom*, 734 F.3d at 381; *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 679 (7th Cir. 2010)) (emphasis added). Despite acknowledging this binding precedent, Defendants maintain that the Court cannot legally determine Plaintiffs' regular rate in these circumstances. *See* Def.'s Resp. 3. In Defendants'

- 8 -

view, this legal determination cannot be reached by the Court, because it would require the Court

to resolve factual issues that underlie the regular rate determination. *See id.* at 3-4.

But contrary to Defendants' assertions, courts routinely decide factual matters in the process

of calculating the unpaid overtime compensation owed to employees as a matter of law. *See, e.g.*,

*Singer* 324 F.3d at 424 (upholding the district court's factual decision to "credi[t] the account

summaries prepared by the [defendant's] accountant over those of the [plaintiff's] accountant" in

calculating an FLSA overtime pay award); *Black*, 732 F.3d at 496, 498 (stating that "the court must

determine as a matter of law whether to apply the standard method of calculating" overtime pay

versus another, and later indicating that this legal issue turns on a separate "question of fact"

determined by the lower court itself); *Ransom*, 734 F.3d at 381 (same as *Black*). Indeed, courts have

observed that "the employee's regular rate of pay *is* a factual matter." *Urnikis-Negro*, 616 F.3d at 680

(citing *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424-25 (1945) (emphasis

added). It seems that the reason for this—why courts, rather than juries, at times resolve ostensibly

factual issues connected to the regular rate—is that the regular rate is the "keystone" of 29 U.S.C.

§ 207(a); it drives "the amount of overtime payments which are necessary to effectuate the statutory

purposes." *Walling*, 325 U.S. at 424. "The proper determination of that rate is therefore of prime

importance," according to the Supreme Court. *Id.* Based on this precedent, the Court believes that

it has discretion to make the "proper determination" of Plaintiffs' regular rate in these circumstances,

despite the seemingly factual nature of this inquiry.

None of the authorities cited by Defendants undermine or contradict the weight of precedent

supporting the Court's decision to proceed in this manner. Defendants, for example, lean heavily on

a Department of Labor ("DOL") regulation setting forth factual matters—including, "total

remuneration for employment" and "total number of hours actually worked"—that generally factor

into an employee's regular rate determination. 29 C.F.R. § 778.109. This regulation, however, says

nothing about who—courts or juries—should determine these factual predicates to the regulation's

regular rate calculation. And as the caselaw discussed above demonstrates, the mere existence of

these factual issues in the regular rate determination does not mean that courts must present such

issues to the jury as a matter of law. In the end, DOL regulations of this type are mere "interpretive

rule[s], . . . not [] remedial measure[s]." *Umikis-Negro*, 616 F.3d at 677-78.[7] In other words, they

"sa[y] nothing about how a court is to calculate damages where, as here, the employer has breached

its obligation to pay the employee an overtime premium. [Their] focus instead is on how an employer

may comply with its statutory obligations in the first instance and avoid liability for breach of those

obligations." *Id.* at 678. Therefore, the Court rejects Defendants' suggestion that 29 C.F.R. § 778.109

forecloses the Court's determination of the regular rate in these circumstances.

The few cases cited by Defendants are similarly unavailing. The first, *Anderson v. Mt. Clemens*

*Pottery Co.*, 328 U.S. 680, 687 (1946), is cited by Defendants for the unremarkable proposition that

Plaintiffs bear the initial burden of proving damages—a point that is neither disputed nor helpful

here. Similarly, Defendants highlight an isolated passage from the dissent in *Atlantic Co. v. Broughton,*

in which Judge Waller makes the straightforward observation that "the number of hours in which

any employee may have worked during a period in question is wholly a question of fact." 146 F.2d

480, 485 (5th Cir. 1944) (Waller, J., dissenting). However, Judge Waller's dissent—while addressing

---

[7] The DOL regulation discussed by the Seventh Circuit in *Umikis-Negro*, 29 C.F.R. § 778.114, is actually different than the regulation cited here by Defendants, 29 C.F.R. § 778.109.  Nevertheless, the Seventh Circuit's reasoning applies with equal force to § 778.109 in these circumstances.

a completely unrelated issue to the one presented here—says nothing about whether such questions are "for the jury to decide," as Defendants misleadingly suggest. Def.'s Resp. 4. Defendants also cite the Fifth Circuit's opinion in *Mitchell v. Denton*, upholding a district court's decision to submit the issue of "the exact number of weekly overtime hours worked" to the jury. 224 F.2d 596, 597-98 (5th Cir. 1955). Note, however, that the decision at issue in *Mitchell* was the district court's refusal "to direct a verdict for the unpaid overtime compensation [sought]." 224 F.2d at 597. The Fifth Circuit, therefore, was merely concerned with the sufficiency of the evidence of unpaid overtime hours, not whether the court or jury was the proper judge of this disputed fact.

Ultimately, Defendants' underlying complaint here appears to be that the Court erred in rejecting their proposed jury instructions, which would have required the jury to precisely determine the total weekly pay and total hours worked each week for all 108 Driver Plaintiffs. But whether the Court should have submitted more exacting questions to the jury is an issue Defendants may properly raise in a Rule 50 motion; for present purposes, these issues are not the Court's concern. Instead, the question at hand is whether the Court is permitted to determine Plaintiffs' back-pay award without any further jury findings. Since the weight of authority suggests that it can, the Court rejects Defendants' contentions, and finds that it may appropriately proceed to the issues of Plaintiffs' regular rate of pay and overtime premium, as follows.

2.   Determining Plaintiffs' Regular Rate of Pay

Having found that it has the requisite authority here, the Court turns now to the issue of Plaintiffs' regular rate. "The FLSA broadly defines 'regular rate' as the hourly rate actually paid the employee for 'all remuneration for employment.'" *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010) (citing 29 U.S.C. § 207(e); *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 42

(1944)). Ordinarily, determining the regular rate entails a straightforward "mathematical computation" based on "the amount of wages and the mode of payment" agreed to by the parties. *Id.* (citing *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461 (1948)). In this case, however, Plaintiffs have been unable to produce evidence from which the Court may precisely compute their regular rates of pay. Instead, they could only offer approximations drawn primarily from the testimony offered at trial. *See* Pl.'s Mot. 12-13; Pl.'s Reply 5-6.[8] On this basis, Plaintiffs ask the Court to set a regular rate of pay at $15 per hour for their entire 108-member collective unit. Pl.'s Mot. 12.

