IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
September 20, 2016
Lyle W. Cayce
Clerk

No. 15-10919

NICOLE OLIBAS, On behalf of themselves and all others similarly situated; REGINALD E. WILLIAMS; DONNY J. HODKINSON; TINA MCDONALD; CAROL JOHNSON,

    Plaintiffs - Appellees

v.

JOHN BARCLAY; NATIVE OILFIELD SERVICES, L.L.C.,

    Defendants - Appellants

_____

REGINALD E. WILLIAMS, On behalf of themselves and all others similarly situated; DONNY J. HODKINSON, On behalf of themselves and all others similarly situated; TINA MCDONALD, On behalf of themselves and all others similarly situated; CAROL JOHNSON, On behalf of themselves and all others similarly situated;

    Plaintiffs - Appellees

v.

NATIVE OILFIELD SERVICES, L.L.C., JOHN BARCLAY;

    Defendants - Appellants

---

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 3:11-CV-2388 & 3:12-CV-3196

---

No. 15-10919

Before JOLLY, BARKSDALE, and SOUTHWICK, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:*

The overarching question presented in this appeal is whether an employer, Native Oilfield Services, L.L.C., and its president, John Barclay, (together, "Native") owed its employee truck drivers overtime under the Fair Labor Standards Act ("FLSA") or whether the drivers were exempt from the FLSA's overtime pay requirement under the Motor Carrier Act ("MCA"). Because we conclude that the district court did not err in denying Native's Renewed Motion for Judgment as a Matter of Law ("JMOL") and Motion for a New Trial, we AFFIRM.

I.

Native provides commercial transportation services to the oil and gas industry, primarily transporting sand for hydraulic fracking. Native's truck drivers filed a collective action against Native, alleging that Native violated the FLSA by failing to pay them overtime for their off-the-clock hours waiting to be assigned a truck or for their trucks to be loaded/unloaded between August 22, 2009, and August 5, 2014. Native countered that the drivers were exempt from the FLSA's overtime pay provisions under the MCA.

At trial, there was no dispute that Native was a motor carrier engaged in interstate commerce or that the drivers operated trucks over 10,000 pounds. There was, however, conflicting testimony over whether the drivers engaged in the actual transportation of goods across state lines or the intrastate

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

transportation of goods in the flow of interstate commerce—situations that would bring the drivers within the ambit of the MCA exemption.[1]

Notably, at trial, Native could not produce drivers' logs, bills of lading, time sheets, or other documents conclusively showing interstate travel by the drivers.[2] It also could not produce documentary evidence of any customer orders to support its intrastate theory.[3] Native only produced Interstate Fuel Tax Agreements ("IFTAs"). Although they reflected the out-of-state miles recorded each year, the IFTAs only covered two years, showed no out-of-state travel for long periods, did not identify drivers, and did not record the weights

---

[1] For example, a dispatcher testified that 20–25% of loads a day were interstate. Barclay testified that approximately 10% of Native's annual business was interstate loads. Two dispatchers testified that drivers transported sand from out of state to Texas customers. But most drivers testified that they never drove out of state, although one said he had driven out of state and another claimed he knew of others who had done so.

The drivers also testified that they drove out of state on a voluntary basis. Barclay testified that was initially true, but those trips later became mandatory. And Freddie Lee, a dispatcher, testified that drivers would be disciplined for refusing interstate assignments.

Yet Chris Levine, a Native human resources generalist, testified that he could only recall one time when trips were randomly assigned because drivers did not volunteer for them. He also stated that there was no written policy forcing drivers to go out of state or be terminated for refusing such an assignment and that Native "rarely had a problem."

One of the only pieces of documentary evidence presented to the jury actually classified drivers as non-exempt, meaning due overtime, even though the jury heard Barclay testify that the drivers were all classified as exempt well before the document was made.

[2] Barclay testified that the log books were destroyed by a third party pursuant to Department of Transportation regulations, which only required them to be retained for six months. Yet he admitted that he had received written discovery requests well in advance of the time when he could have told the third party not to destroy the documents.

As for the daily trip reports, which showed a driver's name, date, the driver's starting and stopping location, and what he or she did during the day, Barclay admitted that they were put in a banker's box after the drivers made a discovery request for them. The reports were then destroyed.

[3] Native's intrastate theory was that, although its drivers transported out-of-state goods intrastate, Native had a fixed and persisting intent to complete the goods' movement across state lines by delivering them to customers.

of vehicles.[4]  Moreover, the jury saw a discovery request for documents that "ever informed any driver that he/she could be indiscriminately assigned to drive an interstate trip" that Native responded to with "none."