In opposing Plaintiffs' request, Defendants argue that Plaintiffs have failed to meet their "burden of providing competent, affirmative evidence of [their] damages." Def.'s Resp. 5. According to Defendants, the testimony presented at trial is simply "not sufficient to support Plaintiffs' damages calculations." *Id.* As such, Defendants ask the Court to altogether deny Plaintiffs damages for failure to satisfy their burden of proof. *See id.* at 5-9.

As Defendants concede,[9] however, the evidence presented at trial undisputedly shows that they failed to maintain adequate payroll records. Had Defendants lived up to their record keeping obligations—mandated by federal law, *see* 29 U.S.C. § 211(c)—Plaintiffs could have "easily discharge[d] [their] burden by securing the production of those records." *Mt. Clemens Pottery*, 328

---

[8] Though Plaintiffs cited only Barclay's testimony in their opening brief, they reserved the right to supplement their Motion "upon receiving all trial testimony transcripts," which they later did in their reply brief. Pl.'s Mot. 8 n.6; *see* Pl.'s Reply 5-6. Thus, the Court finds that it may consider the testimony cited in Plaintiffs' reply, even though it was not cited in their opening brief. To the extent Defendants take issue with this newly-cited testimony, they could have, but failed to, file an objection or sur-reply.

[9] *See* Def.'s Resp. 5 (conceding that Plaintiffs "need only prove [their] damages as a matter of 'just and reasonable inference,'" given that "the employer has kept inadequate records."). Plaintiffs also show that Defendants' payroll records "fail to list any on-the-clock hours for some Plaintiffs," provide "incomplete or inaccurate on-the-clock hours" for others, at times omit "total remuneration received," and fail to "identify the particular Plaintiff for which they apply" in other cases, among other deficiencies. Pl.'s Mot. 7-9.

U.S. at 687. Under such circumstances, the proper course of action "is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work," as Defendants suggest. *Id.* Rather, the Supreme Court in *Mt. Clemens Pottery* instructed lower courts faced with such circumstances to apply the following burden-shifting analysis:

> [A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence  *688 to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 688. The Court, as follows, applies this analysis to the parties assertions in this case.

### i.        *Plaintiffs' evidence of their $15 per hour regular rate*

As mentioned, Plaintiffs bear the initial burden in these circumstances to prove their regular rate "as a matter of just and reasonable inference." *Id.* at 687. In an effort to satisfy this burden, Plaintiffs presented a variety of testimony and evidence at trial aimed at approximating an appropriate regular rate to apply to the damages calculation for all 108 Driver Plaintiffs.

First, all four of the Named Plaintiffs testified as to their regular rates, along with those of their fellow drivers, working out of Defendants' truck yard in Alvarado, Texas. Carol Johnson testified that she was paid at an hourly rate of $14 per hour during the time she worked as a driver out of the Alvarado yard. Doc. 296, Trial Tr. Volume I at 140-42. While she did not personally know what other drivers were paid, Johnson's $14 per hour rate matched the rate advertised in a job listing that she responded to. *Id.* at 142. She also heard other drivers mention being paid at an hourly rate. *Id.* at 159. Donny Hodkinson similarly testified that he was paid around $17 per hour as a driver.

Doc. 297, Trial Tr. Volume II at 108, 120. He also stated that he was aware of drivers only being paid on an hourly basis in his time of employment, and that three drivers in particular—each of whom is an opt-in Plaintiff—told him they were paid between $17 and $18 per hour. *Id.* at 121. Reginald Williams next testified that he was paid $16.30 per hour as a driver. *Id.* at 145. Williams further indicated that in his subsequent role as a driver trainer, he learned that Defendants were hiring new drivers at $14 per hour, and that he was aware of drivers being paid up to $18 per hour. *Id.* at 155-56. Additionally, Tina McDonald testified, similar to Johnson, that she was paid $14 per hour during her time as a driver for Defendants, which matched the regular rate at which her job was advertised. *Id.* at 189, 196. Other new drivers told McDonald that they were also paid at a rate of $14 per hour. *Id.*

Second, Plaintiffs also presented testimony from two of the opt-in Plaintiffs, both of whom worked out of Defendants' truck yard in Hondo, Texas. Chris Gonzales testified that he was initially paid $16 per hour as a driver, *id.* at 233, but that Defendants later switched his method of pay starting in January 2012. *See id.* at 228-29, 233-34. Even though Gonzales's paychecks varied under these different methods of pay, one can infer from his testimony that his regular rate did not significantly differ from his initial $16 per hour rate.[10] Similarly, David Zamarripa testified that when he started working as a driver out of the Hondo truck yard, he was paid hourly, but that his pay rate later changed to "load pay," whereby he received "a percentage of the charge that Native was making

---

[10] To illustrate, Gonzales claims he is owed, on average, 35 hours of unpaid overtime hours, *see* Trial Tr. Vol. II at 236, bringing his average number of hours worked per week to 75 hours. He also testified that his weekly pay, on average, was around $1,097 to $1,600 per week, with his highest paycheck being $1,900 and his lowest being about $600. *See id.* at 234, 277-78. This averages to around $1,250 per week. Calculating Gonzales's hourly rate from these two averages ($1,250 ÷ 75) results in a rate of about $16.67 per hour.

to its customers." Doc. 298, Trial Tr. Volume III at 39. Regardless of the method of pay, however, Zamarripa indicated that his earnings averaged out to somewhere "between $15 and $16 per hour," which he estimated on a weekly basis upon receiving his paychecks. *Id.* at 11, 26. He also stated that his girlfriend, who was also paid on a per load basis, had weekly earnings that averaged out to about "the same" hourly rate as him. *Id.* at 13.