At the close of trial, the district court refused to give Native's 491-page damages jury instruction, which would have required the jury to determine the total weekly pay and hours worked for each of the 108 plaintiff-drivers for five years.  Also, although it otherwise adopted wholesale Native's jury instruction on the second prong of the MCA, the court added, at the drivers' request, a one-sentence example of when a "reasonable expectation" of interstate transport is satisfied.  The example identified a single factor of a multi-factor test.[5]

On August 5, 2014, the jury returned a verdict in favor of the drivers. The jury found that: (1) Native failed to establish each essential element of the MCA exemption; (2) Native failed to pay the drivers overtime in violation of the FLSA; (3) Native willfully violated the FLSA; and (4) the drivers, as a collective unit, averaged eighteen hours of weekly unpaid overtime.[6]

The court ordered the parties to mediate their unresolved dispute over the amount of damages owed.  When the parties could not reach a settlement, the drivers moved for entry of judgment, providing the court with

---

[4] This matters because the IFTAs also reflect the travel of well-site supervisors, non-class members who drove vehicles under 10,000 pounds (the required vehicle weight for the MCA exemption to apply).

[5] The relevant part of the instruction read:

[Y]ou should ask whether the Driver Plaintiffs were or could have been called on to drive to states other than Texas as part of their continuing job duties at Native Oilfield. For example, one way drivers can be considered to be 'reasonably expected' to drive in interstate commerce is if interstate trips are indiscriminately distributed by the employer to the drivers as part of their continuing job duties.

[6] The jury found that the named plaintiffs worked eleven, thirteen, ten and five hours of unpaid weekly overtime.

supplemental, post-verdict declarations from drivers whose testimony was not presented at trial.[7] The court then determined the drivers' regular hourly rate of pay and the overtime premium without any further jury findings. In order to do these calculations, the court accepted the drivers' post-verdict declarations, which stated whether a driver was paid hourly or by the load. This was necessary, the court explained, because Native failed to maintain adequate payroll records, an obligation mandated by federal law.

On May 8, 2015, the court awarded the drivers $1,673,145 in unpaid overtime compensation, $1,673,145 in liquidated damages, $371,759.59 in attorneys' fees, and $10,564.32 in costs. The court also denied Native's renewed JMOL motion.[8] It entered final judgment on May 11, 2015.

Native then renewed its JMOL motion and moved for a new trial. The court denied both motions on August 27, 2015.[9]

Native has timely appealed. Native contends that the district court erred: (1) in denying its JMOL and new-trial motions because the weight of the evidence showed that the MCA exemption applied to the drivers; and (2) in denying its new trial motion because: (a) the "reasonable expectation" and damages jury instructions were improper and prejudicial; and (b) the damages

---

[7] Because there were four named plaintiffs and 104 opt-in plaintiffs, both sides agreed to use representative testimony consisting of five percent of the drivers.

[8] On July 31, 2014, at the close of the drivers' presentation of evidence, Native moved for JMOL. The district court denied the motion because of the competing evidence and its lack of authority to make credibility determinations.

[9] In denying those motions, the district court found that: (1) there was sufficient evidence for the jury to reasonably conclude that the MCA exemption did not apply; (2) the jury's determination of the average number of weekly hours worked by the drivers was not against the weight of the evidence, especially in the light of Native's failure to maintain adequate payroll records; (3) it was within its discretion to give the "reasonable expectation" instruction with an example for determining whether the MCA exemption applied; and (4) it did not err in allowing the jury to estimate, based on averages, the weekly hours worked by each plaintiff because the task of calculating actual hours worked would have been confusing and overly burdensome.

calculation was improper because the jury's findings on the average overtime hours worked were not supported by the evidence and the court considered the drivers' post-verdict declarations.

## II.

### A.

We begin by considering the district court's denial of Native's JMOL and new trial motions because it determined that there was sufficient evidence for the jury to reasonably conclude the MCA exemption did not apply. We review the denial of a JMOL motion *de novo,* but "'our standard of review with respect to a jury verdict is especially deferential.'" *Evans v. Ford Motor Co.*, 484 F.3d 329, 334 (5th Cir. 2007) (citation omitted). We review the denial of a new trial motion using the more deferential abuse of discretion standard. *Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 218 (5th Cir. 2011) (citations omitted).

Native argued below, as it does on appeal, that the court should have granted its JMOL or new trial motions because no rational jury could have found that its drivers did not operate vehicles in interstate commerce or transport intrastate goods that were in interstate commerce. The drivers contended below, as they do on appeal, that: (1) the verdict is supported by the evidence; and (2) Native failed to meet its burden of establishing each element of the MCA exemption.