Third, Plaintiffs also submitted damages declarations at trial from most Driver Plaintiffs in the collective unit, which include the "overtime rate" at which Driver Plaintiffs claim they should have been paid. *See* Doc. 282-4, Pl.'s App. 60-239, Ex. D (Pl.'s Trial Exhibit 12). From the Court's count, over two-thirds of these declarations assert overtime rates falling somewhere between $21.00 and $24.00 per hour. Thus, Plaintiffs' damages declarations further suggest that a solid majority of Driver Plaintiffs claim to have been paid at regular rates ranging from $14.00 to $16.00 per hour.

Lastly, Plaintiffs also called Defendant Barclay in their case-in-chief, and elicited testimony from him about the regular rates paid to drivers. During questioning, Barclay admitted that a $14 per hour regular rate would be a "reasonable [rate of] pay for a driver." Trial Tr. Vol. III at 169. Barclay further conceded that Chris Gonzales's $16 per hour regular rate "estimate would be reasonable for other drivers in the Hondo area." *Id.* at 171. And in regards to drivers working out of the Alvarado yard, Barclay testified that, from his "recollection[,] the majority of [those] drivers were paid between $14 and $16.50 an hour because they were all hourly." *Id.* at 171-72.

On the basis of the above evidence, the Court finds the $15 per hour rate proposed by Plaintiffs to be an appropriate approximation of their regular rate "as a matter of just and reasonable inference." From Plaintiffs' testimony and declarations, one can reasonably infer that the vast majority of Plaintiffs were paid between $14 and $16 per hour, averaging out to a regular rate of $15

per hour. Defendant Barclay further confirmed that these estimates were "reasonable" and consistent with his "recollection" of what drivers were generally paid. Moreover, the evidence suggests that the $15 per hour rate requested by Plaintiffs, if anything, under-compensates Driver Plaintiffs as a group. For instance, multiple witnesses indicated that drivers were hired at a rate no lower than $14 per hour, whereas others, including Williams and Hodkinson, testified to drivers consistently being paid above $16 per hour. Similarly, in describing how the pay-per-load method ideally worked, Barclay suggested in his testimony that Plaintiffs paid on a per-load basis collected earnings at a regular rate generally around $20 per hour.[11] Nevertheless, given the uncertainty as to Driver Plaintiffs' precise regular rates, a conservative estimate, such as Plaintiffs' $15 per hour approximation, seems justified. On balance, this $15 per hour average strikes a "just and reasonable" accord between holding Defendants accountable for their non-payment of overtime and ensuring that Driver Plaintiffs receive no more than the FLSA promises. As such, the Court concludes that Plaintiffs have produced sufficient evidence of their $15 per hour regular rate "as a matter of just and reasonable inference."

### ii.    *Defendants' efforts to rebut Plaintiffs' regular rate evidence*

In light of the Court's above findings, the burden now shifts to Defendants "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens Pottery*, 328

---

[11] To illustrate, Barclay gave an example of "a 100-mile load that paid $700." Trial Tr. Volume III at 150. Of this $700 load, the evidence indicates that drivers were generally paid "somewhere between 23 and 27 percent," *id.* at 40, or in this example, between $161 and $189 for this 100-mile load. Next, Barclay testified to the projected hours worked in hauling such a load, stating that "[t]he way we . . . explained it to the driver would be, at 40 miles an hour it would take two and a half hours to drive to the location, two and a half hours back, and an hour for loading, and two hours for unloading," for a total of eight hours worked. *Id.* at 150. Putting these numbers together (total pay × total hours worked) would result in a regular rate for drivers paid under the pay-per-load method of somewhere around $20.12 to $23.62 per hour.

U.S. at 687-88. But Defendants counter with no evidence of their own. Instead, they point to purported deficiencies in the evidence offered by Plaintiffs in an effort to show that Plaintiffs have failed to meet their burden of proof. *See* Def.'s Resp. 6-9. Defendants assert, for example, that certain testifying witnesses have not been shown to have "actual knowledge of Plaintiffs' or individual groups of Plaintiffs' actual hours worked or wages paid."[12] *Id.* at 6. They also argue that some of the testimony "applies only to those [Plaintiffs] who were actually paid on an hourly basis, not those [Plaintiffs] who were paid by the load and for whom the Court is now tasked with calculating a regular rate of pay." *Id.* at 8-9. The Court, as follows, finds these contentions unavailing for at least two reasons.

First, Defendants fail to account for the fact that this is a collective action that was tried, at the parties' joint stipulation, *see* Joint Pretrial Order 16, through representational testimony. In such cases, the Fifth Circuit "and other circuit courts of appeals have recognized that the *Mt. Clemens Pottery* standard allows plaintiffs to establish a *prima facie* case for non-testifying employees based on the 'fairly representational' testimony of other employees." *Albanil v. Coast 2 Coast, Inc.*, 444 Fed. Appx. 788, 806 (5th Cir. 2011) (collecting cases); *see also Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir. 1973); *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1331 (5th Cir. 1985). And in this case, the jury already found Plaintiffs' testimony "'fairly representative' of the Driver Plaintiffs as a collective unit." Jury Instruction 13, 14, 19. The sensibility of this finding

---

[12] Defendants also argue that Plaintiffs rely too heavily on Barclay's testimony, which "does not constitute affirmative testimony as to Plaintiffs' actual hourly rates of pay." Def.'s Resp. 7. But this argument is easily dismissed, because Plaintiffs presented plenty of additional testimony in their Reply, which they had reserved the right to do. Even so, it is not clear how Barclay's testimony is not "affirmative" evidence, when it was delivered during Plaintiffs' case-in-chief.

is not an issue currently before the Court. While Defendants are welcome to assert this challenge in a post-judgment motion, their presently veiled attack on Plaintiffs' representative evidence need not be considered at this time.[13]