The FLSA "requires an employer to pay overtime compensation to any employee working more than forty hours in a workweek." *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 282 (5th Cir. 2014) (citing 29 U.S.C. § 207(a)(1)). Although there are exemptions to the FLSA, these exemptions "'are construed narrowly against the employer, and the employer bears the burden to establish a claimed exemption.'" *Id.* at 283 (citation omitted).

The MCA exemption "states that the FLSA's overtime requirement shall not apply . . . to . . . any employee with respect to whom the Secretary of

Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 of the MCA." *Id.* (citations and internal quotation marks omitted). Section 31502 and Department of Transportation regulations permit the Secretary to "establish these requirements for employees who" drive vehicles over 10,000 pounds and meet two requirements. *Id.* at 283, 291 n.6 (citations omitted).

Only the second requirement is contested here.[10] It requires employees to "'engage in activities of a character directly affecting the safety of operation of motor vehicles . . . in interstate . . . commerce.'" *Id.* at 283 (citations omitted). "Interstate commerce" is "'the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce.'" *Id.* (citation omitted). And "the 'character of the activities involved in the performance of [the employee's] job . . . is controlling.'" *Id.* (citations omitted).

The MCA exemption will not apply if "'the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis.'" *Id.* at 284 (citation omitted). But, generally, the exemption applies if employees are, or are "'likely to be, called upon in the ordinary course of [their] work to perform, either regularly or from time to time, safety-affecting activities . . . that are interstate in nature.'" *Id.* (citations omitted). Employees are likely to be called upon to perform such activities if they "'could reasonably have been expected to [engage] in interstate commerce

---

[10] Native satisfied the first requirement: that employees be "employed by carriers" who are "subject to [the DOT's] jurisdiction" because they are "engaged in interstate commerce." *Id.* at 283 (citations and internal quotation marks omitted).

7

consistent with their job duties.'" *Id.* (citations omitted). This, in turn, is determined by a multi-factor test.[11]

Native has not shown that the district court erred in denying its JMOL motion. It was a pure jury question whether to believe the employees or the employer. *See Dalton v. Toyota Motor Sales, Inc.*, 703 F.2d 137, 140 (5th Cir. 1983). The jury heard conflicting testimony. Even though it could have decided in favor of Native, the jury decided in favor of the drivers. Moreover, the evidence was clearly sufficient to support the jury's finding that the MCA exemption did not apply here, particularly because Native did not keep records or otherwise provide irrefutable evidence to challenge its drivers' testimony.

Because it fails to show the court erred in denying its JMOL motion under *de novo* review, Native also fails to show that the court erred in denying its new trial motion under the more deferential abuse of discretion standard.

B.

Native also argues that it is entitled to a new trial because two jury instructions were infirm. We review a court's decision to deny a new trial motion and "the propriety of jury charges and instructions under the deferential abuse of discretion standard." *Jackson*, 426 F. App'x at 220 (citation omitted); *Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 772 (5th Cir. 2010) (citation omitted).

---

[11] Courts consider the following factors, none of which is dispositive: (1) whether all employees in the class have similar job duties, even if only some employees in the class make interstate trips; (2) whether the employer regularly sends some drivers to interstate destinations; (3) whether the employer requires its drivers to meet DOT requirements; (4) whether and with what frequency project assignments are subject to change; (5) whether the drivers' assignments are given via dispatch based on customer need; (6) whether drivers have fixed or dedicated routes; (7) whether assignments are distributed indiscriminately; and (8) whether drivers risk termination for refusing trips from dispatch. *See id.* at 285–86, 286 n.4; *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 475 (5th Cir. 2010).

No. 15-10919

1.

First, Native contended below, as it does on appeal, that the court erred by providing an instruction that did not list all the factors to be considered under the MCA's "reasonable expectation" analysis. The drivers asserted below, as they do on appeal, that the court did not commit reversible error because: (1) the instruction properly stated the law, as Native admitted; and (2) the court carefully indicated that the example it used was merely one factor in the analysis.

It is clear that the district court did not abuse its discretion in giving this instruction because the instruction did not misguide the jury or, given the entire record, affect the outcome of the action. *See Bagby Elevator Co.*, 609 F.3d at 772. Although the instruction mentions only one factor—indiscriminate assignment—as an example, there was plenty of evidence before the jury as to the other factors, as Native itself contends. Thus, the jury was aware of other considerations for determining whether the drivers were exempt under the MCA. Moreover, the instruction is clear that "indiscriminate assignment" is merely one consideration among many because the addition begins, "For example . . . ."

2.

Second, Native contended below and on appeal that the court erred by denying its proposed damages instruction, which required the jury to determine the actual hours all the drivers worked. The drivers countered both below and on appeal that: (1) the damages instruction was over four hundred pages long; and (2) the Fifth Circuit allows juries to determine the average weekly hours worked based on representative testimony.