Second, by focusing entirely on Plaintiffs' supposed failure to satisfy their burden of proving damages, without attacking the reasonableness of the $15 per hour estimate in any way, Defendants reveal that their only real complaint here is the lack of precision in Plaintiffs' approximation. But as the Supreme Court has made clear, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with" his legal obligations. *Mt. Clemens Pottery*, 328 U.S. at 688. Like in *Mt. Clemens Pottery*, it is assumed here that Plaintiffs have "proved that [they have] performed work and ha[ve] not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer." *Id.* In such cases, just because "'damages cannot be ascertained by a fixed rule and must be based upon estimates and opinion, it does not follow that no damages should be allowed.'" *Mitchell v. Mitchell Truck Line, Inc.*, 286 F.2d 721, 726 (5th Cir. 1961) (quoting *Robey v. Sun Record Co.*, 242 F.2d 684, 689-90 (5th Cir. 1957)). Instead, "[i]t is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages." *Mt. Clemens Pottery*, 328 U.S. at 688. Put differently, federal courts "have 'in effect ordered the fact finder to do the best he could in assessing damages'"

---

[13] It is also worth noting that Defendants' argument that Plaintiffs' testifying witnesses lack sufficient knowledge of the drivers' regular rates is based entirely on the testimony of Barclay, which is not the only representative testimony Plaintiffs relied on to formulate the proposed $15 per hour regular rate.

in these types of cases. *Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980) (quoting *Mitchell v. Riley*, 296 F.2d 614, 616 (5th Cir. 1961)).

Given the undisputed inadequacy of Defendants' payroll records, Plaintiffs had no choice but to approximate their damages through the presentation of estimates and opinions. Ultimately, Plaintiffs proposed a $15 per hour average that reasonably accounts for the uncertainty in their precise regular rates of pay, while awarding Driver Plaintiffs, as a collective unit, just compensation for Defendants' FLSA violations. Defendants, moreover, have offered no evidence of their own to refute the reasonableness of this estimation. According to the Supreme Court, "the court may[, in these circumstances,] award damages to the employee, even though the result be only approximate." *Mt. Clemens Pottery*, 328 U.S. at 688. As such, the Court concludes that Plaintiffs are entitled to unpaid overtime compensation calculated at a regular rate of $15 per hour.

### 3. Determining Plaintiffs' Overtime Premium

To recap, the Court has the following facts before it for purposes of calculating Plaintiffs' overtime back-pay award: the relevant workweeks of employment for all 108 Driver Plaintiffs (as stipulated by the parties); the average regular rate at which Driver Plaintiffs were collectively paid during their respective workweeks (as determined by the Court above); and the average number of overtime hours worked by Driver Plaintiffs, per workweek, without being paid an overtime premium (as determined by the jury). For illustrative purposes, these numbers equate to the following for Named Plaintiff Hodkinson: 28 workweeks × 13 hours/workweek × 15 dollars/hour = 5,460 dollars. Notice, this back-pay amount for Hodkinson is calculated at the regular rate. But since he and the other Driver Plaintiffs are entitled to "unpaid overtime compensation" computed at a premium

rate—namely, "at a rate not less than one and one-half times the regular rate," 29 U.S.C. §

207(a)(1)—the Court must lastly determine the appropriate overtime premium multiplier to apply.

Typically, courts "apply the standard . . . *one and one-half* times the regular rate of pay

multiplier found in the FLSA" in awarding unpaid overtime compensation. *Black*, 732 F.3d at 496

(emphasis added); *see also* 29 C.F.R. § 778.107. This standard overtime premium is appropriate, for

example, when employees are paid on an hourly basis. *See* 29 C.F.R. § 778.110(a). But there are

times when the overtime premium "multiplier of only *one-half* [times] the regular rate of pay" should

be applied instead. *Black*, 732 F.3d at 496 (emphasis added). For example, when "the employee is

paid a flat sum . . . for doing a particular job, without regard to the number of hours worked . . . at

the job, and if he receives no other form of compensation for services," the DOL regulations indicate

that the employee "is then entitled to extra half-time pay at [his regular rate] for all hours worked

in excess of 40 in the workweek." 29 C.F.R. § 778.112. This so-called "job-rate" method of

calculating overtime pay is premised on the idea that, since the employment agreement intends to

compensate the employee at a flat rate for *all* hours worked—both overtime hours and hours below

forty—employees claiming unpaid overtime under this model need only be compensated the "extra

half-time pay" that their flat rate failed to cover. *Id.*

In this case, the evidence suggests that the Driver Plaintiffs were paid under two different

payment structures, yielding two potential overtime premium multipliers. Most Driver Plaintiffs were

paid an hourly rate, without any compensation for their off-the-clock overtime hours.[14] Others were,

---

[14] This can be seen, most directly, through a review of Plaintiffs' supplemental affidavits, in which
Plaintiffs indicate their respective methods of pay. *See* Doc. 282-15, Pl.'s App. 1745-1928, Ex. O (Pl.'s Post-
Trial Decls.). A summary of these declarations shows that Plaintiffs collectively worked a total of 3533 weeks
at an hourly rate, versus 1963 weeks at a per-load rate. *See* Doc. 282-9, Pl.'s App. 1664-66, Ex. I.

alternatively, paid, for all or portions of their dates of employment, at a rate analogous to the job-rate method—on a per-load basis[15]—without any overtime compensation. As the parties agree, the standard 1.5 multiplier is the appropriate overtime premium to apply in calculating back-pay for Driver Plaintiffs paid under the first method (hourly), while the .5 multiplier is seemingly applicable to those paid under the second payment model (per load). *See* Pl.'s Mot. 14; Def.'s Resp. 9-10.

Because of this variation in applicable overtime premiums, Plaintiffs propose three options for computing their back-pay. *See* Pl.'s Mot. 16-18. The first option is to apply the 1.5 overtime premium multiplier for all Driver Plaintiffs, resulting in a back-pay award totaling $2,172,016. *See id.* at 16. Plaintiffs' second suggested approach similarly applies a single overtime premium to all members of the collective unit, but it does so using the .5 multiplier, producing a back-pay award of $740,460. *See id.* at 17. Plaintiffs' third option, in contrast to their first two, actually accounts for the varying methods of payment among the 108 Driver Plaintiffs. *See id.* at 17-18. Relying on a set of newly-submitted declarations from each Driver Plaintiff in the collective unit,[16] Plaintiffs' third proposal applies the 1.5 multiplier to those who were paid hourly, and the .5 multiplier to those who were paid on a per-load basis, culminating in a back-pay award of $1,673,145. *Id.* at 17. For obvious reasons, this third option appears to be the most reasonable approach to calculating the Driver Plaintiffs' back-pay award under these circumstances.