The district court did not abuse its discretion in refusing to give Native's damages instruction. First, Native's proposed instruction, 108 four-page spreadsheets, would have been overly burdensome and confusing to the jury.

9

Case: 15-10919     Document: 00513715365     Page: 10     Date Filed: 10/12/2016
Case 3:11-cv-02388-B   Document 312   Filed 10/12/16   Page 10 of 12   PageID 12936

No. 15-10919

Second, FLSA damages may be estimated, especially when the employer fails to keep required payroll records. *E.g., Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 318 (5th Cir. 1981). Estimates may come from representative testimony, and the "[t]estimony of some employees concerning the hours worked by groups of non-testifying employees is sufficient if those who do testify have personal knowledge of the work performed by those who do not." *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1331 (5th Cir. 1985) (citations omitted).

Based on their personal knowledge, representative drivers testified to the hours they and their non-testifying colleagues worked. The drivers also submitted declarations at trial establishing how many hours the non-testifying drivers worked. On the other hand, Native could not produce documentation for a more accurate estimation of damages, nor could it produce records supporting an alternative damages model. Accordingly, the court did not err in giving the jury instructions.

C.

Finally, Native argues that it is entitled to a new trial because the court did not correctly calculate damages. We review a court's denial of a new trial motion and decision to admit evidence for an abuse of discretion. *MCI Comm'n Servs., Inc. v. Hagan*, 641 F.3d 112, 117 (5th Cir. 2011) (citation omitted); *Jackson*, 426 F. App'x at 218 (citation omitted).

1.

First, Native contended below, as it does on appeal, that the court erred because the evidence did not support the jury's finding that the drivers collectively averaged eighteen hours of overtime a week. The drivers argue, as they did below, that sufficient evidence supports this finding.

The district court did not abuse its discretion in accepting the jury's finding of average hours worked. The jury's function "'as the traditional finder of facts'" is "'to weigh conflicting evidence and inferences[] and determine the

Case: 15-10919    Document: 00513715365    Page: 11    Date Filed: 10/12/2016
Case 3:11-cv-02388-B   Document 312   Filed 10/12/16   Page 11 of 12   PageID 12937

No. 15-10919

credibility of witnesses.'" *Dalton*, 703 F.2d at 140. The jury was presented with evidence that some drivers worked less than eighteen hours and some up to thirty hours of weekly overtime.[12] It then determined that the drivers collectively averaged eighteen hours of weekly overtime. Because averages are the central or typical value in a set of data and, again, Native failed to maintain proper records, the court did not base its decision on a clearly erroneous assessment of the evidence.

2.

Second, Native contended below, as it does on appeal, that the drivers' post-verdict declarations, which described how they were paid, were improperly considered by the court in calculating the amount of overtime due because they were an inappropriate motion to reopen. The drivers countered below, as they do on appeal, that the declarations were proper because: (1) they specifically pertain to a damages model, which only became an issue after the jury's liability finding; and (2) Native failed to maintain payroll records.

In FLSA cases, the fact finder determines whether employees are due unpaid overtime and, if so, the number of unpaid hours worked. *Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013). But "the proper determination of the regular rate of pay and overtime premium to which an employee is entitled is a question of law" to be determined by the court. *Id.* (citations omitted).

The district court did not abuse its discretion in considering the post-verdict declarations. They were irrelevant to the jury's findings of liability. Damages are properly determined by the court, not the jury, and the declarations supported one damages model the drivers presented. Moreover,

---

[12] The jury heard Chris Gonzales and David Zamarripa testify that they and other drivers typically worked seventy-hour weeks, giving them thirty hours of weekly overtime.

Native did not rebut the declarations with its own evidence for calculating damages. Native also did not show that the probative value of the declarations was outweighed in any way by prejudice to Native. In short, the district court did the best it could in calculating damages given Native's failure to provide adequate records from which damages could be more precisely determined.

## III.

The district court committed no reversible errors. The jury's verdict on liability is amply supported by the evidence, especially because Native failed to produce irrefutable documentary evidence contradicting the drivers' testimony. The jury instructions were not infirm. The court did not abuse its discretion in giving the "reasonable expectations" instruction because the instruction neither misguided the jury nor, given the whole record, affected the case's outcome. The court also did not abuse its discretion by denying Native's damages instruction because FLSA damages may be estimated and Native's instruction would have been overly burdensome and confusing to the jury. The court's award of damages was not an abuse of discretion for reasons similar to our upholding the jury verdict—namely, Native offered no documentary evidence and failed to keep proper records. Under these circumstances, we can find no error in the district court accepting the testimony of the drivers and calculating damages on the basis of certain assumptions. Accordingly, in all respects, the judgment of the district court is AFFIRMED.