---

[15] As Barclay explained at trial, "load pay" is where the driver is paid a percentage of what Native was paid by the customer for hauling a load. Trial Tr. Volume III at 144. This was intended to compensate drivers for hours spent "loading, driving to the location, unloading, and returning from the location." *Id.* Also, drivers were eligible to receive a percentage of the "detention or demurrage" fee that Native charged customers for "time . . . held beyond [Native's] control" at well-sites and staging areas. *Id.*

[16] *See* Pl.'s App. 1745-1928. Note that since Plaintiffs' counsel was unable to obtain declarations from two of the opt-in plaintiffs, the one-half overtime premium was used by default in the calculation of their damages. *See* Pl.'s Mot. 17 n.10.

In response to the three options proposed by Plaintiffs, Defendants offer scant insight or comment on the appropriate overtime premium multiplier to apply. *See* Def.'s Resp. 9-15. Instead, Defendants argue that the Court should altogether deny Plaintiffs relief for failing to produce "sufficient evidence from which the Court can determine the appropriate method of calculating Plaintiffs' overtime premium." *Id.* at 9. In particular, Defendants point to Plaintiffs' purported failure "at trial" to produce evidence "from which the Court could determine the number of employee entitled to overtime compensation" using the 1.5 overtime premium multiplier, "versus the number of employees who were paid by the load and thus are entitled to overtime compensation" using the .5 overtime premium multiplier. *Id.* at 10-11. Additionally, Defendants assert that Plaintiffs cannot salvage their deficient showing at trial by submitting their newly-presented Driver Plaintiff declarations. *See id.* at 12-15. The Court cannot consider these new declarations, Defendants contend, because Plaintiffs failed to submit them at trial, failed to "move for bifurcation [of liability and damages] prior to trial," and failed to demonstrate "that they are entitled to supplement the record with evidence not introduced at trial." *Id.* at 13-15. For similar reasons as before, the Court disagrees with Defendants' ineffectual assertions as to the Driver Plaintiffs' overtime premium.

First, Defendants fail to cite any authority suggesting that overtime damages may be denied merely because the record is unclear as to which overtime premium to apply in calculating a plaintiff's otherwise-established damages.[17] Nor is the Court aware of any. Instead, as discussed in

---

[17] The sole case Defendants cite here is *Rosano v. Twp. of Teaneck*, 754 F.3d 177 (3d Cir. 2014), which is easily distinguishable. First, the defendant in that case did indeed "maintain overtime records" in accordance with their legal obligations. *Id.* at 189. Second, while the plaintiffs' overtime pay estimate in *Rosano* failed "to set forth the proper method of calculation," this was just one of the many deficiencies in their proposed calculation that led the Third Circuit to uphold the trial court's summary judgment ruling. *See id.* at 188-89.

detail above, the relevant caselaw indicates that employers in these circumstances "cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with" his federal record-keeping obligations. *Mt. Clemens Pottery*, 328 U.S. at 688. This point rings especially true here, as the only uncertainty left with respect to Plaintiffs' damages is the proper multiplier to apply—not "the amount and extent of [the] work" Plaintiffs performed, which they have already shown "as a matter of just and reasonable inference." *Id.* at 677-88. The idea that Defendants should avoid paying any damages simply because *they* failed to keep adequate records of the different payment structures *they* decided to implement runs completely contrary to the long-standing principles set forth in *Mt. Clemens Pottery*. Drawing on these principles, the Fifth Circuit has instructed lower courts faced with the sort of uncertainty presented here "'to do the[ir] best . . . in assessing damages,'" not "'penalize the employee by denying him any recovery,'" as Defendants request. *Reeves*, 616 F.2d at 1351-52 (quoting *Riley*, 296 F.2d at 616; *Mt. Clemens Pottery*, 328 U.S. at 687)). In accordance with these instructions, the Court finds that Plaintiffs have shown that they entitled to damages "as a matter of just and reasonable inference, . . . even though the result [may] be only approximate" due to uncertainty in the applicable overtime premium multiplier. *Mt. Clemens Pottery*, 328 U.S. at 687-88.

Second, the Court also rejects Defendants' contention that it may not consider Plaintiffs' supplemental declarations in selecting an appropriate overtime premium multiplier. As an initial matter, the point raised by Plaintiffs that "FLSA cases are essentially bifurcated between liability and damages" is well taken, if not supported by law. Pl.'s Mot. 17. Given the unique role courts are often thrust into in calculating damages under the FLSA, "non-jury . . . post-trial damage calculation proceeding[s]" are sometimes necessary, *Ransom*, 734 F.3d at 381, even if no motion to bifurcate has

been filed. As such, the Court arguably has discretion to consider Plaintiffs' supplemental declarations pursuant to its duty to "determine as a matter of law whether to apply the standard method of calculating the amount of overtime pay" or some other method. *Black*, 732 F.3d at 496. But since the law is not entirely clear on this point, for good measure, the Court finds it has discretion to consider the supplemental declarations pursuant to Plaintiffs' alternative request to reopen the record. *See* Pl.'s Mot. 18.

Lower courts are afforded discretion "to reopen the record" upon a party's request to present supplemental evidence. *Chieftain Int'l (U.S.), Inc. v. Se. Offshore, Inc.*, 553 F.3d 817, 820 (5th Cir. 2008) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971)). The Fifth Circuit has instructed lower courts presented with such a request "to weigh 'the importance and probative value of the evidence, the reason for the moving party's failure to introduce the evidence earlier, and the possibility of prejudice to the non-moving party.'" *Id.* (quoting *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 814 (5th Cir. 1996)). In regards to the importance/probative-value factor, the Fifth Circuit warns that courts must not "ac[t] as a trier of fact, weighing and then excluding the evidence," but rather "as a gatekeeper, . . . making a threshold probative-value determination." *Aransas Project v. Shaw*, 775 F.3d 641, 655-56 (5th Cir. 2014). Ultimately, the decision a trial court reaches in balancing these factors "will not be disturbed in the absence of a showing that it has worked an injustice in the cause.'" *Chieftain Int'l*, 553 F.3d at 820 (quoting *Garcia*, 97 F.3d at 814).

Weighing the relevant factors in this case, the Court finds that reopening the record to consider Plaintiffs' supplemental declarations is warranted. First, it is undisputed that the declarations are relevant and important. In their absence, the Court is forced to make a judgment call as to what overtime premium to apply to the entire 108-member collective unit, based on

Plaintiffs' representative testimony and other evidence of their damages at trial, along with other factors such as Defendants' lack of payroll records. By contrast, with the affidavits, the Court can make a more "just and reasonable" determination of Plaintiffs' award based on their actual methods of pay. Second, while Plaintiffs arguably should have presented this evidence at trial, it is understandable why they did not. In the Joint Pretrial Order, the parties agreed that Plaintiffs would be permitted to "offe[r] representative testimony in the Driver case as to liability and damages," Joint Pretrial Order 16, from which Plaintiffs could reasonably conclude that the issue of their variable methods of pay would not be raised at trial or in these post-trial proceedings. Indeed, Defendants make no mention of the issue in their damages contentions in the Joint Pretrial Order. *See id.* at 9. Moreover, based on the Court's above discussion of the inherently bifurcated nature of FLSA proceedings, it was not unreasonable for Plaintiffs to believe that they could freely supplement the record after trial with any evidence that may be helpful to the Court's overtime pay calculation.

Lastly, even assuming that introduction of the supplemental affidavits is prejudicial to Defendants, any such prejudice does not tip the scales in favor of refusing to reopen the record. Defendants argue that they would be prejudiced by the introduction of these supplemental declarations, because they "have had no opportunity to assess the veracity of or otherwise challenge the [new] evidence." Def.'s Resp. 15. Notably, Plaintiffs submit these declarations for the sole purpose of showing whether particular Driver Plaintiffs were paid on an hourly or per-load basis. Defendants could have easily challenged these simple assertions by presenting their own evidence suggesting particular Driver Plaintiffs were paid under one or another method of compensation. But Defendants have shown no interest in actually mounting such a challenge. Instead, their claims of prejudice here seems to be a straw man argument; in reality, Defendants only ask the Court to

exclude Plaintiffs' supplemental declarations, because doing so furthers their underlying request that the Court deny Plaintiffs all relief for failure to present sufficient evidence of their damages. The Court, of course, rejected this contention above, finding that Plaintiffs are entitled to damages notwithstanding the uncertainty as to their overtime premium. Given these circumstances, Defendants arguably stand to suffer more prejudice if the Court were to exclude the supplemental declarations, because in their absence, Defendants would probably be liable for an even higher back-pay award consistent with Plaintiffs' first overtime premium proposal.[18] Accordingly, the Court finds that reopening the record to consider Plaintiffs' supplemental declarations is not prejudicial to Defendants, and to the extent it is, such prejudice does not warrant excluding the declarations from the Court's calculation of Plaintiffs' unpaid overtime compensation.

In conclusion, the Court adopts Plaintiffs' third overtime premium proposal in the calculation of the Driver Plaintiffs' unpaid overtime compensation award. As discussed, this proposal offers the most "just and reasonable" approximation of Plaintiffs' back-pay—accounting for the actual method of pay for each Driver Plaintiff—and Defendants have offered no evidence of their own to "negat[e] the reasonableness of the inference to be drawn from [Plaintiffs'] evidence." *Mt. Clemens Pottery*, 328 U.S. at 687-88. Based on this determination, along with the previously-noted findings and stipulations, the Court concludes that Plaintiffs are entitled to unpaid overtime compensation in

---

[18] While the Court need not decide this issue, Plaintiffs make a strong argument for adopting their first overtime premium proposal, which applies the 1.5 multiplier to the entire Driver Plaintiffs' unit. In particular, they rationalize this proposal on the basis of the jury's conclusion that "the evidence in this case was representative of the Drivers as a 'collective unit,'" and the Supreme Court's guidance in *Mt. Clemens Pottery* indicating "that an employee should not be penalized for an employer's failure to satisfy federal record keeping obligations." Pl.'s Mot. 16.

accordance with the calculation set forth in Exhibit I attached to Plaintiffs' Motion, *see* Pl.'s App. 1664-66, resulting in a back-pay award totaling $1,673,145.00.

B.      *Liquidated Damages*

Plaintiffs next ask "that the Court enter judgment awarding them liquidated damages in an amount equal to" their back-pay award. Pl.'s Mot. 18. The FLSA allows employees to recover liquidated damages in an "equal amount" as their "unpaid overtime compensation" award. 29 U.S.C. § 216(b). Though at one time they were "mandatory," liquidated damages "can now" be refused "if the court concludes that the employer acted in 'good faith' and had 'reasonable grounds' to believe that its actions complied with the FLSA." *Singer*, 324 F.3d at 823-24 (quoting 29 U.S.C. § 260). This "good faith" defense, however, is not applicable in this case for two reasons. First, the "employer faces a substantial burden of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA," *id.* at 823 (citation and quotation marks omitted), and in this case, Defendants made no effort to contest liquidated damages in their post-trial briefing. Second, where a jury finds that the employer "acted willfully in violating the FLSA"—as the jury in this case did with respect to Defendants, *see* Jury Instructions 21—the employer "cannot show that it acted in good faith," and as such, "a liquidated damages award is warranted." *Black*, 732 F.3d at 501 (citing *Singer*, 324 F.3d at 823; *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999)). Accordingly, the Court grants Plaintiffs' request for liquidated damages in an amount equal to their back-pay award, resulting in a liquidated damages award of $1,673,145.00.

C.      *Attorneys' Fees and Costs*

The Court next consider Plaintiffs' request to recover attorneys and costs as prevailing claimants in this matter. Pl.'s Mot. 20. Specifically, Plaintiffs seek $371,759.59 in attorneys' fees and

$10,564.32 in costs. *Id.* at 22-23. While Defendants do not dispute Plaintiffs' right to recover such fees and costs, they argue that Plaintiffs' "billing records . . . are impermissibly vague and constitute insufficient documentation of" the fees requested. Def.'s Resp. 15. Because of this, Defendants ask the Court "to reduce the amount of attorney hours by the amount sufficient to account for Plaintiffs' facially inadequate billing records." *Id.* at 19. Thus, the Court need only resolve below the "reasonable" amount of attorneys' fees Plaintiffs are entitled to collect.

In the Fifth Circuit, determining reasonable attorneys' fees generally begins with a calculation of "the 'lodestar.'" *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 380 (5th Cir. 2010). "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work." *Black*, 732 F.3d at 502 (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012)). "There is a strong presumption of the reasonableness of the lodestar amount." *Id.* (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)). Nevertheless, after calculating the lodestar, courts often evaluate the resulting value in relation to "the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)."[19] *Jimenz*, 621 F.3d at 380. Under certain circumstances, "a district court may enhance or decrease the amount of attorney's fees based on 'the relative weights of the twelve factors set forth in *Johnson*.'" *Black*, 732 F.3d at 502 (citing *Saizan*, 448 F.3d at 800). Lodestar

---

[19] The twelve *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

enhancements, however, are permitted only in "rare and exceptional circumstances." *Perdue*, 559 U.S. at 552. Moreover, "[t]he lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Black*, 732 F.3d at 502 (citing *Saizan*, 448 F.3d at 800).

In this case, Plaintiffs provided the following lodestar values for the work performed in the driver lawsuit by their four attorneys, two paralegals, and one administrative assistant/data clerk:

| Professional | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Allen Vaught | $400 | 557.13 | $222,852.40 |
| Russell Budd | $700 | 12.15 | $8,505.00 |
| Sangeeta Kuruppillai | $325 | 246.15 | $79,998.75 |
| Ryan Burton | $300 | 255.62 | $76,686.00 |
| Ric Justiss (paralegal) | $45 | 556.04 | $25,021.58 |
| Stephanie Perkins (paralegal) | $75 | 27.5 | $2,062.50 |
| Paul Thorton (admin. assist.) | $45 | 122.7 | $5,521.50 |
| **Totals** | ███████ | 1,627.09 | $420,647.73 |

*See* Pl.'s Mot. 22; Doc. 282, Pl.'s App. 1675, 1703, 1729, 1737, 1744, 1939, 1946, 1952. While maintaining that these figures are reasonable, Plaintiffs' counsel factors into the requested fee: a 10% reduction of each attorney's lodestar, a 25% reduction of each paralegal's lodestar, and a 60% reduction of the administrative assistant's lodestar, in order "to account for billing judgment and clerical work." Pl.'s Mot. 23. With these reductions, the total fee requested by Plaintiffs' counsel comes out to $371,759.59. *Id.* at 22-23. Upon considering this award in relation to the twelve *Johnson* factors, Plaintiffs argue that no additional "downward adjustment" is warranted, and that the Court should, therefore, find the requested fee reasonable. Pl.'s App. 1677-1682; *see also* Pl.'s Mot. 23.

In response, Defendants do not dispute the reasonableness of the fees requested for Plaintiffs' paralegals and administrative assistant, which the Court finds no reason to further question itself. Nor do Defendants challenge the reasonableness of the hourly rates claimed by each of Plaintiffs' attorneys, which the Court finds to be reasonable based on the declarations submitted in support. Instead, Defendants attack Plaintiffs' fee request solely based on the amount of hours expended by Plaintiffs' attorneys.

In challenging the reasonableness of the billed hours, Defendants assert that "Plaintiffs' billing entries are entirely repetitive and vague," leaving the Court "unable to determine the reasonableness of the time allegedly expended by Plaintiffs' counsel." Def.'s Resp. 16. In particular, Defendants take issue with some of the billing descriptors used by Plaintiffs' counsel, such as "prep motion for summary judgment," "Research for Motion on pleadings," "prep damages," "Work on Reply Brief to MSJ," and "Work on Exhibits." *Id.* at 16-17. They also contend that certain repetitive entries suggest that some of the hours expended were "unnecessarily duplicative," and therefore unreasonable. *Id.* at 17. Moreover, Defendants argue that the "ten-percent reduction" Plaintiffs incorporated into their attorneys' lodestar calculations "is not sufficient to overcome the sheer inadequacy of [Plaintiffs'] records." *Id.* at 18. Accordingly, Defendants ask the Court "to reduce the amount of attorney hours [submitted] by an amount sufficient to account for Plaintiffs' facially inadequate billing records." *Id.* at 19. For the reasons that follow, the Court declines Defendants' invitation to further reduce Plaintiffs' requested fee.

As the Fifth Circuit has stated, in one of the cases relied on by Defendants, courts must be cognizant of the burden imposed on requiring overly detailed billing descriptions in fee applications:

> [W]e are mindful that practical considerations of the daily practice of law in this day and age preclude "writing a book" to describe in excruciating detail the professional services rendered for each hour or fraction of an hour. We also recognize that, this era of computerized timekeeping, many data processing programs limit the amount of input for any given hourly or daily entry.

*League of United Latin American Citizens No. 4552 (LULAC) v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228,

1233 (5th Cir. 1997) (quoting *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir.

1995)). With this reasoning in mind, the Fifth Circuit went on to hold that the billing records at

issue in *LULAC* "were not so vague or unilluminating that they precluded meaningful review of

whether particular hours were reasonably expended on this litigation." *Id.* Instead, the court found

the records sufficient, because they contained "the date, the number of hours spent (calculated to

a tenth of an hour), and a short but thorough description of the services rendered." *Id.* And although

the Fifth Circuit noted that the lower court had discretion to strike particular entries for vagueness,

including one for "'research and review of cases,'" it warned that the lower court should make this

determination in the broader context of "whether particular hours were reasonably expended rather

than making an across-the-board reduction based on inadequate documentation." *Id.*

Here, Defendants point the Court to no entries from Plaintiffs' billing records that are as

vague as "research and review of cases." *Id.* Instead, each of the entries they highlight contain "the

date, the number of hours spent (calculated to a tenth of an hour), and a short but thorough

description of the services rendered." *Id.* In fact, even the least descriptive entries that Defendants

focus on, such as "prep for MSJ" and "Pretrial Matters," can be examined for their reasonableness

based on the number of hours spent on such tasks, the more detailed entries surrounding them, and

their dates of entry, which indicates the point in the proceedings in which the particular services

were rendered. Requiring counsel to provide more detail than they already included would be

unnecessarily burdensome under these circumstances. Moreover, even assuming some of the billing entries highlighted by Defendants are overly vague, that does not warrant the sort of "across-the-board reduction" that Defendants request. *Id.* Plaintiffs already proposed a reasonable 10% reduction to account for their billing judgment. The Court sees no need to arbitrarily reduce this fee further simply because other court-sanctioned reductions have "surpass[ed] ten percent" under different circumstances. Def.'s Resp. 18.

Similarly, Plaintiffs' attorneys' billing entries are not unreasonably repetitive as Defendants claim. The supposedly duplicative entries cited by Defendants relate to matters that counsel would understandably spend multiple days on. For example, it is perfectly reasonable that lead attorney Allen Vaught would have ten different entries, over ten separate days and nearly thirty hours, in which he was doing "[p]rep MSJ," i.e., preparing a potentially-decisive motion for summary judgment. *See* Pl.'s App. 1692-93. Likewise, Defendants point out that "Mr. Kuruppillai's record include eight separate entries entitled 'Work on Pretrial Disclosures' for a total time of thirty-seven hours." Def.'s Resp. 17 (citing Pl.'s App. 1735). However, note that Mr. Kuruppillai appears to be the only attorney for the Plaintiffs with timesheet entries related to "Work on Pretrial Disclosures." Therefore, it is unremarkable, and in fact reasonable, that Mr. Kuruppillai, as the sole attorney preparing pretrial disclosures for all 108 Plaintiffs in a complex wage and hour dispute, would expend thirty-seven hours working on this task.

Having turned aside Defendants' contentions, the Court further examines this seemingly reasonable fee request under the relevant *Johnson* factors,[20] which each appear to support Plaintiffs'

---

[20] The *Johnson* factors that are not particularly relevant here include: (4) preclusion of other employment, (5) the customary fee—which was factored into the lodestar—(6) fixed versus contingent fee,

proposal. Starting with the first factor—time and labor—counsel reasonably expended significant hours serving all 108 Plaintiffs over the course of this three-year-old lawsuit. Regarding the second *Johnson* factor, counsel took on a number of novel and difficult legal issues in this case, only some of which were discussed in this lengthy Order. And, relevant to the third factor, navigating these difficult issues required a good deal of skill from Plaintiffs' attorneys. Skipping next to the eighth factor—the results attained—despite these challenges, counsel achieved a highly favorable outcome for Plaintiffs, including a jury verdict and over $3 million in damages. Moving, last, to the tenth factor—the undesirability of the case—counsel agreed to litigate Plaintiffs' claims in spite of the risks of little to no compensation for their services. These risks included: filing suit on behalf of just a few employees, with relatively small unpaid wages claims, and no guarantee more employees would opt in; the threat that Defendants would prevail on their FLSA exemption and non-compensable "wait time" defenses, in which case Plaintiffs could not recover attorneys' fees and costs; and the risk of non-payment from a group of underpaid employees in the event Plaintiffs' claims were unsuccessful. In sum, the *Johnson* factors, while they may not warrant any reduction or enhancement of the proposed fee, help solidify its reasonableness. Therefore, the Court concludes that Plaintiffs are entitled to collect $371,759.59 from Defendants in attorneys' fees and $10,564.32 in costs as prevailing claimants under the FLSA.

Two final matters require brief discussion. First, Plaintiffs note that "the legal fees and costs [requested] here cover only the time period up to January 30, 2015," and therefore, they ask for "the

---

(7) time limitations imposed on attorney, and (11) nature and length of the attorney-client relationship. The Court also declines to discuss the ninth (the experience, reputation, and ability of the attorneys) and twelfth (awards in similar cases) *Johnson* factors, despite the showing made by Plaintiffs. *See* Pl.'s App. 1681-82.

opportunity to supplement" their fee/cost request at a later time. Pl.'s Mot. 23. While the Court will allow such supplementation, to avoid duplicative efforts, Plaintiffs should hold off on filing their supplemental request until all post-verdict matters, including any fees and costs incurred on appeal, have been resolved. Second, Plaintiffs also request a conditional award of $150,000 to cover fees they expect to incur "in the event of an appeal by Defendants." *Id.* The Court, however, declines to award this speculative request. Plaintiffs can move for an award of these damages, as part of a single supplemental request, after such fees and costs are actually incurred.

  D.  *Post-Judgment Interest*

  Lastly, Plaintiffs requests that post-judgment interest be included in the Court's final judgment. *See* Pl.'s Mot. 23-24. This request is made pursuant to 28 U.S.C. § 1961, which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Such post-judgment interest is permitted for damages awarded under the FLSA, the Fifth Circuit has found. *See Reeves v. Int'l Tel. & Tel. Corp.*, 705 F.2d 750, 751-52 (5th Cir. 1983). And since Defendants raise no objections on this point, the Court finds no reason to question this matter further. Accordingly, the Court grants Plaintiffs' final request that post-judgment interest be included in the judgment entered pursuant to this Order.

## IV.

## CONCLUSION

  For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion (doc. 281) and **DENIES** Defendants' Motion (doc. 283). As detailed above, the Court concludes that Plaintiffs are entitled to final judgment on their FLSA claims awarding them $1,673,145.00 in unpaid overtime

compensation, $1,673,145.00 in liquidated damages, $371,759.59 in attorneys' fees, and $10,564.32 in costs.[21] The judgment, which will follow this Order, shall also include post-judgment interest.

**SO ORDERED.**

**Dated: May 8, 2015.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[21] As discussed, the Court denies Plaintiffs' request for $150,000 to cover anticipated fees and costs on appeal. If necessary, Plaintiffs can move for such fees at a later time.